Thomas E. Hill (SBN 100861)
Email: thill@reedsmith.com
Christina T. Tellado (SBN 298597)
Email: ctellado@reedsmith.com
Deisy Castro (SBN 311816)
Email: dcastro@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

Attorneys for Defendant
PNC BANK, N.A.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANSEER KAZI, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>Defendants. | Case No.: _____<br><br>**DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>[Removal of Alameda County Superior Court Case No. RG18910955] |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF TANSEER KAZI AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant PNC Bank, N.A. (hereinafter "PNC") hereby removes the action styled *Kazi v. PNC Bank, N.A.,* Case No. RG18910955, now pending in the Superior Court of the State of California in and for the County of Alameda (hereinafter the "State Court Action"), to the United States District Court for the Northern District of California.  PNC removes this action pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005, hereinafter "CAFA"), 1441, and 1446 on the following grounds.

## STATEMENT OF JURISDICTION

1. This Court has jurisdiction over this action under CAFA, which amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if the proposed class consists of at least 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and one member of the proposed class is a citizen of a state different from that of one defendant.  *See* 28 U.S.C. § 1332(d).  CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446.  As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## PROCEDURAL BACKGROUND

2. On June 28, 2018, Plaintiff Tanseer Kazi ("Plaintiff") filed the State Court Action. True and correct copies of the Summons, Complaint and related Court documents received by PNC are attached to this Notice as "Exhibit A."  (Declaration of Christina T. Tellado ("Tellado Decl."), ¶ 2, Exhibit A)

3. On July 9, 2018, Plaintiff served PNC with copies of the Summons, Complaint and related Court documents by delivering them to Brett Mitchell, described by Plaintiff as "Records Custodian," at 500 First Avenue, Pittsburgh, Pennsylvania, 15219.  A true and correct copy of Plaintiff's executed Proof of Service of Summons, Form POS-010, is attached to this Notice as "Exhibit B."  (Tellado Decl., ¶ 3, Exhibit B)  Exhibits A and B constitute all process, pleadings, and orders received to date by PNC in the State Court Action.  (Tellado Decl., ¶ 3)

DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION

4.     On August 7, 2018, PNC filed and served its Answer to Plaintiff's Complaint in the State Court Action.  A true and correct copy of the Answer is attached to this Notice as "Exhibit C." (Tellado Decl., ¶ 4, Exhibit C)  PNC also moved for reassignment to another judge pursuant to California Code of Civil Procedure Section 170.6 in the State Court Action.  A true and correct copy of PNC's motion is attached to this Notice as "Exhibit D."  (*Id*., at ., ¶ 5, Exhibit D)

## VENUE

5.     Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 84(c)(2), 1441, and 1446(a).  This action was originally brought in the Alameda County Superior Court, which is located within the Northern District of California.  Venue is proper with this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

## TIMELINESS OF REMOVAL

6.     Pursuant to 28 U.S.C. § 1446(b), this removal is timely because PNC is filing this removal within thirty (30) days following the day (*i.e.*, July 9, 2018) that PNC received a copy of the Summons and Complaint in the State Court Action.

7.     PNC is the only non-fictitious Defendant served with the Summons and Complaint.

## JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

8.     Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2).

9.     Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more.  28 U.S.C. § 1332(d)(5).

10.    This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by PNC pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and one defendant.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

11.     As previously noted, venue is proper in this Court pursuant to 28 U.S.C. § 84(b) and 1441(a).

12.     PNC is the only defendant that has been named and served in this matter. Therefore, all defendants who have been named and served join in this removal. Moreover, pursuant to CAFA, PNC need not obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

13.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to California Code of Civil Procedure § 382, a state statute authorizing an action to be brought by one or more representative persons as a class action. (*See* Compl., ¶ 6)

### The Purported Class Contains At Least 100 Members

14.     In the Complaint, Plaintiff alleges that the members of the putative class "exceed[]100 persons" and "are so numerous as to make joinder impracticable." (Compl., ¶ 8) Plaintiff further alleges that "Defendants have identified or can readily identify members of the Class." (*Id.*) Specifically, Plaintiff alleges that the putative class consists of "all persons whom PNC Bank, N.A. employed in the State of California as a Mortgage Loan Officer at any time since four years before the filing of this legal action until such time as there is final disposition of this lawsuit." ("Putative Class Members") (*Id.* at ¶ 6)

15.     There are no fewer than 172 Putative Class Members whom PNC has employed in California at some time since June 28, 2014, *i.e.*, four years prior to the commencement of the State Court Action. (Tellado Decl., ¶ 9)

### There Is Diversity Of Citizenship Between
### At Least One Proposed Class Member And One Defendant

16.     The parties are completely diverse in this matter because Plaintiff is a citizen of the State of California and PNC is a citizen of the State of Delaware.

17.     **Plaintiff's Citizenship.**  At the time this action was commenced and at the time of removal, Plaintiff was a citizen of the State of California. (*See* Compl., ¶ 2, wherein Plaintiff asserts that he is a "citizen and resident of the State of California.") *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co.*

*v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, No. 1:05-CV-01187-022-GS, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (alleged place of residence provides "prima facie" proof of domicile). Accordingly, Plaintiff is a citizen of the State of California for purposes of removal.

18. **PNC's Citizenship.** Pursuant to 28 U.S.C. § 1348, PNC is a citizen of Delaware for purposes of jurisdiction because it is a national bank with its designated main office located in Delaware. *See* 28 U.S.C § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located"); *Wachovia Bank, NA v. Schmidt*, 546 US 303, 307 (2006) ("[W]e hold that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."); *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 711 (9th Cir. 2014) (holding that "Wells Fargo is a citizen of only South Dakota, where its main office is located"); United States Comptroller of the Currency, *Conditional Approval #928, November 2009,* Oct. 27, 2009, attached hereto as Exhibit E**,** at 1 (recognizing that "PNC Bank is a national bank with its main office located in Wilmington, DE…") and n.1, 1 ("PNC Bank applied and received approval from the OCC to relocate its main office from Pittsburgh, PA to Wilmington, DE, effective August 21, 2009").[1]  (*See* Tellado Decl., ¶ 6)

19. **Doe Defendants.** Plaintiff has also named as defendants Does 1 through 100. For purposes of removal based on diversity, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b). *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also*

---

[1] PNC respectfully requests that the Court take judicial notice of this federal government document, which is publically available at https://www.occ.gov/topics/licensing/interpretations-and-actions/2009/ca928.pdf. A district court may take judicial notice of facts contained in public records, such as publicly available information posted on a government website, for purposes of determining whether removal is proper. *See* Fed. R. Evid. 201(b); *see also Mosley v. Wells Fargo Bank NA*, No. 17-CV-05064-JSC, 2017 WL 5478628, at *2 (N.D. Cal. Nov. 15, 2017) ("Courts may take judicial notice of publicly available official information filed with a governmental agency or posted on a governmental website") (citing *Dudum v. Artnz*, 640 F.3d 1098, 1102 & n.6 (9th Cir. 2011) and *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

1 *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (same).  The existence of the
2 alleged Doe defendants thus does not impact this Court's removal jurisdiction.  *Albrego v. Dow*
3 *Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied to CAFA removal).  CAFA's
4 minimum diversity requirement is satisfied here because a Putative Class Member is a citizen of a
5 different state from PNC.  28 U.S.C. § 1332(d)(2)(A); *see Davis v. Chase Bank U.S.A.,* 453 F. Supp.
6 2d 1205, 1208 (C.D. Cal. 2006) (holding that minimal diversity exists where named plaintiff and
7 defendant are citizens of different states).

**Alleged Amount In Controversy Exceeds $5,000,000**

20.     Under CAFA, the claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(6).  Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action Fairness Act of 2005*, 42 (Comm. Print 2005).  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.     When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal citations and alterations omitted).  A district court may consider the allegations of the complaint and the contents of the removal petition and any supporting evidence in determining whether the jurisdictional amount has been established.  *See Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION

22. Where a complaint "does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds" the requisite $5,000,000. *See Singer*, 116 F.3d at 376. Here, the Complaint does not specify the amount of damages sought; therefore, PNC must establish the amount in controversy and other facts necessary to establish removal jurisdiction through its own evidence.

23. This putative class action involves claims alleged under California law and against PNC for failure to provide paid rest periods or premium compensation in lieu thereof, failure to provide compliant itemized wage statements, unfair competition, and waiting time penalties. (*See* Compl., ¶¶ 15-20) Plaintiff's prayer for relief includes "an award for the unpaid premium wages for absence of paid, compliant rest periods, waiting time penalties, penalties for absence of properly itemized wages statements/record maintenance, and any other applicable statutory penalties," "[r]easonable attorneys['] fees and costs/expenses, both statutory and non-statutory," and "[p]re-judgment and post judgment interest as provided by law." (Compl., pp. 11-12)

24. PNC denies Plaintiff's allegations of misconduct and intends to defend itself vigorously against all of Plaintiff's causes of action. Nevertheless, and without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of Putative Class Members, the number of alleged violations of California law, the four year statute of limitations period embraced by some of the claims, and the class definition alleged in the State Court Action, the aggregate amount in controversy presented by the case exceeds $5,000,000 for purposes of removal, as explained below.

25. **Rest Period Violations Claim.** Plaintiff's claims primarily arise out of his allegations that, pursuant to its compensation plan, PNC fails/failed to provide the Putative Class Members with paid rest periods in violation of California law. (*See* Compl., ¶ 15) Plaintiff further alleges that PNC fails/failed to provide the Putative Class Members with "premium wages" for the alleged non-compliant rest periods "as required by California Labor Code § 226.7, Wage Order 4-2001, § 12, and comparable paragraphs in any other applicable Wage Order." (Compl., ¶ 22)

26. In California, employees are entitled to one hour of "premium pay" for each day during which a rest period violation occurs. Cal. Lab. Code § 226.7(c). Specifically, pursuant to the

– 6 –
DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION

1 California Labor Code, "[i]f an employer fails to provide an employee a … rest … period in
2 accordance with state law…, the employer shall pay the employee one additional hour of pay at the
3 employee's regular rate of compensation for each workday that the … rest … period is not
4 provided." *Id.*  A four year statute of limitations arguably applies to rest period claims enforced
5 under the California Unfair Competition Law, and Plaintiff has alleged rest period claims under that
6 law.  (Compl., ¶¶ 30-34); *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1114 (2007);
7 *see also* Cal. Bus. & Prof. Code § 17208.

8       27.     Section 226.7 does not provide a definition for the phrase "regular rate of
9 compensation," and the meaning of that phrase has and continues to be the subject of ongoing
10 litigation producing different results.  Specifically, there is currently a split in case authority
11 regarding whether the "regular rate of compensation" for purposes of rest period violations is to be
12 calculated by using the employee's hourly rate only, or whether that rate should be calculated by
13 adding all forms of compensation paid to the employee, including commissions and other non-
14 discretionary pay.  *Compare Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018
15 WL 2146380, at *3 (C.D. Cal. May 8, 2018), *appeal docketed*, No. 18-55626 (9th Cir. May 16,
16 2018), *and Studley v. All. Healthcare Servs., Inc.*, No. SACV 10-00067-CJC(ANx), 2012 WL
17 12286522, at *4 (C.D. Cal. July 26, 2012), *with Brum v. MarketSource, Inc.*, No. 2:17-cv-241-JAM-
18 EFB, 2017 WL 2633414, at *3-5 (E.D. Cal. June 19, 2015), *and Wert v. U.S. Bancorp*, No. 13-cv-
19 3130-BAS (BLM), 2014 WL 7330891, at *3-5 (S.D. Cal. June 9, 2015), *reconsideration denied*,
20 2015 WL 3617165 (S.D. Cal. June 9, 2015), *and Bradescu v. Hillstone Rest. Grp., Inc.*, No. SACV
21 13-1289-GW (RZx), 2014 WL 5312546, at *7-8 (C.D. Cal. Sept. 8, 2014), *tentative ruling
22 confirmed as final*, 2014 WL 5312574 (C.D. Cal. Oct. 10, 2014).

23       28.     PNC does not concede and/or adopt the position that the "regular rate" calculation for
24 purposes of determining damages arising out of rest period violations should include amounts paid to
25 an employee in the form of commissions or any other non-discretionary compensation.  Nonetheless,
26 the "regular rate" used in the calculation of the amount in controversy, as calculated by PNC for
27 purposes of removal, includes the commissions and any other non-discretionary compensation paid
28 to the Putative Class Members, and does so because the appropriate measure of  CAFA's

1 jurisdictional amount in controversy is "the litigation value of the case assuming that the allegations 2 of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in 3 the complaint." *Jackson v. American Bankers Ins. Co. of Florida,* 976 F. Supp. 1450, 1454 (S.D. 4 Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)).  The amount in 5 controversy is not determined by "the low end of an open-ended claim," but by "a reasonable 6 reading of the value of the rights being litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 7 1993); *see also Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 (1977). 8 Accordingly, Plaintiff's allegations that rest periods are unpaid due to PNC's compensation plan 9 further suggests that a reasonable interpretation of his claim includes allegations that de facto rest 10 period violations occurred each and every workday during the relevant claim period.  (*See* Comp., 11 ¶ 15)

12         29.     For purposes of determining the aggregate potential amount in controversy, all 13 current and former Mortgage Loan Officers working for PNC in California between June 28, 2014 to 14 the present (the "Computation Period"), were included based on the class definition set forth in the 15 Complaint.  (Tellado Decl., ¶ 7; Smiles Decl., ¶ 5)  During the Computation Period, there were no 16 fewer than 172 Putative Class Members employed by PNC.  (Tellado Decl., ¶ 9)  These Putative 17 Class Members worked a total of 19,583 work weeks during the Computation Period.  (*Id.*, ¶ 10)

18         30.     The "regular rate of compensation" for purposes of the alleged rest period damages 19 was calculated on an individual basis for each Putative Class member by using the actual hourly 20 rates and actual incentive compensation (*e.g.,* commissions or other non-discretionary bonuses) paid 21 to the Putative Class Members during the Computation Period.  (*Id.*, ¶ 11)  Given that it is not 22 possible or practicable to allocate proportionally the incentive compensation paid to the Putative 23 Class Members to the work weeks during which that compensation was earned, PNC calculated the 24 "regular rate" in the generally accepted manner of allocating equal amounts to each week, as set out 25 in 29 C.F.R. § 778.120(a) and in accordance with PNC's compensation plan.  (*Id.*)  *See Vazquez v.* 26 *TWC Admin. LLC,* 254 F. Supp. 3d 1220, 1231-32 (C.D. Cal. 2015) (holding defendant's allocation 27 methodology of calculating the regular rate by dividing commissions evenly across work weeks as 28 set out in 29 C.F.R. § 778.120(a) to be valid under California and federal law); *see also Ibarra*, 2018

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –
DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION

WL 2146380, at *5 ("[A] more comprehensive calculation of the rest-period violation rate should not be prohibitively difficult…. [A]s an example, FLSA regulations on overtime pay detail how employers may calculate the "regular rate" when using commission-based compensation.") (citing 29 C.F.R. §§ 778.109, 117-22).

31. Specifically, in performing these calculations, the "regular rate of compensation" was determined by using the total incentive compensation that was paid on a monthly basis and multiplying it by 12 (total months in a year) and then dividing the number by 52 (total weeks in a year) to determine the amount of incentive pay allocable to a single week. *See* 29 C.F.R. § 778.120(a)(1). This number was then divided by 40 hours (hours worked per week) to determine a Putative Class Member's incentive compensation hourly rate, which was then added to the non-incentive compensation hourly rate for that week. (Tellado Decl., ¶¶ 12, 13)

32. Using the aforementioned compensation methodology, PNC could be liable for **$4,755,748** in unpaid "premium wages" under California Labor Code Section 226.7 based on one missed rest period per day, per Putative Class Member, 5 days per week, for the 4-year claim period. (Tellado Decl., ¶¶ 14, 15) This aggregate potential liability for the rest period claim is broken down by year as follows:

| AMOUNT IN CONTROVERSY FOR REST PERIOD CLAIM | |
|---|---|
| **Year (or Portion Thereof)** | **Amount** |
| June 28, 2014 – December 31, 2014 | $292,346 |
| January 1, 2015 – December 31, 2015 | $669,616 |
| January 1, 2016 – December 31, 2016 | $996,848 |
| January 1, 2017 – December 31, 2017 | $1,546,374 |
| January 1, 2018 – August 8, 2018 | $1,250,565 |
| **TOTAL** | **$4,755,748** |

(*Id., ¶* 15)

33. **Attorneys' Fees**. In addition, Plaintiff seeks "attorney[']s fees and costs/expenses, both statutory and non-statutory." (*See* Compl., Prayer For Relief, at p. 12) Plaintiff's potential

1  recovery of attorney's fees can properly be included in calculating the amount in controversy, and
2  such awards are commonly in the 25% to 33% range of an award to the class. *See Galt G/S v. JSS*
3  *Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys' fees may be included
4  when calculating the amount in controversy). Thus, the inclusion of Plaintiff's potential attorneys'
5  fees could add another **$1,188,937** [calculated at 25% of a potential recovery of $4,755,748 for the
6  rest period claims] or more to the total amount in controversy. (Tellado Decl., ¶ 16)

7    34.    **Exclusion of Wage Statement and Waiting Time Penalty Claims.** PNC calculated
8  the foregoing potential liabilities of $5,944,685 [$4,755,748 (alleged rest period violations damages)
9  + $1,188,937 (attorney's fees)] based on the allegations of Plaintiff's Complaint, but excluded
10 potential liabilities arising from Plaintiff's alleged derivative wage statement violations and waiting
11 time penalty claims.[2] These excluded potential liabilities could increase the amount in controversy
12 by an additional million dollars. Notwithstanding the exclusion of the potential liabilities for the
13 alleged derivative wage statement violations and waiting time penalty claims, PNC has clearly
14 demonstrated that the potential amount put in controversy by Plaintiff in his Complaint is at least
15 **$5,944,685**, and thus exceeds the $5,000,000 jurisdictional minimum under CAFA.[3] (Tellado Decl.,
16 ¶ 17)

17    35.    In sum, through PNC's own investigation and calculations as set forth herein, a
18 preponderance of the evidence supports removal of this matter because CAFA jurisdiction has been
19 established.

20 //
21 //
22 //

---

[2] Plaintiff has also informed PNC's counsel of his intention to amend the Complaint to add a claim for civil penalties pursuant to the California Labor Code Private Attorney Generals Act, Cal. Lab. Code §§ 2698, *et seq.*, which will further increase the amount in controversy in this action. (*See* Tellado Decl., ¶ 18)

[3] Again, PNC provides these calculations solely to establish that the amount in controversy exceeds the jurisdictional minimum. PNC makes no admissions of liability and denies Plaintiff's right to recovery with respect to any aspect of the case. Moreover, PNC does not concede nor waive its right to object to the inclusion of amounts paid in commissions and non-discretionary compensation in the calculation of the "regular rate of compensation" for purposes of determining damages for rest period violations under California law.

DEFENDANT PNC BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## NOTICE TO PLAINTIFF

36. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda.

**WHEREFORE**, for all of the foregoing reasons, PNC hereby removes the State Court Action now pending in the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

DATED: August 8, 2018         Respectfully submitted,

REED SMITH LLP

By: */s/ Christina T. Tellado*
    Thomas E. Hill
    Christina T. Tellado
    Deisy Castro
    Attorneys for Defendant
    PNC BANK, N.A.