James M. Sitkin (SBN 107650)
jsitkin@sitkinlegal.com
1 Kaiser Plaza, Suite 505
Oakland, CA 94612
Tel: (415) 318-1048
Fax: (415) 362-3268

Justin L. Swidler
jswidler@swartz-legal.com
Swartz Swidler LLC
1101 Kings Hwy. N. Ste. 402
Cherry Hill, NJ 08003
Tel: (856) 685-7420
Fax: (856) 685-7417

Robert D. Soloff
robert@solofflaw.com
Robert D. Soloff, P.A.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 472-0002
Fax: (954) 472-0052

Marc A. Silverman
msilverman@fwblaw.net
Frank Weinberg Black, P.L.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 474-8000
Fax: (954) 474-9850

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANSEER KAZI, *et al.*, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., *et al.*<br><br>        Defendants. | Case No: 3:18-cv-04810-JCS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 24, 2020<br>Time: 9:30 a.m.<br>Before:    Hon. Joseph C. Spero<br><br>Trial Date:   None Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 2

  A.  Loan Officer Working Hours, Duties, Compensation. ............................... 2

  B.  Loan Officer Hourly Pay Is a Draw Against Commissions....................... 4

  C.  PNC Modifies its Compensation Plan beginning in July of 2019. ........... 8

III.   LEGAL ARGUMENT ....................................................................................... 9

  A.  Plaintiffs have met each requirement of Rule 23(a). ................................. 9

    1.   Plaintiffs have met the numerosity requirement and the class is ascertainable
    (Rule 23(a)(1)). ................................................................................... 10

    2.   Plaintiffs' Claims are typical of the claims of the class (Rule 23(a)(3)). ............ 11

    3.   Plaintiffs will adequately Represent the Interests of the Proposed Class (Rule
    23(a)(4))............................................................................................. 11

  B.  Plaintiffs' Claims are common (Rule 23(a)(2) and Class Issues Predominate over
  Individual Issues (Rule 23(b)(3). ...................................................................... 12

    1.   Common Issues Predominate with Respect to Plaintiffs' Rest Period Claims. ... 12

    2.   Common Issues Predominate with Respect to Plaintiffs' Non-Productive
    Minimum Wage Claims. ...................................................................... 16

    3.   Common Questions Predominate with Respect to Plaintiffs' Claims for Itemized
    Wage Statement Violations. ................................................................ 19

    4.   Common Questions Predominate with Respect to Plaintiffs' Claims Under the
    California Unfair Competition Law. .................................................... 21

    5.   Common Question Predominate with Respect to Plaintiffs' Claims for Waiting
    Time Penalties. ................................................................................... 21

  C.  A Class Action is the Superior Method for Resolving this Dispute. ....... 23

  D.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel. .......... 24

IV.    CONCLUSION ............................................................................................... 24

1

# TABLE OF AUTHORITIES

2

3

Page(s)

Cases

4

5

*Abad v. Gen. Nutrition Centers, Inc.*,
  2013 WL 4038617 (C.D. Cal. Mar. 7, 2013) ......................................................... 19
6
*Abdullah v. U.S. Sec. Assocs., Inc.*,
7
  731 F.3d 952 (9th Cir. 2013) .............................................................................. 15
*Alcantar v. Hobart Serv.*,
8
  800 F.3d 1047 (9th Cir. 2015) ............................................................................... 9
9
*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................... 9
10
*Armenta v. Osmose, Inc.*,
11
  135 Cal. App. 4th 314 (2005) .............................................................................. 16
*Baker v. Am. Horticulture Supply, Inc.*,
12
  186 Cal. App. 4th 1059 (2010) ............................................................................ 22
13
*Barnhill v. Robert Saunders & Co.*,
  125 Cal. App. 3d 1 (Cal. Ct. App. 1981) ......................................................... 21, 22
14
*Barreras v. Wells Fargo Bank*,
15
  2018 WL 5276294 (C.D. Cal. Jan. 19, 2018) ..................................................... 1, 14
*Bellinghausen v. Tractor Supply Co.*,
16
  2014 WL 465907 (N.D. Cal. Feb. 3, 2014) ......................................................... 20
17
*Benton v. Telecom Network Specialists, Inc.*,
  220 Cal. App. 4th 701 (2013) .............................................................................. 15
18
*Bluford v. Safeway Stores, Inc.*,
19
  216 Cal. App. 4th 864 (2013) .............................................................................. 13
*Brinker Rest. Corp. v. Superior Court*,
20
  53 Cal. 4th 1004 (2012) ............................................................................... 3, 4, 15
21
*Bufil v. Dollar Fin. Grp., Inc.*,
  162 Cal. App. 4th 1193 (2008) ............................................................................ 16
22
*Campbell v. PricewaterhouseCoopers, LLP*,
23
  287 F.R.D. 615 (E.D. Cal. 2012) ......................................................................... 11
*Davis v. Morris*,
24
  37 Cal.App.2d 269, 99 P.2d 345 (Cal. App. 1940) ........................................... 21, 22
25
*Ellis v. Costco Wholesale Corp.*,
  285 F.R.D. 492 (N.D. Cal. 2012) ..................................................................... 11, 12
26
*Escalante v. California Physicians' Serv.*,
27
  309 F.R.D. 612 (C.D. Cal. 2015) ......................................................................... 11

28

*Faulkinbury v. Boyd & Assocs.*,
    216 Cal. App. 4th 220 (2013)......................................................................... 15

*FEI Enters., Inc. v. Yoon*,
    194 Cal. App. 4th 790 (2011)......................................................................... 22

*Furry v. E. Bay Publ'g, LLC*,
    30 Cal. App. 5th 1072 (Cal. Ct. App. 2018), *reh'g denied* ............................ 17

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ........................................................................................ 9

*Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*,
    446 U.S. 318 (1980) ...................................................................................... 10

*Ghazaryan v. Diva Limousine, Ltd.*,
    169 Cal. App. 4th 1524 (2008)...................................................................... 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 12, 13

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ......................................................................... 11

*Hassan v. Praxair, Inc.*,
    2019 WL 3064435 (C.D. Cal. Mar. 4, 2019) ................................................ 10

*Hernandez v. Mendoza*,
    199 Cal. App. 3d 721 (Cal. Ct. App. 1988) .................................................. 17

*Hootkins v. Chertoff*,
    2009 WL 57031 (C.D. Cal. Jan. 6, 2009) ..................................................... 23

*Jaimez v. Daiohs USA, Inc.*,
    181 Cal. App. 4th 1286 (2010)................................................................. 16, 20

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) .................................................................. 12

*Mamika v. Barca*,
    68 Cal.App.4th 487 ........................................................................................ 21

*May v. New York Motion Picture Corp.*,
    45 Cal. App. 396, 187 P. 785 (Cal. App. 1920) ........................................... 22

*Mendez v. R±L Carriers, Inc.*, No. C,
    2012 WL 5868973 (N.D. Cal. Nov. 19, 2012).............................................. 21

*Perez v. Safety-Kleen Sys., Inc.*,
    2007 WL 1848037 (N.D. Cal. June 27, 2007) .............................................. 20

*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010)................................................................................. 22

*Pole v. Estenson Logistics, LLC*,
    2016 WL 4238635 (C.D. Cal. Aug. 10, 2016) .............................................. 23

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .................................................................. 10

*Rutti v. Lojack Corp.*,
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ................................................................. 23
*Sav-On Drug Stores, Inc. v. Superior Court*,
    34 Cal. 4th 319 (2004) ................................................................................................... 23
*Schulz v. QualxServ, LLC*,
    2012 WL 1439066 (S.D. Cal. Apr. 26, 2012) ................................................................. 20
*Seckler v. Kindred Healthcare Operating Grp., Inc.*,
    2013 WL 812656 (C.D. Cal. Mar. 5, 2013) .................................................................... 20
*Vaquero v. Stoneledge Furniture LLC*,
    9 Cal. App. 5th 98 (2017) .............................................................................................. 15
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 9, 12
*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ......................................................................................... 12

Statutes

29 U.S.C. § 201-219 .......................................................................................................... 16
Cal. Bus. & Prof. Code § 17200 .......................................................................................... 21
Cal. Lab. Code § 226 .......................................................................................................... 20
Cal. Lab. Code § 226(e)(1) .................................................................................................. 20
Cal. Lab. Code § 226.2(a)(2) ............................................................................................... 20
Cal. Lab. Code § 226.7(b) ................................................................................................... 12
Cal. Lab. Code § 226.7(c) ................................................................................................... 13
Cal. Lab. Code § 226.7(d) ................................................................................................... 13
Cal. Labor Code § 226(a) .............................................................................................. 19, 20
Cal. Labor Code § 226.2(a)(1) ............................................................................................. 13

Rules

Fed. R. Civ. P. 23(a) ...................................................................................................... 9, 10
Fed. R. Civ. P. 23(b) ............................................................................................................ 9
Fed. R. Civ. P. 23(b)(3) .......................................................................................... 1, 9, 12, 24
Fed. R. Civ. P. 23(g) ..................................................................................................... 12, 24

Regulations

8 Cal. Code Regs. § 11040 ................................................................................................... 13
8 Cal. Code Regs. § 13520 ................................................................................................... 22

I. **INTRODUCTION**

Plaintiffs Tanseer Kazi ("Plaintiff Kazi") and Linda Scheid ("Plaintiff Scheid") (collectively "Plaintiffs") seek to certify a class under Fed. R. Civ. P. 23(b)(3) of current and former mortgage loan officers who worked or work for Defendant PNC Bank, N.A., since four years from the date of the filing of this action, June 28, 2014, to the present. Plaintiffs bring this action under California wage-and-hour law for work they and other California-based employees performed in the state of California. Plaintiffs challenge Defendant's official and uniform policies and practices that: (1) deprive loan officers of paid rest periods guaranteed under California law (or provide premium wages in lieu thereof); (2) deprive loan officers of mandatory minimum wages for compensable work; (3) fail to provide loan officers with wage statements from which they can accurately discern statutorily required information; and (4) willfully fail to pay loan officers all wages due at time of termination or seventy-two hours after resignation.

Plaintiffs and the putative class were paid according to a "Loan Officer Compensation Plan" annually published by Defendant. PNC does not dispute that all putative class members were paid in accordance with the applicable plans. Plaintiffs allege the official compensation plans as implemented violate California law, and the practices resulting from those official compensation plans resulted in wage-and-hour violations inflicted upon the entire class.

## II.   FACTUAL BACKGROUND

### A.   Loan Officer Working Hours, Duties, Compensation.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

        Compensation is first communicated to incoming Loan Officers via Offer Letters which outline compensation as: "an annualized salary of $33,280, based on a 40-hour workweek" and eligibility to "participate in the PNC Mortgage Originations Incentive Plan." *See, e.g.* Offer Letters to Plaintiffs, attached as Ex. C to Swidler Decl.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

---

[1] A basis point is 1/10,000 of the loan amount. For example, 50 basis points equates to .5%; on a $500,000 loan this would amount to $2,500 in gross commissions.

2



3

**B.** **Loan Officer Hourly Pay Is a Draw Against Commissions.**

---

[2] PNC altered its compensation plan in a material way in July of 2019 in direct response to this lawsuit. Smiles Dep. at 100:15-100:24.  Those changes are discussed in the following section.

4

1  
2  
3  
4  
5  
6  
7 .  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  

| PERIOD DRAW INFORMATION | | | | |
|---|---|---|---|---|
| Description | Period Beginning Balance | This Period Activity | | Period Ending Balance |
| | | Paid | Recovered | Unrecovered | |
| Regular Pay | $0.00 | $2,560.00 | $2,560.00 | $0.00 | $0.00 |

| REFERRAL CROSS SELL INCENTIVE | | |
|---|---|---|
| Description | Number of Revenue Credits | Amount |
| Retail Cross Sell Referral | 0.00 | $0.00 |
| AMG Cross Sell Referral | 0.00 | $0.00 |

| INCENTIVE PERIOD ADJUSTMENTS | | | | | |
|---|---|---|---|---|---|
| Description | Period Amount | Repay Regular Pay | Repay Non-Cumulative | Repay Cumulative | Gross Payroll Amount |
| Gross Incentive Period | $6,982.50 | | | | $6,982.50 |
| Incentive Adjusted | $6,982.50 | $2,560.00 | $0.00 | $0.00 | $4,422.50 |
| Total Variable Earning: | $6,982.50 | $2,560.00 | $0.00 | $0.00 | $4,422.50 |

1  Ex. 1-G at PNC000666.

2       Although the Earnings Statement shows that Plaintiff Scheid's Total Variable

3  Earnings for the Period totaled $6,982.50, that amount was reduced by the $2,560 in

4  "Regular Pay" which was provided to Plaintiff Scheid during the same month, and is listed

5  under the table as "Period Draw Information" above.  After reducing the commissions by

6  the $2,560 of Regular Pay, Defendant paid Plaintiff Scheid $4,422.50 in commissions,

7  listed on the bottom right as the "Gross Payroll Amount."



7

1

2

3

4

5

6

7

8

9

10

11

**C.**       <u>**PNC Modifies its Compensation Plan beginning in July of 2019.**</u>

13

14

15

16

17

18

19

20

21

22

Plaintiffs note that at this point, Defendant has not provided any data showing it has implemented any Plan Change (and indeed, has not even formally produced the July 2019 Plan). All currently available evidence that has been formally produced shows that the

26

27

28

8

deductions are still occurring.[3]

## III.    <u>LEGAL ARGUMENT</u>

Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification. A district court considering a motion for class certification must undertake "a rigorous analysis" to ensure that the requirements of Fed. R. Civ. P. 23(a) are met.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and the district court may resolve disputes going to the factual setting of the case if necessary to the class certification analysis.  "[B]ut Rule 23 'grants courts no license to engage in free-ranging merits inquiries at the certification stage.' Instead, 'merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015), quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013).

A plaintiff bears the burden of demonstrating that he or she has met each of the requirements of Fed. R. Civ. P. 23(a) and one of the requirements under Fed. R. Civ. P. 23(b).  Here, Plaintiffs seek certification by meeting each requirement of Fed. R. Civ. P. 23(a) and by meeting the predominance requirement of Fed. R. Civ. P. 23(b)(3).

### A. <u>Plaintiffs have met each requirement of Rule 23(a)</u>

Rule 23(a) requires that Plaintiffs prove by a preponderance of the evidence that: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class[4]; (iii) the claims or defenses of the representative parties

---

[3] Plaintiffs will be requesting records to confirm these changes.  Defendant has not formally produced the July plan and instead has only produced it informally via an unexpected email on August 20, 2019, about an hour before the designee deposition began.

[4] Because the Rule 23(a)(2) requirement of commonality is subsumed by the more rigorous Rule 23(b)(3) predominance requirement, Plaintiffs discuss commonality in Section B when discussing predominance.

are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1. Plaintiffs have met the numerosity requirement and the class is ascertainable (Rule 23(a)(1)).

"The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.' Nevertheless, precedent provides some guidance. In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010), quoting *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980).



Because the proposed class contains over 100 class members, numerosity is clearly established.  Moreover, as Defendant has been able to specifically identify each individual in the class definition, it is equally clear that the proposed class is ascertainable.

---

[5] Although Plaintiffs seek certification of a single class, they propose different recovery periods on the claims.  For the rest break violations that constitute unlawful conduct under the Unfair Competition Law, Business and Professions Code § 17200, et seq., the recovery period extends back to four years before the case's filing.  *See* Business and Professions Code § 17208.  Plaintiffs abbreviate the recovery period for the non-productive time claim, to the period after the release date of the settlement in the prior *Bland* litigation.  Finally, the recovery period for the itemized pay statement violations extends back three years from the case's inception for actual damages and one year for the alternative penalty measure of recovery. *See Hassan v. Praxair, Inc.,* 2019 WL 3064435, at *4–5 (C.D. Cal. Mar. 4, 2019).

**2.    Plaintiffs' Claims are typical of the claims of the class (Rule 23(a)(3)).**

Under Rule 23(a)(3), "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Here, the named Plaintiffs are typical because they held the same positions as all class members, had the same job duties, and were subject to the same policies and practices. *See Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 623 (E.D. Cal. 2012).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████    ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████.

**3.    Plaintiffs will adequately Represent the Interests of the Proposed Class (Rule 23(a)(4)).**

A plaintiff satisfies the adequacy requirement of Rule 23(a)(4) if her or she has no conflicts of interest with the Class and is represented by qualified, competent counsel. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 535 (N.D. Cal. 2012). Plaintiffs have no conflicts of interest with the proposed class. Scheid Decl. at ¶ 4; Kazi Decl. at ¶ 4. Because their claims are typical of those of the proposed class, named Plaintiffs possess the same interests and have suffered the same injuries as the proposed class. Plaintiffs' declarations reflect their understanding of the nature of the claims and duties to the class. *See generally*

11

Scheid Decl. and Kazi Decl. Plaintiffs are ready and willing to pursue their and class members' rights to relief. *See id.* Accordingly, Plaintiffs will adequately represent the Class. The adequacy of Plaintiffs' counsel is addressed below in conjunction with Fed. R. Civ. P. 23(g). As set forth in the accompanying declarations, Plaintiffs' counsel are experienced and adequate to serve as class counsel.

### B. <u>Plaintiffs' Claims are common (Rule 23(a)(2) and Class Issues Predominate over Individual Issues (Rule 23(b)(3).</u>

"[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Dukes.*, 564 U.S. 338 (internal citation omitted). "Where questions common to class members present significant issues that can be resolved in a single adjudication there is clear justification for handling the dispute on a representative rather than on an individual basis. However, the common contention must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014) (internal citations omitted).

Plaintiffs seeking to certify a class under Rule 23(b)(3) further must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

### 1. Common Issues Predominate with Respect to Plaintiffs' Rest Period Claims.

Under California law, "[a]n employer shall not require an employee to work during a ... rest ... period mandated pursuant to ... [among other things, an] ... applicable ... order of the Industrial Welfare Commission ...." Cal. Lab. Code § 226.7(b). "If an employer fails to provide an employee a ... rest ... period[,] ... the employer shall pay the employee one

1 additional hour of pay at the employee's regular rate of compensation for each workday

2 that the ... rest ... period is not provided." Cal. Lab. Code § 226.7(c). The "rest ... period ...

3 shall be counted as hours worked, for which there shall be no deduction from wages." Cal.

4 Lab. Code § 226.7(d).

5 　　IWC Wage Order 4-2001, Cal. Code Regs. tit. 8, § 11040 [hereinafter "Wage Order

6 4"], generally applies to "persons employed in professional, technical, clerical, mechanical,

7 and similar occupations whether paid on a time, piece rate, commission, or other basis."

8 Wage Order 4, § 1. Wage Order 4 requires employers to "authorize and permit all

9 employees to take rest periods .... The authorized rest period time shall be based on the

10 total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or

11 major fraction thereof." Wage Order 4, § 12(A). Just as provided in Labor Code section

12 226.7(d), Wage Order 4 provides that "[a]uthorized rest period time shall be counted as

13 hours worked for which there shall be no deduction from wages." *Id.* Also like the statute,

14 Wage Order 4 further provides that "[i]f an employer fails to provide an employee a rest

15 period[,] ... the employer shall pay the employee one (1) hour of pay at the employee's

16 regular rate of compensation for each workday that the rest period is not provided." Id. §

17 12(B).

18 　　California law requires rest periods to be paid. For an employer to fulfill this

19 requirement, "rest periods must be separately compensated in a piece-rate system." *Bluford*

20 *v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013); *see also* Cal. Labor Code §

21 226.2(a)(1) ("Employees shall be compensated for rest and recovery periods and other

22 nonproductive time separate from any piece-rate compensation."). As detailed below, PNC

23 pays all California Loan Officers on a piece rate basis.

24 　　Defendant's uniform and official companywide policy regarding work breaks strays

25 from California's requirements because

26

27

28

1    ████████████████████████████████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████

9    ██████████████████████

10         Because an employer must provide *separate* and *additional* pay for mandatory rest

11    and recovery periods, an employer cannot comply with the law by simply providing such

12    compensation as a draw against future commissions. ████████████████████

13    ██████████████████████████████████████████████ in *Barreras v.*

14    *Wells Fargo Bank,* 2018 WL 5276294 (C.D. Cal. Jan. 19, 2018), now on appeal to the

15    Ninth Circuit.  In *Barreras*, bank mortgage loan officers were paid pursuant to annual

16    compensation plans which provided: "(1) hourly pay ("Advances on Commissions"); (2)

17    incentive pay (including commissions) to the extent it exceeded advances; and (3)

18    premiums for overtime hours worked."  *Id.* at *3.  Though commissions/incentives were

19    reduced by the hourly pay, the compensation plans stated that the employer could not

20    "recover any hourly pay back from any employee. Hourly pay is fully vested when received

21    and is not subject to recapture by Employer under any circumstances." *Id.*████████ in

22    *Barreras* loan officers were provided pay every two weeks.  "Straight-time work hours

23    recorded in the timekeeping system for a two-week period [were] listed as 'Regular Pay.'

24    Regular Pay [was] a component of the Regular Advance [that was subtracted from the

25    incentives/commissions]." ████████████ loan officers did not clock out for rest breaks, and

26    the pay for such rest periods was "included in the [loan officer's] hourly-rate pay." *Id.* at

27    *4.

28

Wells Fargo argued that because the employee was guaranteed to not earn less than his hourly regular pay, rest periods were paid. But the *Berreras* court disagreed and found the payment system materially identical to that back pay recapture scheme declared unlawful in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 108 (2017). The court determined that by reducing commissions by the amounts paid for rest periods, the employer had recaptured such amounts and thus could not be said to have paid for the rest periods, as mandated by law.

Defendant may argue that *Barreras* was somehow wrongly decided, or note that it is currently on appeal to the Ninth Circuit. But the Court need not resolve today which party is entitled to judgment on these claims. It is clear is that the predominant issues in this case are common and shared amongst the entire class: is it a violation of California law to treat payment provided for rest and recovery periods as a draw against commissions/incentives otherwise due to the employee. If the answer is yes, as *Berreras* held, then the class is entitled to judgment. If the answer is no, then Defendant is entitled to judgment.

"Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Restaurant Corp.*, 53 Cal. 4th at 1033. Thus, many courts have certified classes or found classwide liability where an employer's uniform policy regarding breaks was inconsistent with California's meal and rest break requirements. *See, e.g.*, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 965 (9th Cir. 2013) (liability may flow from a facially defective policy, considered along with other factors); *Faulkinbury v. Boyd & Assocs.*, 216 Cal. App. 4th 220, 232-40 (2013) (common issues predominated because liability could be determined classwide based on uniform meal and rest period policies, or lack thereof); *Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701, 728 (2013) ("[T]he language of the wage order . . . imposes an affirmative obligation on every employer to authorize and provide legally required meal and rest breaks; if it fails to do so, it has violated the law and is liable. . . . We fail to see

how [employer] could discharge its affirmative obligation to authorize and permit meal and rest breaks purely through inaction."); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1303–07 (2010); *Bufil v. Dollar Fin. Grp., Inc.*, 162 Cal. App. 4th 1193, 1197-99 (2008).

Ultimately, Plaintiffs will at an appropriate time following certification seek summary judgment on such claims; but at this juncture Plaintiffs are not required to demonstrate that they will prevail.  What is clear: Plaintiffs challenge the official pay practices which equally applied to all loan officers working for Defendant in the state of California.

Similarly, provided Plaintiffs and the class are entitled to relief, damages can be easily and mechanically calculated class-wide.  The mandatory statutory penalty to any employer who fails to provide a compliant California rest and recovery period is for that employer to pay one hour of regular pay for each shift worked where the rest and recovery period was not provided.  Because the pay information has been provided in computer-readable electronic data, such information can easily be analyzed to calculate damages class-wide.

Thus, Plaintiffs have shown predominance with respect to their Rest Period claim and the Court should certify such claim.

### 2. Common Issues Predominate with Respect to Plaintiffs' Non-Productive Minimum Wage Claims.

California law requires employers to provide workers with at least the minimum wage for all time worked. *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323–24 (2005). Employers do not comply with this mandate simply by averaging wages over a period of time, even if compensating according to a piece-rate model, unlike under the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201-219. *Armenta*, 135 Cal. App. 4th at 324.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████  Similar to

1   Plaintiffs' Rest Period claims, here Plaintiffs allege that ████████████████

2   ██████████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████████████

4   ████████

5   ████████████████████████████████████████████████████████████

6   ██████████████████████████    ████████████████████████████████

7   ██████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████

10  ████████████████████████████████████

11          Though it remains unclear whether PNC has accurate records relating to the amount

12  of non-productive time Plaintiffs engaged in each workweek, even if such records do not

13  exist, Plaintiffs are entitled to use reasonable estimates to establish damages.  *See*

14  *Hernandez v. Mendoza*, 199 Cal. App. 3d 721 (Cal. Ct. App. 1988).  Instead, "where the

15  employer has failed to keep records required by statute, the consequences for such failure

16  should fall on the employer, not the employee. In such a situation, imprecise evidence by

17  the employee can provide a sufficient basis for damages… Once an employee shows that

18  he performed work for which he was not paid, the *fact* of damage is certain; the only

19  uncertainty is the *amount* of damage. In such a case, it would be a perversion of justice to

20  deny all relief to the injured person, thereby relieving the wrongdoer from making any

21  restitution for his wrongful act." *Hernandez*, 199 Cal. App. 3d 721 (internal citations

22  omitted, emphasis in original); *see also Furry v. E. Bay Publ'g, LLC*, 30 Cal. App. 5th 1072

23  (Cal. Ct. App. 2018), *reh'g denied* (Jan. 4, 2019) (Jan. 4, 2019) (same).

24          Here, Plaintiffs can establish with certainty that they and class members performed

25  work which was not paid, as Defendants' records show that certain training sessions were

26  completed.  Thus, all that remains is the dispute regarding the *amount* of damages.  Under

27  such circumstances, the class may rely on reasonable estimates to carry their burden.  *See*

28  *id.*

17

1



2

3

4

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Excerpt of PNC001540; Swidler Decl. at ¶ 3.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

██████ the issue for today is not whether Plaintiffs are entitled to relief for non-payment of non-productive time.   The present issue is: whether common issues predominate over individual issues in deciding if Defendant's pay structure provided pay for non-productive time.   Because Plaintiffs challenge the official pay practices of Defendant, and because the payment structure, whereby any pay provided for non-productive time was utilized as a draw against the piece-rate commission pay, is common to all class members, Plaintiffs have establish that determining the legality of such system is amenable to class-wide resolution.

Accordingly, Plaintiffs are entitled to class certification on their claims seeking minimum wage payment for non-productive hours.

### 3.   Common Questions Predominate with Respect to Plaintiffs' Claims for Itemized Wage Statement Violations.

Under California law, employers must provide employees with "an accurate itemized statement in writing" that includes "gross wages earned," "total hours worked," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Cal. Labor Code § 226(a). The category of "gross wages earned" includes premium wages owed for meal and rest periods that the employer failed to provide. *See Abad v. Gen. Nutrition Centers, Inc.*, No. SACV 09-00190-JVS, 2013 WL 4038617, at *4 (C.D. Cal. Mar. 7, 2013); Wage Order No. 4 § 7(A)(4). Effective January 1, 2016, the wage statement statute clarifies that wage statements provided to employees who are paid on a piece-rate basis must include "[t]he total hours

1 of compensable rest and recovery periods, the rate of compensation, and the gross wages

2 paid for those periods during the pay period." Cal. Lab. Code § 226.2(a)(2).

3 ██████████████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████████████████

7 ████████████████████████████     ██████████████████████████████████

8 ██████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████

10     Moreover, a Loan Officer's entitlement to statutory damages under California's

11 itemized wage statement law will not depend on individualized inquiries. Employees are

12 entitled to statutory damages where they have suffered injury "as a result of knowing and

13 intentional failure by an employer to comply" with the wage statement laws. Cal. Lab.

14 Code § 226(e)(1). The injury requirement is met where certain information cannot be

15 "promptly and easily" determined from the face of the wage statement, including gross

16 wages, total hours worked, and hourly rates. *Id.* § 226(e)(2)(A). The "promptly and easily"

17 standard is evaluated objectively and therefore does not depend on what individual drivers

18 were able to discern from the wage statements. *Id.* § 226(e)(2)(C).

19     Accordingly, common questions predominate as to Plaintiffs' wage statement

20 claims. Courts consistently agree such claims are appropriate for class treatment. *See, e.g.*,

21 *Jaimez*, 181 Cal. App. 4th at 1305–07; *Seckler v. Kindred Healthcare Operating Grp., Inc.*,

22 No. SACV 10-01188 DDP (Rzx), 2013 WL 812656, at *12 (C.D. Cal. Mar. 5, 2013); *Perez*

23 *v. Safety-Kleen Sys., Inc.*, Nos. C 05-5338 PJH, C 07-0886 PJH, 2007 WL 1848037 (N.D.

24 Cal. June 27, 2007); *Bellinghausen v. Tractor Supply Co.*, No. C-13-02377 JSC, 2014 WL

25 465907, at *5-9 (N.D. Cal. Feb. 3, 2014) (reviewing cases finding Cal. Lab. Code § 226

26 violation for not reporting premium wages for missed meal or rest periods); *Schulz v.*

27 *QualxServ, LLC*, No. 09-CV-17-AJB MDD, 2012 WL 1439066, at *7–8 (S.D. Cal. Apr.

28

26, 2012) (standardized paystub that did not provide for reporting of missed meal period supported certification of class of mobile technicians).

### 4. Common Questions Predominate with Respect to Plaintiffs' Claims Under the California Unfair Competition Law.

California's Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. Here, Plaintiff's UCL claims are based on his allegations that PNC has violated provisions of the Labor Code and Wage Order No. 4-2001 governing minimum wage, meal and rest periods, and itemized wage statements. When, as here, UCL claims are derivative of other statutory or regulatory claims, predominance is met with respect to the UCL claims if it is met with respect to the other claims. *See Mendez v. R±L Carriers, Inc.*, No. C 11-2478 CW, 2012 WL 5868973, at *19 (N.D. Cal. Nov. 19, 2012).

### 5. Common Question Predominate with Respect to Plaintiffs' Claims for Waiting Time Penalties.

Under California law: "If an employer willfully fails to pay, without abatement or reduction, …., any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but such wages shall not continue for more than 30 days. …" *Mamika v. Barca,* 68 Cal.App.4th 487, 492, 80, Cal.Rptr.2d 175, 178 (Cal. App. 1998).  Unpaid wages are due immediately upon discharge, or within seventy-two hours after resignation. *See* Labor Code §§ 201-03.  In *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1 (Cal. Ct. App. 1981),   the court elaborates as follows on what is a willful violation:

> However, to be at fault within the meaning of the statute the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due.  As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done.'" (quoting *Davis v. Morris*, 37 Cal.App.2d 269, 99 P.2d 345 (Cal. App. 1940)).  The standard

for willfulness appears to require nothing more than the employer's overtime violation's not being the product of inadvertence. *See Davis v. Morris*, supra, at p. 274: Willfulness "…' amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'…" (quoting *May v. New York Motion Picture Corp.,* 45 Cal. App. 396, 404, 187 P. 785, 788-789 (Cal. App. 1920).

Thus, under section 203, once Plaintiffs meet their burden of proving that PNC intentionally failed to pay wages due, as opposed to a mistake or clerical error, the burden shifts to PNC to prove it, nevertheless, objectively acted in good faith. *See Baker v. Am. Horticulture Supply, Inc.*, 186 Cal. App. 4th 1059, 1076 (2010) (willfulness showing does not require intent to break the law); *FEI Enters., Inc. v. Yoon*, 194 Cal. App. 4th 790, 801-02 (2011) (objective standard). Here, PNC's failure to pay such wages was a matter of deliberate policy, not inadvertence. Importantly, Plaintiffs allege PNC violated its obligation to timely providing separation wages by failing to provide payment for non-productive time and by failing to provide premium wages in lieu of mandatory paid rest periods. The central common questions underlying Plaintiffs' other claims are thus also the predominant question with respect to PNC's liability for waiting time penalties.

Waiting time penalty claims may be subject to a good faith defense. "A 'good faith dispute' …occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery … Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" 8 Cal. Code Regs. § 13520. An employer thus cannot carry its burden to show good faith by disputing a reasonably settled point of law. *Barnhill*, 125 Cal. App. 3d at 8–9. Ultimately, because PNC's payment scheme was identical to all of the class, whether PNC acted in good faith in implementing such scheme is a is a common question supporting certification

The recovery period for the waiting time penalties extends back to three years before the lawsuit started. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1392 (2010)

## C.     A Class Action is the Superior Method for Resolving this Dispute.

Rule 23(b)(3) is also satisfied because a class action is the superior method for resolving Plaintiffs' and the class's claims. The class members' interests in "individually controlling . . . separate actions," Fed. R. Civ. P. 23(b)(3)(A), must be considered through the lens of the employer-worker relationship. There are "strong disincentives" for employees to step forward with claims against a current or former employer. *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at \*5 (C.D. Cal. July 31, 2012). Courts have long emphasized that class action litigation effectively deters and redresses violations of wage-and-hour statutes, consistent with the strong remedial policies embodied in those statutes for employee protection. *See, e.g.*, *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 339–40 (2004); *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1537-38 (2008).

Concentrating class members' claims in this forum will serve the interests of justice and judicial economy. Fed. R. Civ. P. 23(b)(3)(C). This case involves over two hundred class members with claims against Defendant based on the same unlawful policies and practices. Consolidating these claims into a single class action will conserve judicial resources. *See, e.g.*, *Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (EX), 2016 WL 4238635, at \*9 (C.D. Cal. Aug. 10, 2016).

Finally, a class action is a superior method for resolving this dispute because this litigation will be manageable as a class action. Fed. R. Civ. P. 23(b)(3)(D). "The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action." *Hootkins v. Chertoff*, No. CV 07-5696 CAS(MANX), 2009 WL 57031, at \*8 (C.D. Cal. Jan. 6, 2009). As demonstrated above, common questions in this case predominate over any individual questions. The only significant individual questions this action raises are varying amounts of damages for Defendant's violations of the minimum wage and rest period laws. But as explained above, damages for these claims can be computed on a classwide basis based on electronic records and will not impose a great burden on the Court.

Calculation of damages in this case will be relatively straightforward. With respect to class members' rest period claims, damages owed will be one hour paid at the regular rate for each work shift of more than 3.5 hours.  With respect to minimum wage for non-productive time, the amount of non-productive time can be determined from Defendant's records of the on-line training completed by each class member, as reflected in Defendant's "Duration" or time for each on-line training course.  Also, training meetings, etc. can be estimated based on representative evidence, for which Plaintiffs will be owed minimum wages.  While Plaintiffs are entitled to other damages (such as liquidated damages and interest) under California law, such calculations are straight-forward and pose not concerns to certification.

### D.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

Law Offices of James M. Sitkin (by James M. Sitkin), Swartz Swidler LLC (by Justin Swidler), Robert D. Soloff, P.A. (by Robert D. Soloff), and Frank Weinberg Black, P.L. (by Marc A. Silverman) seek appointment as Class Counsel pursuant to Fed. R. Civ. P. 23(g). For the reasons fully set forth in their declarations (filed herewith), the Court should appoint these law firms and specifically the identified attorneys as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request that their Motion be granted, that the proposed Class be certified under Fed. R. Civ. P. 23(b)(3), and that they and their counsel be appointed as adequate Class Representatives and Class Counsel.[6]

Respectfully,

[signature block on next page]

---

[6] Once the class is certified, Plaintiff proposes to meet and confer with PNC to develop an appropriate plan for providing notice to the class.

1

2          SWARTZ SWIDLER, LLC

3          LAW OFFICES OF JAMES M. SITKIN

4          ROBERT D. SOLOFF, P.A.

5          FRANK WEINBERG & BLACK, P.L.

6          By: */s Justin L. Swidler*

7                Justin L. Swidler, Esq.

8
Dated: August 30, 2019
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28