**REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA  90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 623 7022

Attorneys for Defendant PNC Bank, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>               Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>**DATE:  JANUARY 24, 2020**<br>**TIME:   9:30 A.M.**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

# Table of Contents

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 4 |
| A. | PNC's Mortgage Loan Business | 4 |
| B. | PNC's Compensation of California MLOs | 4 |
| | 1. MLOs Earned and Were Paid a Salary ███████████ | 5 |
| | 2. Some MLOs Earned and Were Paid Plan Incentive Pay ████████ | 5 |
| | 3. Some MLOs Earned and Were Paid ██████████████ | 7 |
| | 4. MLOs (Other Than Plaintiffs) Attest That They Were Paid for All of Their Time on the Job, Including for Rest Breaks and Other Non-Productive Time | 8 |
| C. | Plaintiffs' Experiences as California MLOs for PNC | 8 |
| D. | Plaintiffs' Pursuit of Claims in This Litigation | 11 |
| E. | Prior Litigation and Settlement of Related Issues | 13 |
| III. | ARGUMENT AND AUTHORITY | 14 |
| A. | Plaintiffs Have Failed to Prove Commonality | 14 |
| B. | Plaintiffs Have Failed to Prove Predominance | 18 |
| C. | Plaintiffs Have Failed to Prove Typicality | 20 |
| D. | Plaintiffs Have Failed to Prove Adequacy | 22 |
| E. | Plaintiffs Have Failed to Prove Superiority | 24 |
| IV. | CONCLUSION | 25 |

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barreras v. Wells Fargo Bank*,
   2018 WL 5276294 (C.D.Cal. 2018).............................................................................17

*Bland v. PNC Bank, N.A.*,
   No. 2:15-cv-01042-AJS (W.D. Pa.)...........................................................................13

*Brady v. Deloitte & Touche LLP*,
   2012 WL 1059694 (N.D.Cal. 2012) ..........................................................................25

*Brinker Rest. Corp. v. Superior Court*,
   53 Cal.4th 1004 (2012) .............................................................................................16

*Brown v. Fed. Express Corp.*,
   249 F.R.D. 580 (C.D. Cal. 2008) ..............................................................................25

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................1, 20

*Cupp v. Mark Azzouni*,
   2014 WL 1922186 (N.D.Cal. 2014) .....................................................................22, 24

*Deleon v. Verizon Wireless, LLC*,
   207 Cal.App.4th 800 (2012) .....................................................................................18

*DeLoach v. Provident Health Servs.*,
   1993 WL 850445 (S.D.Ga. 1993)..............................................................................22

*Dzakula v. McHugh*,
   746 F.3d 399 (9th Cir. 2014) ......................................................................................2

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .......................................................................................3

*Falcon v. Philips Elecs. N. Am. Corp.*,
   304 F.App'x 896 (2d Cir. 2008).................................................................................24

*Forrand v. Federal Express Corp.*,
   2013 WL 1793951 (C.D.Cal. 2013)...........................................................................20

*Ginsburg v. Comcast Cable Com. Mgmt. LLC*,
   2013 WL 1661483 (W.D.Wash. 2013).................................................................20, 24

*Hover v. Seattle-First Nat'l Bank*,
   2018 WL 1695403 (W.D.Wash. 2018)........................................................................20

ii

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Hughes v. WinCo Foods*,
  2012 WL 34483 (C.D.Cal. 2012)...................................................................................25

*J.T. v. Regence Blueshield*,
  291 F.R.D. 601 (W.D. Wash. 2013) ......................................................................... *passim*

*Jimenez v. Domino's Pizza*,
  238 F.R.D. 241 (N.D.Cal. 2010)...................................................................................25

*Monroe v. City of Charlottesville, Va.*,
  579 F.3d 380 (4th Cir. 2009) ................................................................................23, 24

*Munoz v. Giumarra Vineyards Corp.*,
  2012 WL 2617553 (E.D.Cal. 2012)...............................................................................21

*Narayan v. EGL, Inc.*,
  285 F.R.D. 473 (N.D.Cal. 2012)......................................................................................3

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................................................14

*Ordonez v. Radio Shack, Inc.*,
  2013 WL 210223 (C.D.Cal 2013)..................................................................................17

*Prachasaisoradej v. Ralphs Grocery Co.*,
  42 Cal.4th 217 (2007) ...................................................................................................18

*Rader v. Teva Parenteral Medicines, Inc.*,
  276 F.R.D. 524 (D.Nev. 2011)......................................................................................23

*Rodman v. Safeway, Inc.*,
  2014 WL 988992 (N.D.Cal. 2014) ..................................................................................1

*Rosales v. El Rancho Farms*,
  2011 WL 6153276 (E.D.Cal. 2011)................................................................................17

*Rosenberg v. Renal Advantage, Inc.*,
  2013 WL 3205426 (S.D.Cal. 2013)..........................................................................22, 24

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) ........................................................................................23

*Spann v. AOL Time Warner*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ...................................................................................22

*Townsend v. Monster Beverage Corp.*,
  303 F.Supp.3d 1010 (C.D.Cal. 2018) ...........................................................................18

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ........................................................................................20

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S.Ct. 1036 (2016) ............................................................................................................18

*Vaquero v. Stoneledge Furniture LLC*,
    9 Cal.App.5th 98 (2017) .....................................................................................................9, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................................3, 14, 18

*Washington v. Joe's Crab Shack*,
    271 F.R.D. 629 (N.D.Cal. 2010) ..........................................................................................22

*In re Wells Fargo Home Mortgage*,
    571 F.3d 953 (9th Cir. 2009) ................................................................................................18

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ...........................................................................................1, 18

**Statutes**

11 U.S.C. §554(c) ..............................................................................................................................2

**Other Authorities**

ADR L.R. 3-5(b) ...............................................................................................................................11

Civil L.R. 3-15 ..................................................................................................................................12

Civil L.R. 16-8(b) .............................................................................................................................11

Fed. R. Civ. P. 23(a) .......................................................................................................................1, 20

Rule 23 ............................................................................................................................................1, 24

Rule 23(b)(3) ..............................................................................................................................1, 18, 24

Rule 23(b)(3)(C) ...............................................................................................................................25

Rule 23(b)(3)(D) ...............................................................................................................................24

Rule 26(a) .........................................................................................................................................20

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## I.    INTRODUCTION

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Parties pursuing a class action have the burden to prove numerosity, commonality, typicality, and fair and adequate representation of the class under Fed. R. Civ. P. 23(a) ("Rule 23") as well as that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). "At class certification, a court does not accept at face value a plaintiff's theory of the case," the court must engage in a "rigorous analysis" into whether Rule 23 requirements are satisfied, and "frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Rodman v. Safeway, Inc*., 2014 WL 988992, *6 (N.D.Cal. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

In this case, Plaintiffs Kazi and Scheid are former Mortgage Loan Officers ("MLOs") who worked for Defendant PNC Bank ("PNC") and who are asserting minimum wage, rest break, and other derivative claims. Plaintiffs admit they received a salary for all time they worked; however, they allege the salary was merely a draw against commissions they earned under PNC's Mortgage Originations Incentive Plan ("Plan") and that the salary thus did not actually pay for nonproductive time, including training, meetings, and rest breaks. Plaintiffs' request to certify claims on behalf of a class of 207 California MLOs should be rejected for three overarching and interrelated reasons.

First, Plaintiffs have not met their burden to prove commonality and predominance. There is no commonality because Plaintiffs have not established that their legal theory can be established universally through common proof that results in a common answer to the relevant legal question (*i.e.*, were MLOs paid for nonproductive time). In fact, in their depositions, Plaintiffs admitted that the answer to this question depends on individualized circumstances, requiring a person-by-person, pay-period-by-pay-period analysis. Moreover, even if commonality could be established (it cannot), Plaintiffs have not established that common issues predominate over individualized issues. Key individualized issues include whether and when MLO salaries were independent of any incentive

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1  pay, the types and amount of incentive pay MLOs received, whether that pay (or MLO salaries)

2  covered nonproductive time (including breaks), and whether other defenses bar MLO claims.

3        Second, Plaintiffs have failed to prove that they are typical or adequate to represent other

4  MLOs in this matter. Despite Plaintiffs' claim that all MLOs were treated and paid the same, in their

5  depositions Plaintiffs identified different documents as the "Plan" under which they were paid (Kazi

6  identified a one-page summary, PNC 001001, the last page of Exhibit 17 to Kazi's deposition),

7  disagreed on whether they accurately reported their work hours (Scheid said yes, Kazi said no), and

8  disagreed as to whether they actually took rest breaks (Scheid said yes, Kazi said no). Plaintiffs did

9  agree on some facts: they received pay for all time worked; they did not receive certain types of

10  compensation provided to other MLOs; and they had long periods of time when they received their

11  salaries but originated no loan sales (and, thus, no commissions from which their salary could be

12  recaptured even under their own legal theory). Plaintiffs are also subject to defenses that do not

13  apply to other MLOs. For example, in mid-October 2019, Kazi first disclosed that he filed for

14  bankruptcy in October 2018 and obtained a discharge in February 2019 (while this lawsuit was

15  pending), but did not schedule or initially disclose his claims against PNC. After the bankruptcy

16  trustee confronted Kazi regarding the lawsuit in January 2019, the trustee told Kazi that Kazi did not

17  own the claims. *See* 11 U.S.C. §554(c); *Dzakula v. McHugh*, 746 F.3d 399, 400 n.1 (9th Cir. 2014).

18  These typicality issues also go to adequacy. In his deposition, Kazi testified that he forgot about the

19  lawsuit because, after the complaint was filed, he did not hear from his counsel for many months.

20  Moreover, after filing for bankruptcy, Kazi and his counsel failed to disclose the bankruptcy to this

21  Court and PNC's counsel for almost a year despite a series of filings where the bankruptcy filing and

22  trustee should have been disclosed. Such inattention or lack of candor demonstrates inadequacy.

23        Third, Plaintiffs have failed to prove that class certification is a superior way to address the

24  claims of PNC's 207 California MLOs. Superiority involves factors such as the interest of parties in

25  controlling their own claims and whether a class proceeding will be manageable. California MLOs

26  have demonstrated a willingness to pursue claims when they want to pursue them and, here, MLOs

27  attest that they were paid for all of the time they worked. Moreover, the pursuit of claims here will

28  be neither manageable nor efficient. Plaintiffs' counsel have extensive payroll information for every

MLO (including Plaintiffs), yet they have provided no plan for determining liability or damages. Instead, the litigation is likely to splinter into individual determinations or small subclasses (that may lack numerosity) based on when or where MLOs worked, what they did, how and what they were paid, the nature of the payment received, and whether their claims are barred. There is also no efficiency here. For example, Plaintiffs propose sending class notice to 88 MLOs whose claims are completely barred by the doctrines of res judicata and settlement and release based on the prior *Bland v. PNC Bank* class action. Ironically, Plaintiffs' counsel committed to efficiently addressing all claims in *Bland*, but now claim they did not do so. Moreover, Plaintiffs propose inviting other MLOs into the lawsuit even though they will face judicial estoppel and other defenses based on Plaintiffs' and their counsel's past representations and behavior.

Although claims involving compensation plan provisions are at times appropriate for certification, that is not true here. Although Plaintiffs state that they are challenging the legality of the Plan—that it is illegal on its face—this case does not involve a unifying challenge to a particular Plan provision. Plaintiffs contend that, because the Plan is allegedly illegal and all MLOs are paid pursuant to the Plan, they have raised a common question that warrants certification. Plaintiffs apparently misunderstand the law. The Supreme Court held in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), that the pivotal question at the class certification stage is not whether plaintiffs can raise a common question, but whether the alleged common question can generate common answers. *See Narayan v. EGL, Inc.*, 285 F.R.D. 473, 477 (N.D.Cal. 2012); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)(quoting *Dukes*, 564 U.S. at 352) (reversing grant of certification and stating "it is insufficient to merely allege any common question.... Instead, they must pose a question that will produce a common answer to the crucial question") (citations omitted). Here the "common question" cannot possibly produce common answers. MLOs other than Plaintiffs have confirmed in declarations accompanying this Opposition they agreed with PNC their compensation paid them for all of the time they worked. Moreover, even absent such agreements, a review of the work and pay circumstances of each MLO would have to be analyzed to determine whether each was in fact paid for rest breaks/non-productive time such that liability and damages could be established. For this reason, and based on the three overarching reasons outlined above, this Court

3

1    should reject Plaintiffs' attempt to certify a class to pursue claims that are inconsistent, are

2    unsupported by others, and fail to satisfy the basic requirements set forth in Rule 23(a) and 23(b)(3).

3                                    II.        STATEMENT OF FACTS

4    **A.    PNC's Mortgage Loan Business**

5           PNC is in the business of providing mortgage loans to its customers, including customers in

6    California. Mortgage loans are principally originated by individuals who have an MLO title, but a

7    subgroup of Supervising Mortgage Loan Officers ("SLOs") also sell loans. Locy Decl. ¶2; Melian

8    Decl. ¶2; Lanteri Decl. ¶2.[1]

25   **B.    PNC's Compensation of California MLOs**

26          California MLOs were generally compensated in three distinct ways.

27   _____

28   [1] Declarations filed with this Opposition are cited by last name and paragraph number (*e.g.*, Rejali Decl. ¶1). Similarly, deposition transcripts are attached to the Declaration of Saman M. Rejali ("Rejali Decl.") and are cited by last name with page and line numbers (*e.g.*, Kazi 1:1-3).

4



**1.**      **MLOs Earned and Were Paid a Salary**

**2.**      **Some MLOs Earned and Were Paid Plan Incentive Pay**



**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

3.      **Some MLOs Earned and Were Paid**

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

**4.      MLOs (Other Than Plaintiffs) Attest That They Were Paid for All of Their Time on the Job, Including for Rest Breaks and Other Non-Productive Time**

All of the MLO/SLO witnesses whose declarations are filed herewith have testified that their agreement with PNC was, and is, that all of the compensation they received paid them for all of their time at work, including time originating mortgage loans, taking rest breaks, attending training and sales meetings, and engaging in other activities on the job. Locy Decl. ¶12; Melian Decl. 11; Lanteri Dec. ¶10; Beagle Decl. ¶9; Rhodes Decl. ¶10; Deglow Decl. ¶9; Singh Decl. ¶10. Indeed,

**C.      Plaintiffs' Experiences as California MLOs for PNC**

Kazi was employed by PNC on two occasions: in 2014 and in 2017-2018. He was initially hired in September 2014, but decided to leave after a few weeks.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**



Beyond his unique understanding of the relevant plan, Kazi also testified to other unique

circumstances.

---

[3] The inaccuracy in his declaration appears to be an effort to avoid a footnote in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal.App.5th 98, 110 n.8 (2017), where the court distinguished between a salary that pays for all time worked and the hourly draws against commissions in that case.

[4]

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**



Despite the gaps and inconsistencies between the understandings and experiences of Kazi and Scheid, they agreed on some key factual issues, including:

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**



**D.      Plaintiffs' Pursuit of Claims in This Litigation**

In his bankruptcy proceeding, Kazi explained to the trustee that counsel contacted him and asked if he wanted to be part of this lawsuit: "I said okay fine and that was it. And they said they would file it. And I don't even know what that entails." Rejali Decl. Ex. 5 at 7. When asked what the claims were, he said: "To be honest, I don't know because I haven't received anything from the attorney… I don't even have any updates." *Id.* At deposition, Kazi said he reviewed the complaint for 10-15 minutes, then did not hear from counsel again for many months. Kazi 12:10-14, 64:7-16.

The complaint was filed on June 28, 2018, and asserts the following claims: (1) failure to provide paid rest periods or premium compensation in lieu thereof; (2) failure to provide accurate itemized wage statements; (3) failure to timely pay wages at termination; and (4) unfair competition.

In the following four months (before Kazi's bankruptcy filing), PNC answered and filed a Notice of Removal to this Court on August 8 (Dkt. 1); Kazi's counsel filed a Consent to Magistrate Judge on August 29 (Dkt. 12); Kazi filed a wage complaint with the Department of Labor Enforcement Standards ("DLSE") on September 21, Groh Decl. ¶ 7, Ex. 7; on October 19, the parties stipulated to private ADR to be completed by November 28 (Dkt. 23), PNC and its counsel filed the "ADR Certification" required by Civil L.R. 16-8(b) and ADR L.R. 3-5(b) (Dkt. 22), but Kazi and his counsel failed to file this certification in violation of the local rules (perhaps because counsel and Kazi were not talking); and, on October 22, the Court entered an ADR Order (Dkt. 24).

Kazi filed his bankruptcy petition on October 30, 2018. He submitted his bankruptcy schedules under penalty of perjury, swearing that he had no unpaid wages, no employment disputes, and no lawsuits or litigation of any kind. Kazi 51:4-15, 54:8-16, 67:11-16, Ex. 4. Kazi testified that he forgot that he had a lawsuit, Kazi 52:7-13, which means that his counsel planned and participated in mediation without conferring with their client (in apparent violation of the ADR rules).

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

Two days later, on November 1, Kazi's counsel filed a "Certification of Interested Entities or Persons" (Dkt. 25) pursuant to Civil L.R. 3-15 that identified PNC Financial Services and the putative class as having financial or non-financial interests in the case, but did not identify the bankruptcy estate or trustee as interested parties. The next day, the parties filed a Joint Case Management Statement (Dkt. 26), where Kazi's counsel represented that there were no related cases and, again, did not disclose the bankruptcy estate or trustee as interested parties.

Kazi's counsel then sought a stipulation and order allowing them to file an amended Complaint (without disclosing the bankruptcy) and, on November 13, 2018, Plaintiffs filed a First Amended Complaint adding Scheid as another named plaintiff and a claim for PAGA penalties (Dkt. 28). Later in November, the parties took part in private mediation as ordered by the Court.

On December 7, 2018, Kazi appeared at a creditor's meeting in his bankruptcy. After he was sworn in by the bankruptcy trustee, the following exchange occurred:

> Trustee:   Does anyone owe you any money?
> Kazi:      No.
> Trustee:   Do you have any claims or causes of action or any basis to sue anyone?
> Kazi:      No.

Rejali Decl. Ex. 4 at 3.

On January 11, 2019, Kazi signed and submitted a certification under penalty of perjury to DLSE claiming that his claims were worth $213,502. Groh Decl. ¶7, Ex. 7. A week later, on January 18, he appeared at another creditor's meeting, where he was sworn in and confronted by the trustee:

> Trustee:   Did you file a lawsuit against PNC Bank?
> Kazi:      Ummm, there is a class action lawsuit going on.
> Trustee:   You're the named plaintiff.
> Kazi:      Yeah…[b]ut…this was I think 9-10 months ago I believe and I haven't heard anything on that.
> Trustee:   Okay. You didn't disclose any information about that in your bankruptcy. You didn't disclose it as a claim or on the Statement of Financial Affairs as litigation pending. Is there a reason?
> Kazi:      Ummm, because I'm under the impression that it's going to be worthless...
> Trustee:   But the schedules don't ask that specifically. They ask if you have any lawsuits pending and you didn't disclose this and.
> Kazi:      I must have overlooked it.
>            ……
> Trustee:   Okay, well as of now you don't own this claim. I do.  So you're not authorized to sign any settlement agreements. You need to…let me know if you get contacted by your attorney about any of this.
> Kazi:      Okay. Sure.
>            ……
> Trustee:   Do you have any other lawsuits pending against anyone right now?
> Kazi:      No.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-JCS**

| Trustee: | Do you have any other claims against anyone or reasons to make claims? Any basis for a claim against anyone for any reason? |
| Kazi: | No, I don't…. |

Rejali Decl. Ex. 5 at 6-8. There was no mention of Kazi's DLSE claims, no disclosure of the value he put on his claims, and no claim (as asserted in his deposition) that he had forgotten that the lawsuit existed. *Id.* Kazi did not amend his schedules, he obtained a discharge of his debts on February 6, and his bankruptcy case was closed on February 7, 2019. Kazi 33:9-10, Ex. 3.

On March 8, 2019, Plaintiffs filed the Second Amended Complaint (Dkt. 44, 46) (the operative "Complaint") adding a claim for nonproductive time. In the Complaint, Kazi still asserted claims on his own behalf even though the trustee informed him that he no longer owned them.

In May 2019, Kazi emailed a past creditor, complaining that it had improperly attached a bank levy to an account in violation of Kazi's discharge. The creditor responded by explaining that Kazi filed "inaccurate bankruptcy schedules," which "can be disastrous" and result in loss of discharge, fines, and imprisonment. Kazi 70:4-72:16. Kazi then reopened his bankruptcy case and filed a motion for contempt and damages. *Id.* He did not, however, bother to amend his inaccurate schedules. *Id.* The bankruptcy case was closed again on October 3, 2019. *Id.* Ex. 3.

Despite this continuing bankruptcy activity, Kazi made no effort to inform this Court or PNC's counsel about the bankruptcy. There was no mention in Plaintiffs' Initial Disclosures and, on June 21, 2019, Plaintiffs' counsel once again failed to identify the bankruptcy estate and trustee as interested parties in an Updated Joint Case Management Statement (Dkt. 65).

Kazi testified he has documents regarding this and two prior bankruptcies and provided them to his counsel weeks before his deposition. Kazi 29:1-4, 33:11-19. Nevertheless, Kazi never produced those documents and first disclosed the 2018 bankruptcy in his amended interrogatory answers served on October 15, 2019, two days before Kazi's deposition. Rejali Decl. ¶9.

**E.    Prior Litigation and Settlement of Related Issues**

Plaintiffs' counsel are not only playing fast and loose with Kazi's bankruptcy; they are also asserting the same claims – that biweekly salaries paid to MLOs are draws against commissions and that nonproductive time is thus unpaid – that they litigated, settled, released, and dismissed with prejudice in *Bland v. PNC Bank, N.A.*, No. 2:15-cv-01042-AJS (W.D. Pa.), including claims under

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

"the California Labor Code, California Wage Orders, and the California Unfair Competition Law."[5] Groh Decl. ¶4, Ex. 1. The *Bland* district court approved a release of all claims through January 4, 2017, that were or could have been asserted based on the factual and legal allegations in the complaint. *Id.* ¶4, Ex. 2. ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████.

The start of 2017 was not merely the release date in *Bland*. ███████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████████

In addition to the *Bland* case, ████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

### III.        ARGUMENT AND AUTHORITY

**A.    Plaintiffs Have Failed to Prove Commonality**

"Commonality requires the plaintiff to demonstrate…a common contention…capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "The Supreme Court has explained that this requirement is better understood as an inquiry into 'the capacity of a classwide proceeding to generate common **answers** apt to drive the resolution of the litigation.'" *J.T. v. Regence Blueshield*, 291 F.R.D. 601, 612 (W.D. Wash. 2013) (quoting *Dukes*).

In this case, Plaintiffs assert that MLOs were not paid for nonproductive time (including rest breaks) because ████████████████████████████████████████████ however, they present no avenue for proving this claim with common evidence on a classwide basis. Instead, resolution of this claim will involve subsidiary issues with variable evidence and answers.

---

[5] In *Bland*, Plaintiffs' counsel made factual representations, including that MLOs were paid a **salary**, that the court accepted in its rulings. Plaintiffs are thus judicially estopped from making contrary factual assertions here. *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).



1    Initially, ████████████████ were "draws" depends on a variety of factors and

2  cannot be decided on a class basis. ███████████████



[6] It is not clear whether Plaintiffs are maintaining a claim for missed rest breaks as compared to rest breaks that were taken but unpaid. Regardless, their testimony makes clear that an individualized inquiry would be required to determine liability. ██████████████████████████████ ████████████████████████████ issues regarding compliance with break requirements are too individualized to certify. *See Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (2012).

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1

2

3

4

5

6 .

7       Finally, how *Vaquero* and *Barreras v. Wells Fargo Bank*, 2018 WL 5276294 (C.D.Cal. 2018),

8 impact the claims in this case depends on a plethora of individualized issues and cannot be decided on

9 a class basis. As both *Vaquero* and *Barreras* make clear, they relied on case law involving piecework

10 plans and/or unrecorded off-the-clock work. *Vaquero* did not involve salaries or incentive bonuses:[7]

11          This case does not involve, and we have no occasion to question, the propriety of
           compensation plans that pay non-exempt employees a salary that compensates them
12         for rest periods and other non-productive work time. (9 Cal.App.5th at 110 n.8)

13 *Barreras* involved an MLO compensation plan that provided a guaranteed hourly rate that was

14 expressly identified as an advance against later-calculated commissions.[8] Even assuming that

15 *Vaquero* and *Barreras* were decided correctly, a variety of facts make those cases distinguishable.

16

17

18

19

20

21 _____

22 [7] In *Vaquero*, the employer paid commissions each pay period and, to the extent the commissions divided by total hours worked did not equal or exceed $12.01 per hour, it paid an additional amount as a draw against future commissions. *Vaquero* found this commissions and draw system was not

23 distinguishable from a piecework system, and thus that rest breaks needed to be paid separately.

24 [8] In *Barreras*, the plan called the amounts paid to MLOs "commissions" and Wells Fargo provided no evidence that the plan included non-commission amounts. And, although the plan stated hourly

25 pay was guaranteed, it also stated hourly pay was merely an advance against commissions. The court held that this hourly advance did not constitute a separate payment to the MLOs in addition to

26 commissions, and the commissions did not compensate for rest breaks. It thus awarded rest break premium pay. An appeal is pending at the Ninth Circuit on two issues: whether hourly pay

27 (guaranteed, but an advance) paid for rest breaks, and whether a plaintiff can recover rest break premiums when rest breaks are received (but arguably not paid).

28 [9] *E.g.*, *Ordonez v. Radio Shack, Inc.*, 2013 WL 210223, *11 (C.D.Cal 2013) ("competing testimony" demonstrates that "individualized inquiries" are necessary); *Rosales v. El Rancho Farms*, 2011 WL 6153276, *25-26 (E.D.Cal. 2011) (no commonality because of "conflicting testimony").

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1  ███████████████████████████████████. Such multivariable incentive plans have been expressly

2  authorized by *Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 239 (2007). ████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████. *See Deleon v. Verizon*

7  *Wireless, LLC*, 207 Cal.App.4th 800, 808-809 (2012) ("contractual terms must be met before an

8  employee is entitled to commissions"). Finally, the question whether PNC provided pay above

9  minimum wage for all hours worked requires consideration of all pay attributable to those hours. *See*

10  *Certified Tire & Serv. Centers Wage & Hour Cases*, 28 Cal.App.5th 1 (2018) (finding variable

11  hourly rate was not a draw and paid for all hours worked, including rest breaks). ██████████

12  ████████████████████████████████████████████████████████████████████.

13       Because commonality requires not simply a common question, but a **common answer**,

14  Plaintiffs fail to meet their burden. *Regence*, 291 F.R.D. at 612; *Dukes*, 564 U.S. at 350.

15  **B.   Plaintiffs Have Failed to Prove Predominance**

16       The predominance analysis focuses on the relationship between common and individual

17  issues in the case and tests whether proposed classes are sufficiently cohesive to warrant

18  adjudication by representation. *Townsend v. Monster Beverage Corp.*, 303 F.Supp.3d 1010, 1042

19  (C.D.Cal. 2018). "[T]he 'notion that the adjudication of common issues will help achieve judicial

20  economy' is an integral part of the predominance test." *In re Wells Fargo Home Mortgage*, 571 F.3d

21  953, 958 (9th Cir. 2009). If the main issues in a case require individualized assessment,[10] a Rule

22  23(b)(3) action is inappropriate. *Zinser*, 253 F.3d at 1190.

23       In this case, Plaintiffs have not provided evidence that common issues predominate. Instead,

24  a determination as to whether MLOs were paid for nonproductive time (including rest breaks) will

25  require an evaluation of a multitude of individualized issues ████████████████████████

26

27  _____

[10] "An individual question is one where members of a proposed class will need to present evidence

28  that varies from member to member, while a common question is one where the same evidence will
suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized,
classwide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (citations omitted).

18

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**



Moreover, beyond the myriad of individualized issues involving compensation, another fundamental issue that will require individual attention is what constitutes nonproductive time. Plaintiffs use, but make no effort to define, this concept.

Beyond liability issues, courts must also consider damages and affirmative defenses when making predominance determinations. Plaintiffs had the burden to present a workable damages

19

1    model that would avoid the need for individualized proof. *Comcast Corp. v. Behrend,* 569 U.S. 27,

2    34 (2013)*; Ginsburg v. Comcast Cable Com. Mgmt. LLC*, 2013 WL 1661483, *7 (W.D.Wash. 2013)

3    ("must demonstrate a damages methodology"). Even though they have ██████████████,

4    Plaintiffs merely state their belief that damages will be easy to determine and provide no evidence of

5    a damages model.[11] Absent a model, certification is inappropriate because individual damages issues

6    would predominate. *Forrand v. Federal Express Corp.*, 2013 WL 1793951, *5 (C.D.Cal. 2013).

7        Similarly, Plaintiffs had the burden to prove that affirmative defenses do not defeat

8    predominance. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir.

9    2018). In this case, over half the putative class members are subject to individual or class releases.

10   Some are subject to multiple releases. Plaintiffs apparently intend to parse the words in the releases

11   in an effort to minimize their impact, and PNC has the right to pursue every release vigorously

12   (including testing the understanding of those bound by the release). The same is true for the res

13   judicata effect of the judgments entered in those cases. *E.g.*, *Hover v. Seattle-First Nat'l Bank*, 2018

14   WL 1695403, *2 (W.D.Wash. 2018) ("filing two separate lawsuits based on the same event—claim

15   splitting—is precluded"). And, bankruptcy fraud issues must be addressed. Having such defenses

16   "litigated on an individual basis can defeat class certification." *True Health*, 896 F.3d at 931.

17       Because a determination of whether an MLO was paid for nonproductive time (including rest

18   breaks) will require an individualized inquiry into, among other things, the nature of their activities

19   (whether productive or nonproductive), the compensation they received for the relevant time period

20   (whether salary, Plan Incentive Pay, or onboarding or other incentive pay), and whether the range of

21   compensation received can be attributed to particular activities, individual inquiries predominate in

22   this case.  *See Forrand*, 2013 WL 1793951, *5.

23   **C.    Plaintiffs Have Failed to Prove Typicality**

24       As a general matter, "[t]he typicality requirement of Rule 23(a) ensures that the interests of

25   the named plaintiff align with those of the class." *Regence*, 291 F.R.D. at 612. "To determine

26   whether the named plaintiff's claims are typical, the court analyzes 'whether other members have the

27

28   _____

[11] For example, Plaintiffs have provided no damage calculations in their initial disclosures (despite
Rule 26(a)'s requirements), discovery responses, and Motion. Rejali Decl. ¶2.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1  same or similar injury, whether the action is based on conduct which is not unique to the named

2  plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.*

3  (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

4       In this case, Plaintiffs have not articulated claims based on "the same course of conduct" and,

5  instead, focus on their own unique circumstances. ███████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  █████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ██████████████████████████There is simply no alignment of claims between Kazi and Scheid let

20  alone with the 205 other MLOs they seek to represent. *E.g.*, *Munoz v. Giumarra Vineyards Corp.*,

21  2012 WL 2617553, *27-28 (E.D.Cal. 2012) (no typicality when employee testimony conflicts).

22       This lack of typicality is further supported by MLO declarants who attest that ████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ██████████████████████. Locy Decl. ¶12; Melian Decl. ¶11; Lanteri Dec. ¶10; Beagle Decl. ¶9; Rhodes

21

Decl. ¶10; Deglow Decl. ¶9; Singh Decl. ¶10. *E.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637 (N.D.Cal. 2010) ("[P]laintiff's claims are not co-extensive with those of the class members who submitted declarations in support of [the defendant's] opposition to the present motion.").

Beyond these typicality issues regarding conduct and claims, class representatives are also not typical and "class certification is inappropriate" if their claims are "subject to unique defenses that threaten to attract the focus of the litigation." *Regence*, 291 F.R.D. at 612. Such unique defenses exist in this case. Initially, Kazi filed for bankruptcy while this lawsuit was pending and did not list the claims in his bankruptcy schedule. Kazi 51:4-15, 54:8-16, 55:22-56:1, 62:18-63:1. He is thus subject to defenses regarding standing, fraud, and judicial estoppel. *E.g.*, *Cupp v. Mark Azzouni*, 2014 WL 1922186, *2-3 (N.D.Cal. 2014). Regardless of his claimed innocent intentions, the issue of bankruptcy fraud (and Kazi's efforts to avoid consequences for his repeated misrepresentations) are likely to be the immediate focus of this litigation. In addition, both Kazi and Scheid were involved in the *Bland* class action, which will have a substantial impact on this case. That class action not only involved a settlement, release, and final judgment that bar the claims of 88 MLOs and reduce the claims of 45 others, but it also involved extensive pleadings where Plaintiffs' counsel made factual representations that bind and judicially estop Plaintiffs and their counsel in the present litigation. Again, litigation over this ███████████ will consume substantial time and energy to the detriment of the 74 MLOs who have no interest is such matters. In these circumstances, certification should be denied based on the lack of typicality. *E.g.*, *Spann v. AOL Time Warner*, 219 F.R.D. 307, 319-20 (S.D.N.Y. 2003) (no typicality when many absent class members entered into settlements).

**D.    Plaintiffs Have Failed to Prove Adequacy**

Although adequacy is not something to be questioned lightly, the development and handling of this case raise serious questions about the adequacy of Plaintiffs and their counsel.

Initially, Kazi is not an adequate representative both because he apparently committed bankruptcy fraud while this case was pending and because he does not own the claims for which he purports to act as class representative. *E.g.*, *Rosenberg v. Renal Advantage, Inc.*, 2013 WL 3205426, *10-11 (S.D.Cal. 2013) (no adequacy because "[c]laims that are not properly scheduled remain property of the bankruptcy estate, even after the court discharges the debt"); *DeLoach v. Provident*

1   *Health Servs.*, 1993 WL 850445, *2 (S.D.Ga. 1993) (by failing to disclose claims in bankruptcy,

2   plaintiff loses standing to sue and, "[w]ithout standing, one cannot represent a class"); *Rader v. Teva*

3   *Parenteral Medicines, Inc.*, 276 F.R.D. 524, 529 (D.Nev. 2011) (not adequate; no standing).

4   　　　In addition, neither Kazi nor Scheid have shown sufficient knowledge of or interest in the

5   case to serve as adequate class representatives. Kazi testified that he did not disclose the action in his

6   bankruptcy schedules because he did not recall that he had a pending lawsuit against PNC. Kazi

7   55:22-56:1. He explained that he forgot because he had not had any communications with counsel

8   about the lawsuit from the filing of the complaint until his bankruptcy, during which time his

9   counsel made certifications to the Court and engaged in mediation (apparently without consulting

10  with their client). Kazi 64:7-16. ███████████████████████████████████████████

11  ████. When potential class representatives demonstrate a lack of interest, involvement, credibility,

12  or knowledge, they are not adequate representatives.[12] *See Monroe v. City of Charlottesville, Va.*, 579

13  F.3d 380, 385 (4th Cir. 2009). That is the case here.

14  　　　The lack of communication with and involvement by Plaintiffs also reveals a far more

15  troubling aspect of adequacy. It is improper for counsel to solicit litigation and to ask parties to

16  simply lend their names to a lawsuit. *Id.* (requiring interest, involvement, credibility, and knowledge

17  "is intended to ensure that the parties are not simply lending their names to a suit controlled entirely

18  by the class attorney"). Nevertheless, in this case, Kazi swore to the trustee under oath that counsel

19  solicited him and that he did not even understand the claims. Rejali Decl. Ex. 5 at 6-7. He testified

20  that he reviewed the Complaint for 15 minutes and had no contact with his counsel until at least 5 to

21  6 months after it was filed. Kazi 12:10-14, 64:7-16. This lack of contact at the inception of the case

22  (and during a time when mediation was discussed and held) involves complete and improper control

23  by counsel, and also demonstrates a disregard for the local and ADR rules (which required

24  certifications from counsel and their clients that they reviewed this Court's ADR materials).

25

26  _____

27  [12] Plaintiffs' submission of self-serving declarations does not alter that result. Defendants recognize
    inadmissibility "is not a proper basis to reject evidence" in class proceedings. *Sali v. Corona Reg'l*
    *Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018). But, if Plaintiffs seek to apply evidentiary standards,

28  the Swidler Decl. ¶2-4, Kazi Decl. ¶10, 16-18, and Scheid Decl. ¶10, 16-18 lack foundation, contain
    improper opinion, and are argumentative, and should be stricken or disregarded.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

Finally, the lack of communication, oversight, and candor that occurred in 2018 did not end with Kazi's bankruptcy filing. Plaintiffs and their counsel have filed certifications and amended the Complaint all while knowing that Kazi did not own the claims that they were asserting. Indeed, even when Kazi provided his bankruptcy documents to counsel, they did not produce them[13] and delayed disclosing the 2018 bankruptcy until they served amended interrogatory answers two days before Kazi's deposition. There are two possible explanations for this situation: either Plaintiffs' counsel knew about Kazi's bankruptcy for a year and concealed it from the Court and PNC's counsel, or Kazi and Plaintiffs' counsel continued their pattern of non-communication. Either way, Plaintiffs and their counsel are not adequate. *See Rosenberg*, 2013 WL 3205426, *10-11; *Cupp*, 2014 WL 1922186, *2-3; *Monroe*, 579 F.3d at 385.

**E.     Plaintiffs Have Failed to Prove Superiority**

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." There are many aspects to the superiority requirement, but the ultimate test is whether efficiencies can be achieved "without sacrificing procedural fairness or bringing about other undesirable results." Advisory Comm. on Rule 23, 39 F.R.D. 69, 102-03 (1966).

Under Rule 23(b)(3)(A), one aspect of the superiority requirement involves the interest of parties in controlling their own claims. Unlike the cases Plaintiffs cite involving low wage workers who are intimidated and unlikely to pursue claims if they exist, California MLOs have demonstrated a willingness to pursue claims when they want to pursue them, whether through individual or class litigation. Here, however, MLOs attest that they were paid for all time worked.

Under Rule 23(b)(3)(D), another aspect of the superiority requirement involves whether a class proceeding will be manageable. This analysis typically starts with an analysis of a proposed plan for managing the class action. *E.g.*, *Ginsburg*, 2013 WL 1661483, *7. It is not enough to state

---

[13] Lack of production and spoliation issues may be further developed in this case. Kazi testified he provided counsel with documents that were not produced, including his hire letter and attachments, Kazi 203:5-12, 205:5-11; he had other responsive documents but made no effort to gather them, *id.* 283:6-284:3; and he understood he had an obligation to preserve documents, but made no effort to preserve emails or records or to prevent their loss, *id.* 283:6-284:3, 284:10-18, 285:2-10. Although any impact of these failures is yet to be determined, any loss of documents should have appropriate consequences. *See Falcon v. Philips Elecs. N. Am. Corp.*, 304 F.App'x 896, 897 (2d Cir. 2008).

that payroll or other records exist or that representative testimony can be offered: Plaintiffs must explain how the records or testimony can be used to prove class liability and class damages. *E.g.*, *Brady v. Deloitte & Touche LLP*, 2012 WL 1059694, *6 n.3 (N.D.Cal. 2012) (need "a reliable basis for extrapolating" to the class). ██████████████████████████████████████████████ ████████████████████████ yet they have provided no plan for proving liability or damages. The claims are thus not manageable as a class action. Instead, the litigation is likely to splinter into individual determinations or small subclasses (that may lack numerosity) based on when or where MLOs worked, what they did, how they were paid, what they were paid, and whether their claims are barred. *E.g.*, *Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 253 (N.D.Cal. 2010).

Under Rule 23(b)(3)(C), a third aspect of superiority involves the question of efficiency and judicial economy. There is none to be found in this case. Class actions that require individualized determinations and splinter into small disputes are, by their nature, inefficient. *See Hughes v. WinCo Foods*, 2012 WL 34483, *9 (C.D.Cal. 2012) (no superiority: the "class proceeding would not promote greater efficiency because the class action would devolve into hundreds or thousands of 'mini-trials'; thus, the difficulties associated with pursuing these claims via a class action outweigh any benefits"); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (no superiority: because of need for individualized proof, "class members would face many of the same difficulties in motivation and expenditure of resources that they would encounter in separate actions"). Beyond the general issues of inefficiency, this case is also likely to result in futile efforts. For example, Plaintiffs propose sending class notice to 88 MLOs whose claims are completely barred by the doctrines of res judicata and release based on the *Bland* settlement. It is pointless to invite 88 people into a lawsuit in order to tell them that they are barred by a settlement their counsel signed years earlier (after arguing to the Pennsylvania court that judicial economy would be served by resolving all issues there). And, Plaintiffs propose inviting the remaining MLOs into the lawsuit even though Plaintiffs' own testimony undercuts their claims, and the other MLOs will face judicial estoppel and other defenses based on Plaintiffs' and counsel's representations and behavior.

## IV.    CONCLUSION

For all the reasons outlined herein, the Court should deny the Motion.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K&L GATES LLP

Dated:   November 13, 2019

By:   */s/ Saman M. Rejali*
Paul W. Sweeney Jr.
Patrick M. Madden
Saman M. Rejali
Attorneys for Defendant, PNC Bank, N.A.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 3:18-CV-04810-J CS**

1

2

## CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: K&L GATES LLP, 10100 Santa Monica Boulevard Eighth Floor, Los Angeles, CA  90067.

On November 13, 2019, I served the document(s) described as:

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

The undersigned certifies that the document listed above served on counsel of record for Plaintiffs by e-mail, pursuant to an agreement between counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 13, 2019, at Los Angeles, California.

*/s/ Saman M. Rejali*

Saman M. Rejali