**REDACTED VERSION OF DOCUMENT SOUGHT TO SEALED**

James M. Sitkin (SBN 107650)
jsitkin@sitkinlegal.com
1 Kaiser Plaza, Suite 505
Oakland, CA 94612
Tel: (415) 318-1048
Fax: (415) 362-3268

Justin L. Swidler
jswidler@swartz-legal.com
Swartz Swidler LLC
1101 Kings Hwy. N. Ste. 402
Cherry Hill, NJ 08034
Tel: (856) 685-7420
Fax: (856) 685-7417

Robert D. Soloff
robert@solofflaw.com
Robert D. Soloff, P.A.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 472-0002
Fax: (954) 472-0052

Marc A. Silverman
msilverman@fwblaw.net
Frank Weinberg Black, P.L.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 474-8000
Fax: (954) 474-9850

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANSEER KAZI, *et al.*, individually and on behalf of all those similarly situated, <br><br> s, <br><br> vs. <br><br> PNC BANK, N.A., *et al.* <br><br> s. | Case No: 3:18-cv-04810-JCS <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date: January 24, 2020 <br> Time: 9:30 a.m. <br> Before: Hon. Joseph C. Spero <br><br> Trial Date: |

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................................1

II.     THE OPPOSITION FAILS TO DENY CERTIFICATION. ...............................................2

        A.      PNC's Concealed and Improperly Obtained Evidence Cannot be Considered. ...........................2

        B.      The Pay Differences PNC Identifies Do Not Defeat But Support Certification. .........................3

        C.      _Bland_ and Other Settlements Do Not Deny Certification. ...............................................9

        D.      By Ignoring Plaintiff's Showing of How Class Recovery Can Be Calculated, PNC Fails to Establish Damages are Unmanageable or Common Issues Do Not Predominate.  Varying Potential Recoveries Cannot Prohibit Certification. ......................................11

        F.      Baseless _Ad_ Homine Attacks Do Not Defeat Adequacy. .............................................13

III.    CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013)......................................................................................................1

*Anderson v. Mt. Clemens Pottery*,
  328 U.S. 680 (1946)....................................................................................................12

*Ayala v. U.S Xpress Enterprises, Inc.*,
  2017 WL 3328087 (C.D. Cal. July 27, 2017) (granting certification where no separate and additional
    payment for rest periods or NPT identified; reviewing........................................7

*Barreras v. Wells Fargo Bank*,
  2018 WL 5276294 (C.D. Cal. Jan. 19, 2018) .............................................................3

*Bell v.Farmers Ins. Exch.*,
  115 Cal. App. 4th 715 (2004)......................................................................................12

*Benedict v. Hewlett-Packard Co.*,
  314 F.R.D. 457 (N.D. Cal. 2016)................................................................................14

*Bluford v. Safeway Stores, Inc.*,
  216 Cal.App.4th 864 (2013) ..........................................................................................7

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008).................................................................................14

*Certified Tire & Serv. Centers Wage & Hour Cases*,
  28 Cal. App. 5th 1 (2018) ..............................................................................................6

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .......................................................................................11

*Dean v. United of Omaha Life Ins.*,
  2008 WL 7611369 (C.D. Cal. 2008)...........................................................................15

*del Sol v. Whiting*,
  2012 WL 12868853 (D. Ariz. July 24, 2012)..............................................................14

*DeLeon v. Verizon Wireless, LLC*,
  207 Cal. App. 4th 800 (2012) ........................................................................................5

*Ernst v. ZogSports Holdings LLC*,
  2019 WL 1435933 (C.D. Cal. Feb. 21, 2019) ............................................................14

*Forrand v. Federal Express Corp.*,
  2013 WL 1793951 (C.D. Cal. 2013)...........................................................................12

*Hendricks v. Starkist Co*,
  2016 WL 692739 (N.D. Cal. Feb. 19, 2016) ..............................................................10

*Hernandez v. Best Buy Stores, L.P.*,
  2015 WL 7176352 (S.D. Cal. Nov. 13, 2015).............................................................14

*Hesse v. Sprint Corp.*,
  598 F.3d 581(9th Cir. 2010) ........................................................................................10

*Jackpot Harvesting Co. v. Superior Court*,
  26 Cal. App. 5th 125 (2018) ..........................................................................................3

*Kang v. Wells Fargo Bank, N.A.*,
  2019 WL 468818 (N.D. Cal. Feb. 6, 2019) ............................................................3, 6

*Kao v. Holiday*,

ii

    12 Cal. App. 5th 947 (2017) ..................................................................................................4

*Kohen v. Pacific Investment Mgmt. Co. LLC*,
    (7th Cir. 2009) 571 F3d 672 .................................................................................................9

*Myles v. AlliedBarton Sec. Servs., LLC*,
    2014 WL 6065602 (N.D. Cal. Nov. 12, 2014) .................................................................10

*Naranjo v. Spectrum Sec. Servs., Inc.*,
    40 Cal. App. 5th 444 (2019) ..............................................................................................10

*Negri v. Koning & Assocs.*,
    216 Cal. App. 4th 392 (2013) ..............................................................................................7

*Petersen v. Costco Wholesale*,
    2016 WL 6768911 (C.D. Cal. 2016) ..................................................................................15

*Prachasaisoradej v. Ralphs Grocery Co.*,
    42 Cal. 4th 217 (2007) .........................................................................................................5

*Rocha v. Caliber Collision Transp. Servs. LLC*,
    2018 WL 1975137 (C.D. Cal. Jan. 11, 2018) ...................................................................10

*Spann v. AOL Time Warner, Inc.*,
    219 F.R.D. 307 (S.D.N.Y. 2003) .......................................................................................10

*Sullivan v. Kelly Servs., Inc.*,
    268 F.R.D. 356 (N.D. Cal. 2010) .......................................................................................11

*Tait v. ESH Home Appliances*,
    289 F.R.D. 466 (C.D. Cal. 2012) .......................................................................................15

*Target Corp.*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................................................15

*Torres v. Mercer Canyons Inc.*,
    (9th Cir. 2016) 835 F3d 1125 .........................................................................................9, 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    US __, 136 S.Ct. 1036 ....................................................................................................9, 12

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ..........................................................................................1, 3

*Vaquero v. Stoneledge Furniture LLC*,
    9 Cal. App. 5th 98 (2017) .............................................................................................3, 4, 6

*Wilson v. TE Connectivity Networks, Inc.*,
    2017 WL 1758048 (N.D. Cal. Feb. 9, 2017) ....................................................................13

*Wright v. Renzenberger, Inc.*,
    656 F. App'x 835 (9th Cir. 2016) ..................................................................................8, 13


Statutes

11 U.S.C. § 554 .........................................................................................................................1
Cal. Labor Code §§ 226, 1174 ................................................................................................12


Rules

Cal. Rule of Prof. Conduct 4.2(a) .............................................................................................3
Cal. Rule of Professional Conduct Rule 1-400(C) .................................................................14
FRCP 11 .....................................................................................................................................3

FRCP 23(b)(3) ..................................................................................................................... 4, 16

FRCP 37(c)(1) ......................................................................................................................... 2

Regulations

29 CFR § 541.602(a) ............................................................................................................. 4

## I. **INTRODUCTION**

PNC's Opposition (ECF 76-3) misstates or ignores Plaintiffs' liability theories and the evidence,[1] relies on erroneous class wide merits arguments, only appropriate in a summary judgment motion, that support certification (*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1156 (9th Cir. 2016) (*Ashley*)), invokes immaterial distinctions in individual damages that do not deny certification (*id.* at 1155), descends to unseemly and unsupportable attacks on Plaintiffs and their counsel, and relies on declarations from witnesses and documents which PNC failed to disclose in its own Initial Disclosures that cannot be considered.

Notwithstanding, Plaintiffs concur that Mr. Kazi cannot serve as a class representative. He applied to reopen his bankruptcy to amend voluntarily his schedules to identify this case before he was deposed or his standing herein was challenged – which PNC fails to mention (Supp. Sitkin Dec. ¶ 8, Ex. 6). By the December 6, 2019 Trustee's objection (*id.*, Ex. 7), the Trustee elected not to abandon Mr. Kazi's claim against PNC. So, as of the date of this Reply, it belongs to the Trustee, not to Mr. Kazi personally. 11 U.S.C. § 554. Plaintiffs dispute PNC's wild accusations of bankruptcy fraud and concealment of Mr. Kazi's 2018 bankruptcy, of which Plaintiffs' counsel were unaware until the day before disclosing it to PNC (*id.*, ¶¶ 6-7), which was after already having filed this Motion. Mr. Kazi's withdrawal as a proposed class representative renders moot the need to address further these false accusations. Co-Plaintiff Ms. Scheid (hereinafter Plaintiff) remains a perfectly adequate representative. The Opposition otherwise lacks merit because:

An employer fails to provide piece rate employees paid on a commission the required <u>separate</u> payment for rest breaks and <u>separate</u> payment for non-productive time (NPT) when pay purportedly paying for rest breaks and NPT is subject to recapture. This describes PNC's system. Variations in how PNC calculates commissions and payments for productive time are immaterial. PNC frames common merits issues that do not defeat certification and, at most, may affect quantification of damages. The

---

[1] Corrective excerpts from Ms. Scheid and Mr. Kazi's deposition transcripts may be found in Supp. Sitkin Declaration, Ex. 2-3. Misstatements abound. For example, Plaintiffs never testified the resolution of the legality of PNC's compensation plans requires a person-by-person or pay-period-by-pay-period analysis or that they were paid for all time worked or that they received compensation based on factors distinct from other MLOs, as PNC misrepresents, tellingly without citing to any evidence. ECF 76-3, pp. 1:24-26, 2:8-10.

facial illegality of the common Compensation Plans, which PNC identifies as applying to Plaintiff and all 207 identified MLOs, reinforces common issue predominance, typicality, and numerosity exist.

The *Bland* settlement release is irrelevant to the NPT class claims because they are pursued only after the release date. Although facially the *Bland* release does not apply to the rest break claims, that a majority of the 207 MLOs, including Ms. Scheid, are *Bland* releasors supports common issue predominance. This is not a summary judgment motion; the time to resolve the impact of the *Bland* release, really a damage issue, is later. The same is true of the inapplicable other releases PNC identifies.

Unable to challenge, PNC skips Plaintiff's showing of manageability. It ignores and thus concedes the request to certify the itemized pay statement (paystub) claims, which include violations derivative of the other claims and independent claims for failure to report NPT and rest periods information.

Wherefore, Plaintiffs request their Motion be granted, except that Ms. Scheid alone be appointed class representative. Supplemental declarations of Plaintiffs' counsel and Plaintiff Scheid accompany and support this brief.[2]

## II. THE OPPOSITION FAILS TO DENY CERTIFICATION.

### A. PNC's Concealed and Improperly Obtained Evidence Cannot be Considered.

PNC's unamended Initial Disclosures (Supp. Sitkin Dec., Ex. 1) fail to identify PNC's non-management, MLO declarants Beagle, Deglow, Lanteri, Locy, Melan, Rhodes, and Singh (ECF 77-2-3, 5-6, 8-10). Absent from PNC's document production (*id*. ¶ 10) are PNC's communications regarding these declarations that were exchanged with these MLOs, which are responsive to discovery (*id.* ¶ 10, Ex. 8). The remedy for this misconduct is that this evidence cannot be considered. FRCP 37(c)(1).

Separately, Plaintiff's follow-up contacts to PNC's non-management MLO declarants has uncovered that PNC's counsel improperly obtained these statements by leading declarants to understand PNC's firm represented them,[3] failing to disclose PNC had adverse interests, and failing to identify

---

[2]Plaintiff cites to the filings on this Motion under seal by the ECF numbers of the copies of public record, which are redacted based on PNC's excessive confidentiality designations. Emblematic of its excessive confidentiality designation, PNC designated the entirety of Ms. Scheid's deposition confidential.

[3]PNC's counsel has justified concealing documents exchanged with non-management declarants in obtaining their declarations, though directly responsive to discovery requests, based on attorney-client

Plaintiff's counsel. One expressed fear of negative consequences and others said they would talk only if

PNC's counsel permitted them, but then never called back. Supp. Silverman Dec. ¶¶ 7-13. PNC argues

Plaintiff is reasserting claims released in *Bland* in which Plaintiff's counsel (except Mr. Sitkin)

represented several of the above-named declarants and have not consented to such contacts. Supp.

Soloff Dec. ¶ 2. Either PNC's counsel violated FRCP 11 by insincerely asserting the *Bland* release

applies or counsel violated Cal. Rule of Prof. Conduct 4.2(a) barring unconsented contact of represented

parties. These circumstances deny consideration of these cookie-cutter declarations. Nonetheless,

Plaintiff assumes solely *arguendo* that this evidence can be considered.

**B. The Pay Differences PNC Identifies Do Not Defeat But Support Certification.**

Labor Code § 226.2,[4] *Ashley, Vaquero v. Stoneledge Furniture LLC,* 9 Cal. App. 5th 98 (2017),

*as modified* (Mar. 20, 2017) (*Stoneledge*),[5] *Barreras v. Wells Fargo Bank,* 2018 WL 5276294 (C.D. Cal.

Jan. 19, 2018), *app. pending* (*Barreras*), and *Kang v. Wells Fargo Bank, N.A.*, 2019 WL 468818 (N.D.

Cal. Feb. 6, 2019), *modified*, 2019 WL 944523 (N.D. Cal. Feb. 27, 2019) (*Kang*)[6] confirm payments

purportedly covering NPT and rest breaks - when subject to recapture from commissions - do not

constitute the required separate and additional payments and claims based on such unpaid NPT and rest

---

privilege and work product, heightening the concern over PNC's counsel's misrepresenting their status
to the declarants. Supp. Sitkin Dec., ¶ 10, Ex. 8-9. This includes prior versions of their declarations
indicated by the version number in the lower right-hand corner of the final version filed with the Court.
Declarant Deglow's filed declaration (ECF 76-9), for example, is identified as version number *seven*.

[4] Labor Code § 226.2, effective January 1, 2016, "codified the *Gonzalez/Bluford* decisions requiring
employers to separately compensate piece-rate workers for rest/NP time periods at or above minimum
wage." *Jackpot Harvesting Co. v. Superior Court*, 26 Cal. App. 5th 125, 145 (2018).

[5] In *Ashley*, the Ninth Circuit upheld the district court's certification of a class of sales associates who
worked on commission and were not paid for mandatory job duties unrelated to sales, such as cleaning
the store, attending meetings, and carrying furniture. 824 F.3d 1150, 1152–56 (9th Cir. 2016). The
common injury there — unpaid work not related to sales — was a "'common contention' that easily 'is
capable of class-wide resolution.'" *Id.* at 1154.

[6] In *Kang*, 2019 WL 468818, at *3–4, the court certified a class for claims for unpaid NPT based on the
bank's failure to compensate home mortgage consultants for attending meetings, trainings, customer
service, and administrative processing.

break violations are certifiable under FRCP 23(b)(3).  The Opposition reads like a roadmap of

defendants' arguments summarily rejected in these cases and; to wit:

1. **Whether Mislabeling Regular Pay As a Salary Allows PNC to Fulfill Its Duty Separately to Pay Non-Productive Time and Rest Periods, although Subject to Recapture from Commissions, is a Merits Issue Supporting Certification.**

*Stoneledge*, p. 110, fn. 8, states, "[t]his case does not involve, and we have no occasion to

question, the propriety of compensation plans that pay non-exempt employees a salary that compensates

them for rest periods and other nonproductive work time" (underlining added).  PNC misdescribes this

statement as a holding. (ECF 76-3, pp. 9 fn. 3, 17:16-17).  It then argues MLOs, including Ms. Scheid,

uniformly are paid ████████████████████████████████████████████

████████████████████████████████ (ECF 73-1, Ex. C; italics added). *Accord*,

Smiles Depo. 26:13-15 (ECF 72-15, Ex. 1-H).  PNC misleadingly omits that italicized language, which

reinforces regular pay does not compensate for rest periods, which are not work time. (ECF 76-3, p.

5:8). ██████████████████████████████████████████████████████

████████ (ECF 74, pp. 6:8-8:11, quoting PMK).  This is consistent with the paystubs, which on a class

wide basis ██████████████████████████████████ (*e.g.* ECF 73-4).  This is

inconsistent with an actual salary, which is not subject to reduction by potential recapture from future

earnings/commissions.[7]  PNC understands that difference because PNC claims, ████████████

██████████████████████████████████████████████████████████

██████████████████████████ ██ ███████████████████████████████████

(ECF 76-25, p. PNC 001578).[8]  Also, PNC's regular pay does not qualify as the required separate

---

[7] Under 29 CFR § 541.602(a), an employee is paid on a "salary basis" if he or she receives "a predetermined amount" of compensation that is "not subject to reduction because of variations in the quality or quantity of the work performed." *See Kao v. Holiday*, 12 Cal. App. 5th 947, 959 (2017) (California generally follows federal salary test, excepts as to amounts).  As the Groh Opposition Declaration (ECF 76-11, p. 2:18-24) concedes, plaintiffs' Counsel in *Bland* disputed PNC complied with the legal requirements that a salary not be subject to deductions.  PNC's Opposition Brief's inconsistent and contrary misrepresentation of *Bland* counsel's position (ECF 76-3, p. 14 fn. 5) so as to fabricate a conflict under the doctrine of judicial estoppel between putative class members based on participation in the *Bland* settlement tellingly lacks evidentiary support.

[8] As of the Motion's filing, PNC had not produced the July 2019 Plan document and pay records needed to corroborate the ██████████████████████████ (ECF 74, pp. 8:13-9:1). PNC still has not produced sufficient post-July 1, 2019 pay records. ████████████████████

payment for rest breaks or NPT (*see* § II.A.4 *infra*), but impermissibly melds such payment for productive time. Whether mislabeling regular pay a salary permits its recapture from commissions forms a common issue supporting certification. The answer to this issue is reserved for later decision.

### 2. __Immaterial Updates to Common Plan Documents Do Not Deny Certification.__

PNC and Ms. Scheid concur that all MLOs at any time are subject to a single common compensation plan. (ECF 73-8, p. 1:18-20, ECF 76-3, pp. 5:19-22, 10:5-8, 79-5, p. 2:15-16).[9] ███

███████████████████████████████████████████████████████████

████████████ (ECF 76-3, 4:26). Thus, Plan legality is determinable on a class wide basis, supporting

certification. Nonetheless, PNC argues that ████████████████████████████████████

███████████████████████████████████████████████████████████

████ (ECF 76-3, pp. 5:19-7:15) require individualized examinations. But these changes are immaterial

to Plaintiff's liability theory: the potential recapture of regular pay from commissions, regardless of how

commissions are calculated, creates liability.[10] PNC and Ms. Scheid, a MLO whom PNC identifies

_____

[9] PNC says Mr. Kazi testified that the Plan document was the one-page summary (which PNC never describes as inconsistent with the Plan) (ECF 76-3, p. 9:13-22). Mr. Kazi actually testified that while his deposition was the first time he saw the 2014 plan document, he recognized that it looked similar to a document he had seen (pp. 242:14-22, 243:1-4). PNC says Mr. Kazi testified "[w]hen … asked whether other MLOs thought the one-page summary was the 'Plan' under which they were paid, Kazi candidly admitted, 'I have no idea about'" (ECF 76-3, p. 9:13-22). PNC omits the further part of the response, "[i]t's a standard pay structure plan, and I'm getting paid on this plan, it is obvious – every single MLO is on the same MLO plan, compensation plan or incentive plan" (pp. 259:19-25, 260:1-2).

[10] PNC states (ECF 76-3, p-. 14:6-10) that after *Bland* ████████████████████████████
███████████████████████████████████████████████████████████ This non-substantive change makes no difference because the regular pay is still recaptured and the same amounts are paid as net commissions. PNC's cases upholding deducting expenses or chargebacks in calculating commissions (*Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal. 4th 217 (2007); *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 807–09 (2012) (ECF 76-3, p. 18:2-8) do not approve the reduction of commissions to recapture mandated separate and additional payments for NPT or rest breaks.

working from before the class period into 2019 (ECF 77-3, p. 10:9), who therefore was subject to most Plan editions, concur that ███████████████████████████████████████████████ ██████████ This strongly supports certification. *See Kang* at 5 (changes to common MLO compensation plans did not deny certification when bank's PMK testified at deposition that pay for NPT and rest periods was still subject to recapture from commissions). Moreover, to the extent these changes pose class wide merits issues, such are reserved for later.

**3. Whether** ███████████████████████████████████████████ **████████ is a Merits or Damages Issue that Does Not Defeat Certification.**

The ███████████████████████████████████████████████████████ ████ disqualifies it as the mandated separate and additional payment. *See Stoneledge* at 115 ("The advances or draws against future commissions were not compensation for rest periods because they were not compensation at all. At best they were interest-free loans. Stoneledge cites no authority for the proposition that a loan for time spent resting is compensation for a rest period."). *See also Barrerras* (judgment without consideration of whether in pay period recapture occurs).[11] ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████ █ ██████████████████████████████ (ECF 76-3, pp. 2:10-12, 8:16-9:12, 10:9- 12-20, 19:4-14), dissolve into an examination of individual circumstances (*id.*, p. 3:25-28). This is a straw man argument confusing potential and actual recapture.[13] Further, it raises a merits argument for

---

[11]In contrast, the pay model in *Certified Tire & Serv. Centers Wage & Hour Cases*, 28 Cal. App. 5th 1, 12–13 (2018), *rev. granted* January 16, 2019 -- which PNC (ECF 76-3, p. 18:9-11) omits to disclose is currently under California Supreme Court review -- did not involve commissions or other piece rate compensation or potential recapture of the minimum wage paid for each hour worked. The employer merely increased the base hourly pay beyond the minimum wage based on productivity.

[12]*See* Supp. Sitkin Dec., Ex. 2, Scheid depo. 224:11-17 (███████████████████████████████ ███████████████████████████).

[13]Nor is the concept that a pay model can be found illegal based on potential misapplication consigned to payment of NPT or rest periods. A pay model that varies pay based on productivity does not qualify as a salary, even if fortuitously the employee receives pay greater than the minimum required of a

later decision. At most, such an argument only raises a damages issue possibly limiting MLO recovery

to pay periods when recaptures occurred, a circumstance readily identified from PNC's records and,

███████████████████████████████████████████████

**4.** **The Existence of Other Forms of Compensation that PNC Concedes are Not Separate Payments for Rest Periods or Non-Productive Time Does Not Exonerate PNC from Recapturing the Regular Pay It Identifies as the Separate Payment, at Most Raising a Merits or Damage Issues that Support Certification.**

*Stoneledge* held an employer must **"separately** compensate employees for rest periods if an

employer's compensation plan does not already include a minimum hourly wage for such time" (p. 110,

emphasis added). *Accord, Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864, 872 (2013) (failing to

pay separately "is akin to averaging pay to comply with the minimum wage law ... [which] is not

allowed under California labor law"); *Ayala v. U.S Xpress Enterprises, Inc.,* 2017 WL 3328087, at *8–9

(C.D. Cal. July 27, 2017) (granting certification where no separate and additional payment for rest

periods or NPT identified; reviewing similar district court decisions); Labor Code § 226.2(1)

("Employees shall be compensated for rest and recovery periods and other nonproductive time separate

from any piece-rate compensation.").[14] █████████████████████████████████████

████████ (And it is this pay's potential recapture from commissions that creates liability.)

Nevertheless, PNC diverts to two other forms of class wide compensation that partially or wholly

compensate for productive time. ██████████████████████████████████

███████████████████████████████████████████████ (ECF 76-3, p.

5:2-4, 7:6-28, 10:12-13). ███████████████████████████ (ECF 76-3,

pp. 8:1-10, 16:16-17:6), ███████████████████████████████

---

salary. *E.g. Negri v. Koning & Assocs.*, 216 Cal. App. 4th 392, 400 (2013). The self-serving label the employer slaps on a defective pay model is not controlling; it is the reality.

[14]The introductory paragraph of § 226.2 states in relevant part: "[t]his section shall apply for employees who are compensated on a piece-rate basis for **any** work performed during a pay period." (emphasis added). Regardless of other types of pay, no dispute exists that commission payments are piece-rate pay, which triggers § 226.2's requirement that NPT and rest periods be separately paid.

█████████████████████████████████████.[15] But these other forms of compensation are irrelevant to PNC's liability because they are not identified as *separate payments for either NPT or rest periods*. ████████████████████████████████████████ ████████████████████████████████ (ECF 76-3, pp. 17:18-18:2). This misses the point. They are not *separate payments for either NPT or rest periods*. ██████████████████████████ ████████████████████████████████████████████ To credit these other forms of pay against NPT or rest periods, as PNC argues, would be to engage in forbidden payment of NPT and rest periods through averaging, the illegality of which may be decided on a class wide basis. *Wright v. Renzenberger, Inc.*, 656 F. App'x 835, 838–39 (9th Cir. 2016) (reversing denial of certification). Similarly, the artfully crafted, nearly identical declarations PNC's counsel obtained from MLOs ████████████████████████████ (ECF 76-3, pp. 3:23-25, 8:11-24) miss the point: none show PNC paid MLOs separately for NPT or rest periods; and none dispute payment according to common Compensation Plans.[16] PNC's argument establishes this is a common merits issue for later

---

[15]Ms. Scheid's testimony cited at EF 76-3, p. 10:12-13, ████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Moreover, rather than disclosing the distribution of plan incentive pay during the class period, PNC divides ████████████████████████ employed during 2017-19 (ECF 76-3, pp. 16:20-17:2). This conceals whether any significant amounts went to a significant number of people. Further garbling its case, the apparently corresponding paragraph in the Mackenzie Opposition Declaration (ECF 76-17, ¶ 9) refers to █████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████████ But whatever the distribution, it was not a separate payment for NPT or rest periods.

[16]*Stoneledge, Ashley,* and *Kang* hold payments purportedly for NPT or rest periods are illusory if recaptured from commissions. Discontented with these holdings, through these declarations, PNC essentially argues the reverse: the recapture renders the commissions illusory. That's not the law, ███ ████████████████████████████ Nor can misrepresenting Plaintiffs' testimony aid PNC. PNC says ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████ PNC says Mr. Kazi testified he agreed

decision, further supporting certification.  Even if such other pay were relevant, it would only concern a damage issue, namely excluding those pay periods in which MLOs received these other forms of compensation in amounts sufficient to pay for NPT and rest periods.

**5.  <u>Plaintiff Seeks Certification Based on Common Illegal Pay Practices.</u>**

PNC observes that ███████████████████████████████████████████ ███████ (ECF 76-3, pp. 9:24-10:8, 16 at fn. 6). This ignores that Plaintiff seeks certification of rest break claims on the distinct requirement that they be separately paid.

**C.  <u>*Bland* and Other Settlements Do Not Deny Certification.</u>**

"…A certified class may include persons who have *not been injured at all* by defendant's conduct: '[I]ndeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.' *Kohen v. Pacific Investment Mgmt. Co. LLC* (7th Cir. 2009) 571 F3d 672, 677; *Tyson Foods, Inc. v. Bouaphakeo* (2016) __ US __, 136 S.Ct. 1036, 1050—declining to decide whether uninjured class members may recover, but concluding that the fact some class members suffered no injury will not defeat class certification; *Torres v. Mercer Canyons Inc.* (9th Cir. 2016) 835 F3d 1125, 1137— 'fortuitous non-injury' to subset of class does not necessarily defeat certification of entire class." Rutter, <u>Fed. Civ. Proc. Before Trial (9th Cir. and CA ed.)</u> ¶ 10:293; *see also*, *id.*, ¶ 10:265.5.  PNC prematurely and incorrectly makes a merits argument that settlements of other cases [17] eliminate or limit the claims of some class members who must be excluded from the class (but not arguing numerosity is undercut).

---

[17] during his first employment in 2014 his salary paid for all time, NPT and rest breaks (ECF 76-3, p. 8:16-19).  Mr. Kazi actually answered the question "so, would you agree that the salary you were paid for the time you were working for PNC in September 2014 covered rest breaks and nonproductive time" (p. 181:13-15) with "I don't know that" (p. 181:20). *Accord*, p. 183:6-8, 12, 14-15. PNC says Mr. Kazi testified that he understood that salary was not supposed to be offset against commissions (ECF 76-3, p. 8:16-19). He actually was asked about incentives, which, as the Opposition argues, may refer to pay other than commissions. ████████████████████████████████████████ ██████████████████████████████████████████.

[17]PNC's summary (ECF 76-3, p. 14:11-14) of two class actions in addition to *Bland*, two individual lawsuits, and three dismissed DLSE complaints cannot be reconciled to the cited Groh Dec. (ECF 76-11, pp. 2:3-4:9), Ex. 3-7, which identify the *Bland* and *Batta* class actions, the heavily redacted settlements of two individual lawsuits of unstated claims, and two, not three, Labor Commissioner filings.

The Motion limits the claims for unpaid NPT to the period after the January 4, 2017 date of the

*Bland* release (ECF 74, p. 10:14-17 and fn. 5). So, it cannot affect nor deny certification of those

claims. The other claims to be certified (unpaid rest breaks, paystub violations) are not alleged to be so

limited. However, the paystub penalty claims under Labor Code § 226 may as well be in light of the

one-year limitations period. *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444, 468 (2019).

So, the *Bland* release can neither affect nor deny certification of those claims.

That, on its face, the common language of the *Bland* release does not extend to the remaining

rest break claims[18] supports certification. This is the obverse of *Spann v. AOL Time Warner, Inc.*, 219

F.R.D. 307, 320 (S.D.N.Y. 2003) (cited at ECF 76-3, p. 22:19-20) where typicality did not exist as

"individualized inquired [was] required to determine whether the … Releases … were knowing and

voluntary." PNC identifies no reason for individualized class member inquiry to resolve this defense,

and such a decision now would be premature. PNC's argument that the legal effect of the common

language in the *Bland* release affects 133 of 207 class members (ECF 76-3, p. 14:4-5) supports

certification.[19] Ms. Scheid's PNC tenure transcends the *Bland* release date. So, her claims would only

---

[18]The *Bland* release applies to "…claims …, whether known or unknown, **as asserted in this case or that could have been so asserted in this case**, … (ECF 76-11, Ex. 2, § 4.1 [partial copy]; emphasis added). Rest break violations were not alleged and could not have been under *Bland*'s operative Second Amended Complaint (*id.*, Ex. 1 [partial copy]). PNC's attempted expansion of the *Bland* release's scope violates the rule that class members cannot be required to release non-class claims in the guise of a class action settlement. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590–91(9th Cir. 2010) (prior class settlement can only release claims with "identical factual predicate" even if purporting to release other claims); *Hendricks v. Starkist Co*, 2016 WL 692739, at *4 (N.D. Cal. Feb. 19, 2016); *Myles v. AlliedBarton Sec. Servs., LLC*, 2014 WL 6065602, at *3 (N.D. Cal. Nov. 12, 2014). To the contrary, PNC also makes a tellingly unsubstantiated and premature merits argument that statements on the scope of the *Bland* settlement by some of Plaintiffs' counsel (Mr. Sitkin was uninvolved in *Bland*) create a judicial estoppel: "Plaintiffs' counsel committed to efficiently addressing all claims in *Bland*, but now claims they did not do so" (ECF 76-3, p. 3:7-8; self-defeating concession underlined). It never suggests the resolution of this argument involves individual inquiry. This, too, appears to be an improper effort to expand collaterally the scope of the release, defined by what the Court approved, and the claims alleged or involving "identical factual predicate[s]." Moreover, *Rocha v. Caliber Collision Transp. Servs. LLC*, 2018 WL 1975137, at *2–3 (C.D. Cal. Jan. 11, 2018) already determined that no judicial estoppel can arise before *Stoneledge*, which post-dates the *Bland* release, clarified that under existing law commissions constituted piece rate compensation.

[19]PNC avers that the *Bland* release eliminates the claims of 88 of 207 class members, but only reduces the claims of 55 of 207. Insofar as claims would only be reduced, the *Bland* release's impact is a damage question for the rest period claims that does not deny certification.

be partly affected and she can represent the interests of those affected and unaffected by the *Bland* settlement. Her claims align with those she would represent and satisfies the typicality requirement. *See Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1141 (9th Cir. 2016) ("Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical" (cites omitted).

The earlier *Batta* class action settlement of unrelated claims, [20] which also included Ms. Scheid, fails to defeat certification for the same reasons. Nor has PNC produced evidence of the nature of the claims in the individual lawsuits by Ms. Ming Lo and Mr. Lancaster, the subject of suspiciously redacted settlement agreements not produced until after the Motion was filed (ECF 76-11, Ex. 4-5) or the abandoned *Kang* complaint to the Labor Commissioner (*id.*, Ex. 6) to support PNC's argument (ECF 76-3, p. 24:17-21) that any significant number of the 207 MLOs in the class are prepared to bring individual lawsuits to vindicate *these* claims. That Mr. Kang and Mr. Kazi abandoned, without prejudice, their complaints to the Labor Commissioner (*id.*, Ex. 6-7) supports the opposite.

### D. By Ignoring Plaintiff's Showing of How Class Recovery Can Be Calculated, PNC Fails to Establish Damages are Unmanageable or Common Issues Do Not Predominate. Varying Potential Recoveries Cannot Prohibit Certification.

A trial plan is not required under Rule 23 to grant a motion for class certification. *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 n. 4 (9th Cir. 2005); *Sullivan v. Kelly Servs., Inc.,* 268 F.R.D. 356, 365 (N.D. Cal. 2010). Nevertheless, Plaintiff gave one: (a) summary judgment motions to confirm class wide liability; (b) use of PNC time records to identify when MLOs worked the 3.5 and 6 hours triggering PNC's duty to offer first and second rest periods (Wage Order 4-2001, § 12), and when MLOs were engaged in customary NPT activities, including trainings, staff meetings, logging onto/off the computer, personnel duties, processing loans, customer service unrelated to a sale, general marketing not specific to a sale, etc. (*c.f.* NPT tasks identified in *Kang* at p. 3), amplified where necessary by

---

[20] The *Batta* class action settlement (Groh Opp. Dec. [ECF 76-11], Ex. 3, ¶ 38) resolved claims for "failure to reimburse business expenses and/or failure to indemnify under California Labor Code section 2802, including but not limited to claims for recovery of business expenses of indemnification under any legal theory." Under oath, Ms. Groh misleads by recasting in her declaration this release as including "failure to reimburse business expenses and failure to indemnify under any legal theory" (ECF 76-11, ¶ 5). The instant case has no expense reimbursement or § 2802 claims.

representative testimony as to NPT duration;[21] and (c) using PNC pay records, including earnings and commission statements, to calculate the regular rate of pay for premium wages and unpaid NPT (ECF 74, pp. 3:6-4:2, 16:5-16, 17:5-19:7, 24:1-10). Further, Plaintiff expects to be aided by an expert who can calculate class wide damages. The straightforward relief sought (wage calculations), and supporting evidence, is markedly less complicated than many other class actions deemed manageable[22]. This case is well-suited for class treatment.

PNC argues individual recoveries will vary based on differing amounts of NPT and commissions, which Plaintiff concurs is a building block to calculate the regular rate of pay. Variability in the amounts that class members recover does not preclude certification. *See Kang* at 3 (varying NPT did not deny commonality). *Accord Wright v. Renzenberger, Inc.,* 656 F. App'x 835, 838–39 (9th Cir. 2016); *Ashley* at 1154-55.[23]

Bereft of authority, PNC argues distinguishing productive versus non-productive time turns on individual, subjective considerations and productive time includes anything that remotely aids a MLO's sales skills (ECF 76-3, p. 19:15-26). This frames the common merits legal issue supporting certification of whether the standard is objective or subjective. Case law involving similar claims uniformly concludes NPT can be identified on a class wide basis and rejects efforts to rewrite § 226.2 to redefine

---

[21]PNC opposes certification ███████████████████████████████████
████████ Its admission (e.g. ECF 76-17, ¶¶ 15, 18) is the stuff of summary judgment. The novel proposition that an employer who violates its obligations for recordkeeping and itemizing paystubs is rewarded by avoiding certification or reducing liability is erroneous. Indeed, PNC was required, but failed, to maintain accurate payroll and time records, for purposes of the minimum wage claims. *See* Cal. Labor Code §§ 226, 1174; IWC Order 4-2001, §7. To the extent PNC failed to maintain such records, representative evidence including employee testimony and statistical evidence, are appropriate forms of testimony so that employees will have a means of proving their claims. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016); *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946); *Bell v.Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750 (2004).

[22]No case holds that to achieve certification a plaintiff must have concluded the calculation of class damages. *Cf.* ECF 76-3, p. 20, fn. 11. Nor is *Forrand v. Federal Express Corp.*, 2013 WL 1793951, *5 (C.D. Cal. 2013) (cited at ECF 76-3, p. 20:6), a case turning on whether unrecorded time qualified as work time, instructive of the showing needed here.

[23] PNC cannot be serious in arguing (ECF 76-3, p. 4:19) an MLO's saying that with unknown frequency he performed unspecified work on mortgages during trainings – leaving it unclear whether this refers to sales or non-sales work – denies certification. The extent of NPT, in any case, is a damage issue.

work indirectly aiding piece rate pay as piece rate work. *See Kang* at 3 ("whether those duties are 'non-productive,' can be resolved on a classwide basis"); *Ashley* at 1154 (observing that NPT under Labor Code § 226.2 is work "not directly related to the activity being compensated on a piece-rate basis"). *Accord*, DLSE Enforcement Policies and Interpretations Manual, § 47.7 ("if, as a result of the directions of the employer, the compensation received by … commissioned workers is reduced because they are precluded, by such directions of the employer, from earning … commissions … during a period of time, the employee must be paid at least the minimum wage (or contract hourly rate if one exists) for the period of time the employee's opportunity to earn commissions … [is reduced].").  That engaging in training, staff meetings, etc. takes away from time a MLO can sell mortgages and earn commissions is clear, and it is a merits issue to be decided later.

### E.  **Derivative and Independent Claims PNC Ignores Must Be Certified**.

The UCL and paystub class claims insofar as derivative of the direct claims under the Labor Code and Wage Order 4 must be certified. *Wilson v. TE Connectivity Networks, Inc.,* 2017 WL 1758048, at *13 (N.D. Cal. Feb. 9, 2017). However, the paystub claims have an independent prong, PNC's failure to state separately the amounts of NPT and rest period time and applicable rates of pay as Labor Code § 226.2 requires. *See* ECF 74, pp. 1:11-12, 19:20-20:2. PNC offers no opposition to certification of the paystub claims on this basis.

### F.  **Baseless *Ad Hominem* Attacks Do Not Defeat Adequacy.**

"Adequate representation is usually presumed in the absence of contrary evidence. [cite]" *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 471 (N.D. Cal. 2016). Although the attorney-client privilege impedes a more fulsome response, the law and evidence do not support PNC's unwarranted smears directed toward Ms. Scheid and counsel on the issue of adequacy.

PNC attacks unidentified counsel for "soliciting" Plaintiffs (ECF 76-3, p. 23:14-19).  Then controlling Cal. Rule of Professional Conduct Rule 1-400(C)[24] permitted outreach to employees to

---

[24]"A solicitation shall not be made by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, unless the solicitation is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California. A solicitation to a former or present client in the discharge of a member's or law firm's professional duties is not prohibited."

investigate potential class actions. *See Hernandez v. Best Buy Stores, L.P.*, 2015 WL 7176352, at *7 (S.D. Cal. Nov. 13, 2015). That is precisely what occurred, not solicitation. *See* Supp. Soloff Decl. ¶¶ 6-8, Supp. Swidler Decl. ¶¶ 7-10; Supp. Scheid Decl. ¶ 5. Also, the Rule's limit on solicitation does not apply to Plaintiffs, former clients of three of four Plaintiffs' counsel in the *Bland* action.

Without evidentiary support, PNC falsely depicts Ms. Scheid as ignorant of the claims, an empty vessel steered by counsel (ECF 76-3, pp. 23:10-18). "The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case. It is not necessary that a representative be intimately familiar with every factual and legal issue in the case rather, it is enough that the representative understand the gravamen of the claim." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (internal cites and quote marks omitted). *Accord Ernst v. ZogSports Holdings LLC, No.*, 2019 WL 1435933, at *4 (C.D. Cal. Feb. 21, 2019) (attendance at deposition where showed general understanding of claims and declarations showing willingness to serve as class representative showed sufficient engagement); *del Sol v. Whiting*, 2012 WL 12868853, at *7 (D. Ariz. July 24, 2012) (deposition testimony showing basic understanding of claims and duties as class representative sufficed). Ms. Scheid's deposition, her declaration filed with the moving papers (ECF 73-8), and her supplemental declaration (¶¶ 7-10), which outlines her prior notice of and familiarity with the mediation, her cooperation in discovery, and active engagement, far surpass this low threshold. *See also*, Supp. Soloff Decl. ¶¶ 9-11.[25] Counsel, experienced in wage and hour class

---

[25]Mr. Kazi's withdrawal as a proposed class representative because the Trustee possesses his claims against PNC obviates the need to refute the screed PNC slings at him, such as that he knew nothing of the claims filed on his behalf, despite admitting Mr. Kazi testified he reviewed the Complaint before its filing (ECF 76-3, p. 11:11-12). Another false smear (ECF 76-3, pp. 2:20-22, 24:1-10) is that Plaintiffs' counsel were aware for months or even a year of Mr. Kazi's 2018 bankruptcy, concealing it until a couple days before his deposition. Counsel became aware of the 2018 bankruptcy only the day before serving an amended interrogatory answer, which identified the 2018 bankruptcy and directed PNC to documents available through PACER. Supp. Sitkin Dec. ¶¶ 5-7. PNC omits that the original answer, served only eight days earlier, identified Mr. Kazi's bankruptcies years prior to working for PNC. The original, unverified answer reflects that Plaintiffs' counsel previously were unaware of the most recent bankruptcy and thus did not mention it. *Id*., ¶ 5, Ex. 4. PNC also falsely accuses counsel of sitting on a cache of 2018 bankruptcy documents. Not so, Plaintiffs' counsel have nothing beyond what is available to PNC via PACER, as identified in the amended answer. *Id.*, at ¶¶ 6-7, Ex. 5. To bolster the smear that counsel earlier received documents concerning the 2018 bankruptcy, PNC cites to Mr. Kazi's deposition

1 action litigation and having investigated the claims, have conducted themselves properly, more than can

2 be said of the lack of candor behind PNC's smears and the methods employed to obtain artfully crafted

3 declarations from putative class members. See § II.A above.  Ms. Scheid and counsel are more than

4 adequate.[26]

5 **III.  <u>CONCLUSION</u>**

6 PNC seeks to obfuscate with jargon and irrelevancies a simple common question that Plaintiff

7 maintains will decide PNC's liability to all MLOs: does an employer satisfy its duty separately to pay

8 for NPT and rest periods through pay potentially subject to recapture from piece rate commission pay?

9 This is exactly the type of common question that, when answered, will drive a class wide decision that

10 compels certification.   For the foregoing reasons, Plaintiff Scheid requests the Motion be granted, the

11 proposed Class be certified under Fed. R. Civ. P. 23(b)(3), and she and her counsel be appointed as an

12 adequate Class Representatives and Class Counsel.[27]

13 ───────────────

14 testimony at 29:1-4 (ECF 76-3, p. 13:21), but disingenuously omits the text at the bottom of the
preceding page 28:20-25 (Supp. Sitkin Dec., Ex. 2) showing he is testifying about his having shared

15 with Plaintiffs' counsel documents concerning his 2010, not 2018, bankruptcy.

16 [26]Were Ms. Scheid an inadequate representative on any claim, the remedy would be conditionally to

17 certify a subclass subject to the addition of another class representative. *Nat'l Fed'n of Blind v.* *Target Corp.,* 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007). Courts routinely allow for the addition of class

18 representatives when lead plaintiffs may be found inadequate or atypical of all or part of a class. *See e.g., Dean v. United of Omaha Life Ins.,* 2008 WL 7611369, *3 (C.D. Cal. 2008); *Petersen v. Costco*

19 *Wholesale,*2016 WL 6768911, *6 (C.D. Cal. 2016). The Court may order Defendant to provide the
contact information necessary to identify a suitable representative. *Tait v. ESH Home Appliances,* 289

20 F.R.D. 466,477 (C.D. Cal. 2012).

21 [27]Cognizant that a reply is not the place to seek new affirmative relief, Plaintiff reserves to a future

22 motion further addressing how PNC's counsel obtained non-management declarations and the need for
further relief.  A starting point would be  to order each PNC defense counsel who communicated with a

23 non-management declarant to submit a declaration stating whether at the start of the communication
counsel disclosed: (a) counsel was not the declarant's attorney, (b) how the declarant's interests were

24 potentially adverse to those of PNC whom counsel represented, (c)  the declarant was free without
consequence to refuse to communicate, (d) the identities and contact information of Plaintiff's counsel

25 and, whether at any time, ( f ) the declarant should not speak with Plaintiff's counsel and (g) whether
counsel believed the subject matter discussed with a MLO who was represented in *Bland* or *Batta*

26 included the subject matter of the *Bland* or *Batta* case. Plaintiff also will request PNC and its counsel be
ordered to produce to Plaintiff all documents relating to the declarations exchanged between PNC or its

27 counsel and any such declarant.

28

Respectfully submitted,

Dated:  December 18, 2019

FRANK, WEINBERG & BLACK, P.L
ROBERT D. SOLOFF, P.A.
SWARTZ SWIDLER, LLC
LAW OFFICES OF JAMES M. SITKIN

By:  _/s/James M. Sitkin_____
James M. Sitkin
Attorney for Plaintiff

Pursuant to Local Rule 5-1(i), I hereby certify that the content of this document is acceptable to James M. Sitkin, counsel for Plaintiffs, and that I have obtained his authorization to affix his electronic signature to this document.

_/s/ Justin Swidler_____