Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA  90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: +1 206 623 7580
Facsimile: +1 206 623 7022

Attorneys for Defendant PNC Bank, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF NON-PRODUCTIVE TIME**<br><br>[*Concurrently filed with 1) Declaration of Saman M. Rejali in Opposition to Renewed Motion, and 2) Declaration of Jasen Mackenzie in Opposition to Renewed Motion*]<br><br>**DATE: JUNE 19, 2020**<br>**TIME:  9:30 A.M.**<br>**COURTROOM:  F**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

1

RECYCLED PAPER

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 4

II. RELEVANT FACTS ................................................................................................ 6

III. PLAINTIFF HAS FAILED TO CARRY HER CLASS CERTIFICATION
BURDEN WITH RESPECT TO TRAINING ......................................................... 9

    A.    Common Proof Of The Amount Of Time MLOs Spend In Training Does
Not Exist ..................................................................................................... 9

    B.    PNC Has No Statutory Or Other Legal Obligation To Maintain Records Of
The Length Of Time MLOs Spend On The Training Courses Identified By
Plaintiff..................................................................................................... 11

    C.    Plaintiff's Arguments Cannot, And Do Not, Substitute For The Absence Of
Common Evidence Of Time Actually Spent By MLOs In Training Or
Whether They Performed Sales Work Simultaneously While Taking
Training Courses ....................................................................................... 12

        1.    PNC's Records Of Training Courses Completed By MLOs Do Not
Provide Relevant Common Evidence Sufficient To Satisfy The
Court's Order Or FRCP Rule 23 ................................................... 12

        2.    No Records Exist That Show The Time MLOs Actually Spend
Taking Training Courses ................................................................ 13

        3.    MLOs Often Multitask By Handling Sales Work When They Are
Training .......................................................................................... 15

        4.    Ms. Scheid's New Declaration Confirms That Individual Issues
Predominate With Respect To Training.......................................... 16

        5.    "Full Attention" In Training Does Not Prohibit Multitasking On
Sales Matters ................................................................................. 17

    D.    A Class Proceeding Involving Training Claims Would Be Unmanageable
And Inefficient .......................................................................................... 18

IV. CONCLUSION...................................................................................................... 19

**RECYCLED PAPER**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

Atari v. Superior Ct. of Santa Clara County,

5
        166 Cal.App.3d 867 (1985)......................................................................8

6

Babbitt v. Albertson's Inc.,

7
        1993 WL 128089 (N.D.Cal.1993).............................................................8

8

Brown v. Fed. Express Corp.,
        249 F.R.D. 580 (C.D. Ca. 2008) ............................................................18

9

Hernandez v. Mendoza,

10
        199 Cal. App. 3d 721 (1988)...................................................................11

11

Hughes v. WinCo Foods,
        2012 WL 34483 (C.D. Ca. 2012).............................................................18

12

Parks v. Eastwood Ins. Servs., Inc.,

13
        235 F.Supp.2d 1082 (C.D. Cal. 2002).........................................................8

14

Wal-Mart Stores, Inc. v. Dukes,

15
        564 US. 338 (2011) .............................................................................9

16

Washington v. Joe's Crab Shack,
        271 F.R.D. 629 (N.D. Ca. 2010) .............................................................10

17

Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.,

18
        455 F.2d 770 (2nd Cir. 1972).....................................................................8

19

**Other Authorities**

20

Fed. R. Civ. P. 23 ...........................................................................5, 8, 13

21

Rule 23(b)(3)(C)..................................................................................18

22

Rule 23(b)(3)(D) ................................................................................18

23

24

25

26

27

28

**RECYCLED PAPER**

1    I.      **INTRODUCTION**

2           In its original Motion for Class Certification (Original Motion") (Dkt. 73), Plaintiffs

3    Tanseer Kazi and Linda Scheid sought certification of a class of current and former Mortgage

4    Loan Officers ("MLO") at PNC Bank ("Defendant" or "PNC") who allegedly were not paid for,

5    among other things, nonproductive time, which they described as time spent on "non-sales work,

6    such as attending training sessions, webinars, and sales meetings."  Memorandum of Points and

7    Authorities in Support of Plaintiffs' Motion for Class Certification ("Original Memorandum")

8    (Dkt. 74), at 16:27-28.  The Court declined to certify non-productive time claims in its Order

9    Regarding Motion for Class Certification, entered on February 2, 2020 ("Order") (Dkt. 96),

10   stating:

11                As far as the Court can discern from the record presented on this
             motion, pursuing claims based on nonproductive time would
             require virtually a full trial for each MLO as to when and how they
12           worked, what records they or PNC might have retained, whether the
             MLO remembers how long they spent in meetings and training
13           sessions and whether they recall working on selling loans during
             that time.  It is conceivable that representative or statistical
14           evidence might provide an alternative method of proof in this case.
             Under these circumstances, the Court concludes that individualized
15           issues predominate as to claims based on nonproductive time other
             than rest periods, and DENIES certification as to those claims,
16           without prejudice to Plaintiffs later moving to expand the class
             definition if they can show some classwide method of proof."  Id. at
17           13:25-14:6.

18          Plaintiff Linda Scheid ("Plaintiff") has now chosen to take another swing at certification

19   of nonproductive time claims, but now limits the claim to training time (and derivative claims)

20   only.  See, Plaintiff's Renewed Motion for Class Certification of Non-Productive Time

21   ("Renewed Motion") (Dkt. 118).  In support of the Renewed Motion, Plaintiff has not even

22   attempted to present "representative or statistical evidence" as an "alternative method of proof" of

23   those claims.  In fact, having no such evidence, despite her counsel's prior argument that Plaintiff

24   should be given the opportunity present such evidence,[1] she now demurs stating "[a]though

25

26   ---
     [1] In the Order, the Court stated "Plaintiffs argue they can use representative sample and statistical
     evidence in lieu of actual evidence of how class members used their time."  (Order, at 12:25-26).
27   Additionally, the Court noted "the issues here - **how long employees spent in training sessions**,
     for example, or **whether they multitasked and performed sales work** during those sessions -
28   are likely not amenable to such uniform proof, and Plaintiffs have made no showing that
     representative evidence would be reliable."  (Id. at 13:7-10) (emphasis supplied).

                                              4                          **RECYCLED PAPER**

1   Plaintiff raised the possibilities afforded by representative testimony or surveys as to other types

2   of non-productive time, there is no need to go that far when it comes to the instant training

3   claims. . . ."  Plaintiff's Memorandum of Points and Authorities in Support of Renewed Motion

4   for Class Certification of Claims for Non-Productive Time Limited to Trainings ("Renewed

5   Memorandum") (Dkt. 119), at 11:7-9.  In other words, since early February when the Order was

6   entered, and now over three months later, Plaintiff has not come up with any representative or

7   statistical evidence showing how common proof exists of the amount of time MLOs actually

8   spend in training or how uniform proof could show if, for example, MLOs multitask on mortgage

9   sales work during training.  Nor does the evidence Plaintiff relies upon in support of the Renewed

10  Motion support Plaintiff's position or materially differ from what was presented to the Court in

11  the papers submitted in support of and in opposition to the Original Motion.  Thus, not having

12  evidence of classwide proof as to the actual amount of time MLOs spend training, or whether

13  MLOs multitask on sales work during training, Plaintiff is relegated to recycling old arguments

14  and evidence in the hope that she can persuade the Court to reverse its decision.

15         Notwithstanding her arguments, Plaintiff still fails to make the evidentiary showing

16  required by FRCP 23, and echoed by the Court, that is necessary to satisfy her burden of proving

17  that common evidence exists of the time actually spent by MLOs on training or whether MLOs

18  multitask by working on sales matters during training.  Prior to her filing the Original Motion, she

19  had virtually all of the evidence she now offers in her Renewed Motion.  Plaintiff's counsel took

20  the deposition of PNC's designated Person Most Qualified ("PMQ") for MLO training, Jasen

21  Mackenzie, on August 20, 2019.  At the deposition, Plaintiff's counsel repeatedly asked the PMQ

22  whether PNC maintains records that would show the actual amount of time MLOs spent in

23  training.  The answer was no.  (Deposition of Jasen Mackenzie, Transcript ("Mackenzie

24  Deposition Tr."), at 46:19-23)[2].  Plaintiff also requested computer records that show the length of

25  time MLOs spend in training, from beginning to end, and Defendant responded that they do not

26  exist.  The PMQ further explained that the amount of time MLOs spend in training differs for

27
    _____
    [2] Relevant portions of the deposition transcript of Jasen Mackenzie are attached to the Declaration
28  of Saman M. Rejali ("Renewed Rejali Decl."), ¶ 2, Exh. 1, filed currently herewith.

RECYCLED PAPER

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

each MLO.  (Declaration of Jasen Mackenzie in Opposition to Class Certification ("Original PMQ Decl.")[3], ¶¶ 10, 14).  This is not at all surprising, and makes common sense.  A self-study training course, for example, which many of the MLO courses are, might take one MLO longer, and another MLO a much shorter time to complete.  (Declaration of Jasen Mackenzie in Opposition to Renewed Motion ("Renewed PMQ Decl."), ¶ 6.  It is no secret that individuals' intelligence and reading comprehension levels, among other things, vary significantly.  Moreover, during the course of taking that self-study course, some MLOs multitask on mortgage sales related matters more than others, filling out sales paperwork, taking phone calls, sending and responding to emails and text messages related to mortgage sales; i.e., conducting activities in connection with their principal job responsibility.  (Id. at ¶ 8).  These kinds of factors make it impossible to know, or to even reasonably estimate, the time MLOs actually spend on training.  (Id. at ¶ 7).

Instead of accepting these evidentiary facts, which are discussed in greater detail below, Plaintiff has decided to plow forward with her Renewed Motion, no doubt with the belief that "nothing ventured, nothing gained," in an effort to maximize the purported damages she might recover in this case.  Unfortunately, for Plaintiff, the strategy falls flat.

## II.   RELEVANT FACTS

California MLOs receive periodic training.  (Original PMQ Decl., ¶ 10).  PNC has annual lists of training courses available to new and continuing MLOs, as well as other employees.  (Mackenzie Deposition Tr., at 27:2-20).  The courses vary depending on the group.  (Id., and Mackenzie Deposition Tr., at 50:9-17; see also, Original PMQ Decl., ¶¶ 11, 12).  Some courses offered are discretionary, and some are mandatory.  (Mackenzie Deposition Tr., at 30:22-25; 56:1-4; 88:11-89:12).  Mr. Mackenzie, PNC's Regional Sales Executive, the training PMQ who is the senior supervisor of all California MLOs, customizes specific training schedules for each MLO.  (Original PMQ Decl., ¶¶ 11, 12).  Some available MLO courses are web-based and are delivered online, some are downloadable materials for self-study, and a few are delivered live.

---

[3] The Original PMQ Declaration was attached to the Declaration of Saman M. Rejali as a part of the opposition brief to the Original Motion. (Dkt. 77).  It is attached, here, to the Renewed Rejali Decl., ¶ 3, Exh. 2, for the Court's convenience.

RECYCLED PAPER

1    (Mackenzie Deposition Tr., at 32:6-33:22).  Some courses can be waived by a manager; and,

2    some other courses can be "tested-out" of by the MLO.  (Original PMQ Decl., ¶ 10; Mackenzie

3    Deposition Tr., at 36:11-21; 53:1-4; 73:12-16).  If a course is waived or tested-out of, an MLO is

4    given credit for having "completed" the course, despite not having actually taken the course.

5    (Original PMQ Decl., ¶¶ 16, 17; Mackenzie Deposition Tr., at 54:20-23; 75:7-17; 76:20-25; 83:4-

6    8, 131:4-5; 133:7-14).  It is "impossible" to tell from PNC's training records the way in which all

7    of the courses were "completed."  (Mackenzie Deposition Tr., at 111:14-17).[4]

8          The training curriculum sets forth general information for each course.  The information

9    for a number of the courses includes, among other things, a "duration" of the course.  (Original

10   PMQ Decl., ¶ 13).  The duration is not the length of time it will actually take to complete a

11   course, assuming the course is taken.  (Mackenzie Deposition Tr., 35:13-15).  Nor is it an

12   estimate of the length of time it will take to complete the course.  (Original PMQ Decl., ¶ 13).

13   The PMQ testified that the identified "duration"[5] is a number derived from a process that

14   evaluates "the amount of topics within a module and the amount of words on a page, and from

15   that [PNC] reverse engineer[s] the maximum time for median . . . comprehension."  (Mackenzie

16   Deposition Tr., at 45:15-46:13; 70:5-13; 94:10-20; Original PMQ Decl., ¶ 13).  It is intended as a

17   planning tool so that MLOs can set aside some time in their busy schedules to complete the

18   training within the targeted calendar completion date.  (Renewed PMQ Decl., ¶ 5).  The actual

19   amount of time it will take an MLO to complete a course, however, "varies greatly" among

20   MLOs.  (Original PMQ Decl., ¶14; Mackenzie Deposition Tr., at 35:13-18;).  PNC has no records

21   of how long it takes an MLO to complete training courses.  (Original PMQ Decl., ¶ 15;

22   Mackenzie Deposition Tr., at 46:19-47:4; 114:7-13).  PNC does not track log-on and log-off

23   times for training modules.  (Id.)  The PMQ also testified that it often takes him and other MLOs

24   "far less time to complete [training modules] than the calculated duration indicates," and it can be

25   "one fifth" of the time stated in the duration.  (Original PMQ Decl., ¶ 14; Mackenzie Deposition

26

27   [4] While PNC records began to track in mid-2018 some of the courses that were waived (PNC
     1540 shows "equivalent"), there is no tracking of courses that have been tested-out of.  Renewed
28   PMQ Decl., ¶ 5.
     [5] Not all training courses identify a duration.  See, e.g., Mackenzie Deposition Tr., at 123:18-20.

RECYCLED PAPER

1   Tr., at 153:23-155:5).  Individual MLOs testified, for example, that courses take them "one

2   quarter" of the time stated (Declaration ("Decl.") of Kyle Beagle, ¶ 12); "substantially less time

3   than allocated" (D. Deglow Decl., ¶ 12);  "one third  of the designated time" (F. Lanteri Decl., ¶

4   14); usually able to complete a 60 minute course "in about 15 minutes" (A. Locy Decl., ¶ 15);

5   and, "half that time or less" (J. Rhodes Decl., ¶ 14).[6]

6          MLOs often start a training course on one day, and finish the course days or weeks later.

7   _____

8   [6] MLO Declarations submitted in support of PNC's opposition to the Original Motion are
    attached to the Declaration of Saman M. Rejali as a part of that opposition brief. (Dkt. 77).

9   Plaintiff has again, in the Renewed Memorandum, tried to undercut the MLO Declarations, not
    because they are untruthful, but because they were obtained by PNC's counsel after this lawsuit

10  was filed but before the class was certified.  As PNC's counsel has consistently argued, with
    ample case authority, it had every right to obtain the MLO declarations prior to class certification.

11  See, Parks v. Eastwood Ins. Servs., Inc., 235 F.Supp.2d 1082, 1084 (C.D. Cal. 2002), where the
    court stated that in a Rule 23 class action, "[P]re-certification communication from the defense to

12  prospective plaintiffs **is generally permitted**.  The law is not settled on this issue, but **the**

13  **majority view seems to be against a ban on pre-certification communication between**
    **Defendant and potential class members.  The Second Circuit, state and federal district**

14  **courts in California, and a leading treatise conclude Rule 23 pre-certification**

15  **communication is permissible because no attorney-client relationship yet exists.**  Weight
    Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 773 (2nd Cir. 1972)

16  (rejecting argument that "once a plaintiff brought suit on behalf of a class, the court may never

17  permit communications between the defendant and other members"); Babbitt v. Albertson's Inc.,

18  1993 WL 128089 (N.D.Cal.1993) (finding "putative class members in the instant action were not
    represented by class counsel"); Atari v. Superior Ct. of Santa Clara County, 166 Cal.App.3d 867,

19  212 Cal.Rptr. 773, 775 (1985) ("Absent a showing of actual or threatened abuse, both sides

20  should be permitted to investigate the case fully"); Manual for Complex Litigation (Third) §
    30.24 (1995) ("Defendants ordinarily are not precluded from communications with putative class

21  members, including discussions of settlement offers with individual class members before

22  certification")."  (Emphasis supplied).  See also, 5 William B. Rubenstein, Newberg on Class
    Action § 19.6 (5th ed. 2019): "Defendant pre-certification communication with absent class

23  members.  In conventional bilateral litigation, neither side's lawyer can communicate with the

24  opposing party directly—ethics rules require that the attorney communicate with a party only
    through her counsel.  The distinguishing characteristic of absent class members prior to class

25  certification is that they are generally not considered "represented parties" for these purposes . . .

26  Therefore, but for a few outlying decisions, **courts generally permit the defendant and**
    **defendant's counsel to communicate directly with these absent putative class members**

27  **before a class action is certified**."  (Emphasis supplied).

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

(Renewed PMQ Decl., ¶ 6).  For example, the training system allows MLOs to start and stop many online courses at their discretion.  (Id.).  In the case of many self-study courses "how long any individual learner took for an individual model [module] is neither tracked nor quantifiable." (Mackenzie Deposition Tr., at 115:2-5; Renewed PMQ Decl., ¶ 6).  The only way one can determine how long it took a particular MLO to complete a course, and it will vary among MLOs, is to ask the MLO, and if they remember their individual circumstance with respect to each course over the years, they may be able to testify to that.  (Renewed PMQ Decl., ¶ 6).

Not only do the reading comprehension skills of each MLO determine the actual amount of time it takes for him or her to complete a course, so do routine interruptions and ancillary tasks that can come up during a training.  It is not unusual for MLOs to multitask while taking training courses, including performing mortgage sales related work.  (Renewed PMQ Decl., ¶ 8).  During web-based and self-study training, as well as during some live training, the PMQ has observed MLOs filling out paperwork related to mortgage sales and closings, as well as texting, emailing, and making and taking phone calls regarding sales business.  (Id.).  For example, the PMQ can recall several occasions where he would walk by MLOs' desks and would see them push the start button on a training video, and then immediately return to their sales work while the video was playing.  (Id.).  This is not surprising because mortgage sales are the MLO's primary responsibility.  (Id.).  Such training courses, by their nature, enable MLOs to simultaneously engage in sales related multitasking.  (Id.).

## III.  PLAINTIFF HAS FAILED TO CARRY HER CLASS CERTIFICATION BURDEN WITH RESPECT TO TRAINING

### A.  Common Proof Of The Amount Of Time MLOs Spend In Training Does Not Exist

The United States Supreme Court in Wal-Mart Stores, Inc. v. Dukes, 564 US. 338 (2011) held that "'[w]hat matters to class certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."'  Id. at 350 (quoting Nagareda, Class

9

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

1    <u>Certification in the Age of Aggregate Proof</u>, 84 N. Y. U. L. Rev. 97, 132 (2009).  <u>See</u>, <u>e.g.</u>,

2    <u>Washington v. Joe's Crab Shack</u>, 271 F.R.D. 629, 639 (N.D. Ca. 2010) (class certification denied

3    because relevant common proof did not exist, and the need for individualized analysis

4    predominated).  To put a finer point on the Supreme Court's ruling that the class action

5    mechanism must be capable of producing common answers, as it relates to MLO training, this

6    Court stated in its Order that "[e]ven if PNC has records of training sessions that MLOs

7    completed or meetings that they attended, Plaintiffs have not offered any classwide evidence from

8    which to determine how long MLOs spent in those sessions or meetings or whether they also

9    worked on selling loans during that time."  (Order at 12:5-8).  The Court went on to state that

10   "[t]he issue here—how long employees spent in training sessions, for example, or whether they

11   multitasked and performed sales work during those sessions—are likely not amenable to such

12   uniform proof, and Plaintiffs have made no showing that representative evidence would be

13   reliable."  (<u>Id.</u> at 13:7-10).  Finally, the Court ruled that, based upon the record presented on the

14   certification motion, "pursuing claims based on nonproductive working time would require

15   virtually a full trial for each MLO as to when and how they worked, what records they or PNC

16   might have retained, whether the MLO remembers how long they spent in meetings and training

17   sessions, and whether they recall working on selling loans during that time."  (<u>Id.</u> at 13:25-14:1).

18          There is no common proof of the time MLOs spent in training.  Plaintiff effectively

19   concedes this in the Renewed Memorandum: "even without common evidence of training

20   duration and PNC bearing the consequences for not retaining more precise records, Plaintiff could

21   reasonably estimate duration. . . ."  (Renewed Memorandum, at 7:1-2).  Plaintiff has not proffered

22   any representative or statistical evidence that could even conceivably serve as a surrogate for

23   common proof.  Plaintiff has utterly failed to demonstrate that common evidence exists to prove

24   how much time MLOs actually spend exclusively in training or whether they multitasked during

25   training on mortgage sales work.  Individual trials would have to be held to make this

26   determination for each MLO.

27

28

RECYCLED PAPER

1

**B.** **PNC Has No Statutory Or Other Legal Obligation To Maintain Records Of The**

2

**Length Of Time MLOs Spend On The Training Courses Identified By Plaintiff**

3       Plaintiffs argued in the Original Memorandum, and Plaintiff does so repeatedly in her

4   Renewed Memorandum, that because PNC does not maintain records that capture the amount of

5   time MLOs spend in training, the consequences should fall on PNC.  In support of the argument,

6   Plaintiff again cites Hernandez v. Mendoza, 199 Cal. App. 3d 721 (1988), quoting the following

7   language: "where the employer failed to keep records required by statute, the consequences fall

8   on the employer not the employee.  In such a situation, imprecise evidence by the employee can

9   provide a sufficient basis for damages."  Id. at 727.  Hernandez involved an employer that did not

10   maintain appropriate time records and, in fact, falsified time records for one period of time.

11   Relying on the U.S. Supreme Court's holding in Anderson v. Mt. Clemens Pottery, the Court held

12   that an employer that fails to maintain statutorily required time records cannot rely on the absence

13   of such records and found that, once an employee in such circumstances presents generalized

14   evidence about the time worked, the burden shifts to the employer to disprove that evidence.  Id.

15   Indeed, Anderson and its progeny all deal with how to measure damages in off-the-clock work

16   cases.

17       Unfortunately, for Plaintiff, Hernandez provides no succor here.  As a preliminary matter,

18   unlike in Hernandez and Anderson, Plaintiff testified that she accurately recorded her time

19   worked.  (Declaration of Linda Scheid in Support of the Original Motion, ¶ 8).  Thus, the off-the-

20   clock standards in Hernandez and Anderson do not apply here.  Moreover, Plaintiff does not

21   identify any statute, wage order, or other legal standard that requires PNC to keep a record of

22   each distinct activity performed by employees (including time MLOs spend taking the training

23   courses at issue in this case) during recorded work time.  Thus, the lack of common evidence of

24   time spent training is just that, and Plaintiff cannot shift its burden of demonstrating that common

25   evidence exists by blaming PNC for not possessing such evidence.

26

27

28

**RECYCLED PAPER**

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

**C.      Plaintiff's Arguments Cannot, And Do Not, Substitute For The Absence Of**
**Common Evidence Of Time Actually Spent By MLOs In Training Or Whether**
**They Performed Sales Work Simultaneously While Taking Training Courses**

1.      PNC's Records Of Training Courses Completed By MLOs Do Not Provide
Relevant Common Evidence Sufficient To Satisfy The Court's Order Or FRCP
Rule 23

The Court's Order made it clear that "[e]ven if PNC has records of training sessions that MLOs completed and meetings that they attended, Plaintiffs have not offered any classwide evidence from which to determine how long MLOs spent in those sessions or meetings, or whether they also worked on selling loans during that time."  (Order, at 12:5-8).  Nevertheless, Plaintiff argues that common evidence exists that shows "for every MLO the specific training courses **taken** and the date each training course was completed."  (Renewed Memorandum, at 3:17-18) (emphasis supplied).  Presumably, Plaintiff still believes this satisfies her burden, and she is unwilling to accept the Court's view to the contrary.  In support of her argument now, Plaintiff again relies on an excerpt from the same document, PNC 1540, that she referenced in her Original Memorandum to make the argument that "Common Issues Predominate with Respect to Plaintiffs' Non-Productive Minimum Wage Claims."  (Original Memorandum, at 18:6-19:1; *compare to*, Renewed Memorandum, at 8: 16-9:22).  This evidence, however, does not demonstrate the amount of time MLOs spent in training, or whether or not they multitasked by performing mortgage sales work.  Plaintiff's repeating this argument a second time does not alter its irrelevance with respect to showing the actual time MLOs spent in training.

Additionally, even if the identity and number of courses taken were relevant, it is noteworthy that the document to which Plaintiff refers in support of her argument (PNC1540), does **not** show "the specific courses **taken.**"[7]  Plaintiff knows this, and it is disingenuous for her to argue otherwise.  The undisputed evidence is to the contrary.  At his deposition, the PMQ

---

[7] We also note that PNC 1540, upon which Plaintiff relies in making these arguments, includes data dating back to 2014 which is three years before the commencement date of the time period for which Plaintiff seeks to certify training claims.  The pre-January 4, 2017 data is even more irrelevant.

**RECYCLED PAPER**

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

explained, among other things, that some training classes, even though listed, are waived for some MLOs or tested-out of and consequently never taken by some MLOs.  (See, Section A, at p. 4, above; and, e.g., Original PMQ Decl., ¶ 10).  Nevertheless, the MLO is still given credit for the classes, and PNC records indicate that the classes were "completed."  (Id.).  That is simply the way records are kept at PNC.  (Id.).  Consequently, there is no common evidence of all courses that were actually **taken** and completed by MLOs.  (Id.).

Likewise, even if the documents did show all of the courses **taken** and completed, which they do not, Plaintiff's argument misses the entire point of the Court's Order with respect to meeting Rule 23 requirements and demonstrating commonality and predominance.  The issue for certification is not whether MLOs may have taken some of the same training courses; there must be common evidence of "how long employees spent in training sessions, for example, or whether they multitasked and performed sales work during those sessions," and those issues "are likely not amenable to such uniform proof. . . ."  (Order, at 13:7-9).

2. No Records Exist That Show The Time MLOs Actually Spend Taking Training Courses

Plaintiff concedes, as she must, that "PNC did not direct MLOs to record their time spent either on computer based training or in self-study materials to record their training time." ("Renewed Memorandum, at 4:10-12; see, Section A, at p. 4-5; and, e.g., Original PMQ Decl., ¶ 15).  Thus, there is no classwide proof of the amount of time that MLOs spent on training. Understanding that the absence of this proof is fatal to her attempt to certify a training claim, she scrambles to find arguments as to why it is not necessary to have such classwide representative or statistical proof, and instead proposes different evidence in its place in an effort to avoid conceding defeat.

Plaintiff points to several documents that identify, among other things, the "duration" of some of the training courses.  (Renewed Memorandum, at 4-7, and the accompanying declaration

1    of Mr. Swidler, one of Plaintiff's counsel).[8]  Plaintiff then suggests that this satisfies her burden

2    of presenting evidence that commonality predominates.  Plaintiff is wrong, again.  First, the

3    undisputed evidence is that PNC's use of the term "duration," in those instances where it is used,

4    does **not** represent the time an MLO spends taking a particular course.  Nor is it a time estimate.

5    (See, Section A, at p. 4-5 above; and, e.g., Original PMQ Decl., ¶¶ 13, 15).  Plaintiff's counsel

6    learned all of this during the deposition of the PMQ **before** filing the Original Motion.

7    Additionally, the PMQ testified at his deposition and/or in his declaration that the time MLOs

8    spend taking various courses "varies greatly," that the "duration" is not the average of the time it

9    takes an MLO to complete a course, and that the "duration" is not an estimate of the time it takes

10   to complete a course.  (Original PMQ Decl., at ¶¶ 13, 14).  Instead, the "duration" is a number

11   calculated as follows: "PNC uses an automated system that calculates the number of topics and

12   the number of words per page in each module from which the maximum time for median

13   comprehension is calculated."  (Original PMQ Decl., ¶ 13; see also, Mackenzie Deposition Tr., at

14   45:15-46:13; 70:5-13; 94:10-20).  The primary reason for a duration number, where it is listed, is

15   to allow an MLO to plan for a time when they can take the course within the targeted calendar

16   completion date.  (Renewed PMQ Decl., ¶ 5; Mackenzie Deposition Tr., at 36:4-10).

17          Second, the PMQ testified that he has taken the training courses, and he has knowledge of

18   most MLOs' test taking habits because he is PNC's regional sales executives who ultimately

19   supervises and observes all California MLOs' performance.  (Original PMQ Decl., ¶ 3)  He stated

20   that "training modules take far less time to complete than the calculated duration indicates, and

21   that the time it takes to complete each module varies greatly from MLO to MLO."  (Original

22   PMQ Decl., ¶ 14).  Various MLOs similarly confirmed, in their declarations submitted in

23   opposition to the Original Motion, that the stated duration of a course did not come close to

24   representing the time they spent taking training courses, as discussed above.

25          Third, as previously stated, PNC has no record of how long it takes each MLO to

26

27   _____
     [8] As previously stated in footnote 2, supra, not all courses have a stated duration.  In fact, Plaintiff
     makes no effort to identify how many of the training sessions included in PNC 1540 have an
28   estimated duration, no doubt because it appears that over 50% do not.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO.  3:18-CV-04810-J CS

1   complete a particular course.  (Original PMQ Decl., ¶ 15).  PNC does not track log on/log-off

2   times for training modules.  (Id.; see also, Mackenzie Deposition Tr., at 46:19-47:4; 114:7-13).

3   Moreover, there is no record of whether MLOs actually took some of the training classes because

4   sometimes they tested-out of classes, and sometimes the classes were waived, but they still

5   received completion credit.  (Original PMQ Decl., ¶¶ 16-17; Mackenzie Deposition Tr., at

6   Mackenzie Deposition Tr., at 54:20-23; 75:7-17; 76:20-25; 83:4-8, 131:4-5; 133:7-14).  The other

7   MLO declarations filed in opposition to the Original Motion confirm the same.

8           Fourth, Plaintiff fails to address the fact that some of the training modules do not even

9   have a stated duration.  (See, e.g., Mackenzie Deposition Tr., at 123:18-23).  Thus, even if

10  Plaintiff's argument that there is common evidence of "duration" were determinative, which they

11  are not for the reasons stated above, those arguments would carry absolutely no weight where the

12  information is absent, destroying the commonality of proof.

13          3.      MLOs Often Multitask By Handling Sales Work When They Are Training

14          It should not be surprising that people often multitask when they are performing many of

15  their daily functions.  Consistent with this practice, MLOs often multitask by handling mortgage

16  sales related matters when they are taking training classes.  (Renewed PMQ Decl., ¶ 8).  These

17  tasks include, among others, filling out mortgage sales paperwork, scheduling appointments with

18  mortgage sale clients and prospective clients, writing and responding via text and email, to

19  clients, prospective clients, real estate agents, escrow agents, credit agents, and appraisers

20  regarding pending or prospective mortgage sales and closings.  (Id.).  Since an MLO's primary

21  responsibility is selling mortgages, it is natural that these tasks would have priority, regardless of

22  whatever else an MLO may be doing.  (Id.).  The ability to multitask during training allows

23  MLOs to do their jobs, and is easy to accomplish because, for example, with self-study courses,

24  the MLO can stop and start studying at their convenience, as long as the course is completed by

25  the targeted calendar completion date.  Similarly, for web-based courses, as long as they are

26  completed within the months designated, the MLO gets completion credit.

27

28

RECYCLED PAPER

4.     <u>Ms. Scheid's New Declaration Confirms That Individual Issues Predominate</u>
<u>With Respect To Training</u>

Ms. Scheid submitted a declaration in support of Plaintiffs' Original Motion, and now she has submitted a new declaration in connection with the Renewed Motion addressing her training while she worked as an MLO at PNC. ("Renewed Scheid Decl."). She states that "the duration of the training . . . **approximated on average** what time it actually took **me** to complete the training course." (Renewed Scheid Decl., ¶ 4) (emphasis supplied). What exactly does this mean? After January 4, 2017, Ms. Scheid had 126 different training programs marked as "completed." Is she stating that she recalls specific training programs or is she speculating about averages when all of these training programs are combined? Putting aside the uncertainty and equivocal statement that it "approximated" on "average" the time it took Ms. Scheid to complete the training courses, and assuming its truthfulness for purposes of the Renewed Motion, Plaintiff makes it clear that she is **relating her personal experience** with the training courses. That experience contrasts with the experience of the PMQ and other MLOs. Thus, the experience is individualized, and is clearly different for each MLO (which is consistent with the PMQ's testimony). Moreover, with respect to Ms. Scheid's statements about the efforts **she** had to make to pass training tests, it is probably better that PNC not comment. Suffice it to say, it is common knowledge that virtually every human being undertakes different efforts and needs different amounts of preparation time to pass a test. Factors such as intelligence, reading comprehension level, focus, anxiety and test taking abilities all affect the ability to pass a test. The fact that Plaintiff states that "I [sic] Linda had to devote my entire attention to the training and could not perform any sales functions while taking the training", speaks to her individual circumstances (and, it might explain, in part, why she was placed on probation during the later part of her tenure at PNC for not making sufficient sales). Again, this is her individual experience and is contrary to the experiences of other MLOs. (Renewed PMQ Decl., ¶ 8).

Finally, it does not help Ms. Scheid's efforts here to try and dispute two of Mr. Mackenzie's statements in the Original PMQ Decl. She asserts that Mr. Mackenzie did not customize training programs for MLOs. (Renewed Scheid Decl., ¶ 5). Plaintiff plainly lacks

RECYCLED PAPER

DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION OF
NON-PRODUCTIVE TIME – CASE NO. 3:18-CV-04810-J CS

1  foundation for this statement.  How would she know this?  Did she poll all MLOs?  Did she

2  discuss the subject with Mr. Mackenzie?  The fact that all MLOs took many of the same classes

3  does not mean that Mr. Mackenzie did not make additional training requirements for specific

4  MLOs.  Likewise, Plaintiff's statement that Mr. Mackenzie is wrong about there being testing-out

5  options for some training courses because she did not have that option when she "started" at PNC

6  is improper argument and lacks foundation.[9]  (Renewed Scheid Decl., ¶ 6).  Indeed, before

7  making such a statement, she probably should have taken a look at the documents she is relying

8  on in support of her Renewed Motion, including documents Bates numbered PNC 1571-1575,

9  that state that the published list of courses available identifies "whether a 'Test-Out Option is

10  available.'"  (Renewed Memorandum, 5:18-21).  Ms. Scheid was employed by PNC when that

11  document was published.  Consequently, her lack of knowledge in this regard is either

12  disingenuous or unique to her.  Regardless, other MLOs were aware of such options and actually

13  took advantage of them.

14          5.      "Full Attention" In Training Does Not Prohibit Multitasking On Sales Matters

15          It is hard to believe that Plaintiff would make the argument, similar to the statement in the

16  Renewed Scheid Decl., that MLOs cannot multitask on sales matters during training because

17  there is a testing component at the end of each course.  Indeed, it is no wonder why Plaintiff

18  saved the argument for last in her Renewed Memorandum.  It is entirely specious.

19          PNC's response to this argument is largely addressed in its discussion of the Renewed

20  Scheid Decl., in the immediately preceding section of this brief.  In addition, while Plaintiff's

21  counsel may believe they are experts on the subject of what an MLO needs to do to pass a

22  training course test, and how much "attention" is required, they are not experts on human learning

23  (or at least, they have not presented their credentials in that regard).  Moreover, even if they were

24  such experts, their ability to determine or predict whether an MLO who multitasks would have

25  the ability to pass a course test is nothing more than soothsaying, not empirically based

26

27

28  _____
    [9] It is worth noting that Ms. Scheid started work as an MLO at PNC in 2011, approximately five
    and a half years before the commencement of the proposed class period.

**RECYCLED PAPER**

1   behavioral science.  The only evidence in relation to MLOs, other than Ms. Scheid, is that they

2   could and did engage in sales activities while simultaneously taking training.

3   **D.     A Class Proceeding Involving Training Claims Would Be Unmanageable And**

4   **Inefficient**

5          Under Rule 23(b)(3)(D), an aspect of showing that a class proceeding is superior involves

6   demonstrating that it would be manageable.  There are 208 MLOs in the class, and 381 training

7   courses that were identified in the documents as being either "in progress," "in progress: past

8   due," "registered: past due," or "completed" by the MLOs during the proposed class period,

9   January 4, 2017 through June 30, 2019.  (See, PNC 1540—referenced in the Renewed

10  Memorandum, at 7:7-8:23).  Thus, the reality is that many of the training courses taken by MLOs

11  remained open and "in progress" for multiple days or weeks.  (Renewed PMQ Decl., ¶ 6).

12  Consequently, individual inquiries of MLOs must be made to determine why it took them so long

13  to complete the training, why they didn't take the courses in one sitting, which courses did they

14  take in one sitting, what sales related activities did they undertake during their training, and if

15  they remember, how much of the time did they spend exclusively on the training materials during

16  a course.  Moreover, as to Plaintiff herself, she only "completed" 126 of the 381 courses.  PNC

17  1540.  Thus, she would not know (i) the contents of and the amount of time it would take to

18  complete the other two-thirds of the classes that she did not complete, or (ii) the training

19  experiences of the other MLOs with respect to those classes.

20         Another aspect of superiority involves the question of efficiency and judicial economy.

21  (Rule 23(b)(3)(C)).  There is none to be found in certifying training claims.  Class actions that

22  require individualized determinations and splinter into small disputes are, by their nature,

23  inefficient.  See, Hughes v. WinCo Foods, 2012 WL 34483, *9 (C.D. Ca. 2012) (no superiority:

24  the "class proceeding would not promote greater efficiency because the class action would

25  devolve into hundreds or thousands of 'mini-trials;' thus, the difficulties associated with pursuing

26  these claims via a class action outweigh any benefits."); Brown v. Fed. Express Corp., 249 F.R.D.

27  580, 587-88 (C.D. Ca. 2008) (same).  Therefore, factual determinations with respect to the

28  various aspects of training discussed above, among others, would necessitate hundreds of mini-

RECYCLED PAPER

1  trials for MLOs in order to determine both liability and damages, if any, which confirms that

2  individual issues would predominate.

3  **IV.**     **CONCLUSION**

4          For the forgoing reasons, PNC respectfully requests that the Court deny Plaintiff's Motion

5  to certify MLO training claims.

6

7  Dated: May 29, 2020                            K&L GATES LLP

8

9                                                 By: */s/ Saman M. Rejali*
10                                                     Paul W. Sweeney, Jr.
                                                       Patrick M. Madden
11                                                     Saman M. Rejali

12                                                     Attorneys for Defendant, PNC Bank, N.A.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3      I am employed in the county of Los Angeles, State of California.  I am over the age of 18

4 and not a party to the within action; my business address is: K&L GATES LLP, 10100 Santa

5 Monica Boulevard Eighth Floor, Los Angeles, CA  90067.

6      On May 29, 2020, I served the document(s) described as:

7 **DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR**

8 **CLASS CERTIFICATION OF NON-PRODUCTIVE TIME**

9      The undersigned certifies that the document listed above served on counsel of record for

10 Plaintiffs by e-mail, pursuant to an agreement between counsel.

11

12      I declare under penalty of perjury under the laws of the United States of America that the

13 foregoing is true and correct.

14      Executed on May 29, 2020, at Los Angeles, California.

15

16                                          */s/ Saman M. Rejali*
                                           Saman M. Rejali

17

18

19

20

21

22

23

24

25

26

27

28

20

**RECYCLED PAPER**