EXHIBIT 1

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>     Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**DECLARATION OF MICHAEL SMILES IN OPPOSITION TO CLASS CERTIFICATION**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

303762399 v7

**DECLARATION OF MICHAEL SMILES**

I, Michael Smiles, hereby declare and state:

1.     I am a Senior Compliance Specialist for PNC Mortgage, a Division of PNC Bank, NA ("PNC"). Prior to my current position, I was employed by PNC as the Mortgage Incentive Administration supervisor and manager from mid-2013 through mid-2019. This declaration is based on my personal knowledge and knowledge I gained through my management role with PNC and from my custody and control of PNC records. I also testified as the corporate representative for PNC in this case on questions regarding compensation.

2.     In my mortgage incentive management position, I supervised a team of analysts who were responsible for the administration of PNC's mortgage incentive plans. I am thus very familiar with the compensation paid to Mortgage Loan Officers ("MLOs") in California from 2013 through mid-2019 and how that compensation was structured and determined. I also helped oversee the preparation and maintenance of compensation records that contain information recorded at or near the time of the acts, events, or conditions indicated therein.

3.     California MLOs were generally compensated in three distinct ways. Initially, MLOs were paid a salary. Second, MLOs had the opportunity to earn additional incentive compensation under the PNC Mortgage Originations Incentive Plan ("Plan"). Finally, some MLOs were provided contingent onboarding incentives or other unique incentive bonuses as determined by mortgage management. In addition to these three methods of compensation, PNC also paid all relevant overtime amounts due when MLOs worked overtime hours. The following paragraphs explain each of these methods of compensation.

4.     **MLO Salaries:** MLOs in California were paid an annual salary for all time they worked up to forty hours per week. The salary thus covered all sales and non-sales activities and responsibilities while on the job, including rest periods. MLOs also received additional overtime pay at the required time-and-a-half or double-time rate for all overtime hours worked. The annual salary for most California MLOs was ███████ but a few MLOs were paid other salary amounts. Regardless, the annual salary was set so that it was always well in excess of state minimum wage requirements.

5.     MLO salaries were earned and paid on a bi-weekly basis. Thus, for example, an MLO with an annual salary of ████ was paid ████ in salary each bi-weekly pay period. MLO bi-weekly salaries provided a consistent and reliable stream of income, were not draws or advances, were not subject to repayment, were never repaid, and were distinct from any incentive pay. In fact, MLOs who never wrote a loan and never engaged in any other activity resulting in incentive pay still earned and were paid their salary every other week. For example, plaintiff Tanseer Kazi worked for PNC for a few weeks in September 2014. Although he closed no loans and did nothing to earn incentive compensation, he was still paid his salary for those weeks and was not asked to and did not repay any part of his salary when he left PNC in 2014.

6.     **MLO Plan Incentives:** In addition to their bi-weekly salaries, California MLOs had the opportunity to earn incentive compensation under the Plan and an Addendum A to the Plan that applied to MLOs in California. For purposes of clarity, I will call this "Plan Incentive Pay." Plan Incentive Pay for California MLOs was typically measured, calculated, earned, and paid on a monthly basis, although annual awards were also possible.

7.     The Plan was modified periodically. Attached hereto as **Exhibit 1** is the Plan in effect in 2014. Attached hereto as **Exhibit 2** is the Plan as modified in 2017.

8.     The Addendum A applicable to California MLOs was typically modified and updated at least once per year, but often more frequently. Attached hereto as **Exhibit 3** is the Addendum A in effect in June 2014. Whenever Addendum A was modified, it would be reissued to MLOs, with a short section in the front summarizing the changes that were made. Attached hereto as **Exhibit 4** is the relevant January 2017 Addendum A that contains a summary of changes from 2012 through 2017. Attached hereto as **Exhibit 5** is the relevant January 2018 Addendum A that contains a summary of changes from 2012 through 2018. Attached hereto as **Exhibit 6** is the relevant January 2019 Addendum A that contains a summary of changes that year. And, attached hereto as **Exhibit 7** is the relevant July 2019 Addendum A.

9.     Together the relevant, then-applicable Plan and Addendum A established eligibility criteria and provided detailed explanations for how Plan Incentive Pay was calculated. ████

3

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS

1    ▮▮▮▮▮▮▮. The calculations were complex, involved many different components, and were

2    handled by the analysts I oversaw in PNC's Incentive Compensation Department. Put simply,

3    however, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For

5    example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12       10.    In the paragraphs below, I provide further detail on Plan Incentive Pay because, given

13   plaintiffs' assertions in this case that they were not paid for their rest breaks and non-productive time

14   because their salary was "deducted" from commissions, I believe it is important to understand why

15   those assertions are not accurate. Moreover, and of particular importance for these purposes, it is

16   critical to understand that (i) the Plan does not provide that commissions ▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮ are earned or paid and, instead, merely includes ▮▮▮▮▮▮▮▮▮▮▮▮.

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮and (iii) MLOs are paid non-Plan incentives that cover all time worked and

21   that are not driven by an MLO's individual mortgage loan sales. Thus, any suggestion that a

22   determination can easily be made whether all MLOs were paid or not paid for rest periods and other

23   non-productive time is false. Each Plan and non-Plan incentive payment made to an MLO was

24   unique to that MLO, and a myriad of factors must be considered with respect to each individual

25   MLO and payment when determining what portion of his or her pay, if any, can be traced to any

26   specific part of his or her work as an MLO.

27

28

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS

11.     The first step in assessing whether MLOs earned Plan Incentive Pay was to determine, typically on a monthly basis, ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████████ █████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████

12.     If MLOs satisfied the relevant eligibility criteria, the ████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████ As part of the discovery produced in this case, PNC provided plaintiffs with two spreadsheets that together contain ██████████████████████████ of data extracted from PNC's database relating to Plan Incentive Pay calculations for the period from June 16, 2014, through June 30, 2019 ("Plan Data"). The Plan Data covered 207 California MLOs and a collective 7,635 pay periods.

13.     Some of the factors under the relevant Plan and Addendum A for California MLOs that established the monthly threshold used to determine Plan Incentive Pay during some or all of the time period from 2014 to June 2019 included:

- ████████████████████████████

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS



1

As discussed in the Plan and Addendum A, [redacted]

[redacted] these were never amounts owed. Thus, when MLOs left PNC, they did not have to pay PNC for any Plan deficit. For example, plaintiff Tanseer Kazi had a deficit of [redacted] and plaintiff Linda Scheid had a deficit of [redacted] when they left PNC. These amounts were not debts and were not paid back to PNC. Despite these substantial deficits, Mr. Kazi and Ms. Scheid continued to earn and receive bi-weekly salary payments in the last months of their employment even though they were not selling loans or entitled to any incentive payments.

14.     Some of the factors under the relevant Plan and Addendum A for California MLOs that were used to determine incentive credits in the Plan Incentive Pay calculation included:

- ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████

█████████

████████████████████████████████████████████

████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████

████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

Some of these incentive credit factors were in effect from 2014 through 2019 whereas other incentive credit factors were implemented more recently. For example, ████████████ were added to

████████████████████████████████████████████████████

███████████████████████████████████████████████

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS

the Plan in 2014 and implemented in California in 2016, and ████████████ were added

in California starting in 2018.

15.    Some of these incentive credit factors involved ████████████████

however, these factors were still dependent ██████████████████████

████████████████████ which was intended to compensate for all time worked. Other

incentive credit factors █████████████████ were related to ████████████

██████████████████████████████

████████████████████ Still other incentive credit factors ████████████

██████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████

██████ These calculations varied from month to month for each MLO and between MLOs.

Of the 207 MLOs included in the Plan Data, 41 never accrued sufficient incentive credits to earn any

Plan Incentive Pay.

16.    **MLO Onboarding and Bonus Incentives:** In addition to their salaries and Plan

Incentive Pay, some but not all MLOs in California were paid additional incentives that were not

part of the Plan Incentive Pay calculations and had ██████████████████████

17.    Initially, some MLOs were provided contingent onboarding incentives (what were

previously called forgivable draws). The amounts of these incentives were determined by recruiters

and local management and varied greatly. About ████████ was paid in onboarding incentives from

2014 to 2016, and that amount ██████████████████████ For example, in

████████████████████████ █ ████████████████████ These incentives

were intended to minimize cash flow issues for new employees as they built a flow of work at PNC,

to encourage them to stay at PNC, and to reward their continuing employment over a period of time.

18.     The terms under which MLO onboarding incentives were paid are discussed in MLO offer letters or other MLO-specific communications. Onboarding incentives were often provided to MLOs on a few bi-weekly pay cycles near the start of their employment, but they could be arranged and provided in various ways. For example, one MLO received 22 bi-weekly onboarding incentive payments rather than condensing the payments into a few pay periods. The incentives provided were contingent payments in that the amounts were not earned until a year after the end of their probation period (*i.e.*, 12-15 months after their start date) and, if MLOs left PNC for any reason during that time, they were contractually obligated to repay the amount received unless they negotiated some other arrangement. If MLOs remained employed for a full year after probation, the contingency was satisfied and the payments were deemed earned at that time.

19.     Onboarding incentives were not tied to any particular work behavior and, instead, were typically paid for all time worked (including rest breaks) during the 12-15 months of employment that they covered. Moreover, these incentives were independent of MLO salaries and Plan Incentive Pay.

20.     Similarly, although they typically are no longer used, some MLOs were provided with noncumulative draws totaling over ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Noncumulative draws were only applied to a particular period of time and were noncumulative, which meant that they were not part of the thresholds or deficits when calculating Plan Incentive Pay.

21.     In addition, some but not all MLOs in California were provided other incentive bonuses as determined by local mortgage management. These types of incentives could focus on a month or an entire year, were not included in Plan calculations, and were typically recorded in our compensation system as pay overrides. For example, on ▮▮▮▮▮▮▮ plaintiff Tanseer Kazi was paid a ▮▮▮▮▮▮▮▮▮▮▮▮▮ that was independent of any Plan calculations or payments. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Because these incentive bonuses were not part of the Plan and were typically determined at a local level, the only way to determine the nature of such bonuses, what period they

1  were intended to cover, and what terms applied to them is to review each employee's pay records

2  and have a conversation with the relevant management and employee.

3      22.  **Plaintiff's Misconceptions Regarding Compensation:** I understand that plaintiffs'

4  Motion for Class Certification makes certain statements regarding PNC's compensation system,

5  including representations regarding my testimony, that are simply not accurate. As a general matter,

6  the Motion takes statements that were limited to a particular example or hypothetical and suggests

7  that the statements apply generally even though plaintiffs' counsel made clear that he was only

8  asking about the limited circumstances. I discuss some of these inaccuracies below:

9      23.  Initially, the Motion (at 4:25-5:2) cites pages 77:15-81:11 of my deposition for the

10  proposition that "all regular pay was deducted from earned commission prior to the net commission

11  being paid." That is not accurate. The cited section of my deposition dealt with a particular example

12  and cannot be generalized. Regardless, there were no "earned commissions," and "net commissions"

13  were not paid.

19      24.  The Motion (at 5:3-6) cites 57:22-58:16 of my deposition for the proposition that, if

20  there was a shortfall in Plan calculations in one month, "Defendant carried over the deficit to future

21  months, and then deducted that deficit from future commissions." Again, the cited section of my

22  deposition dealt with a particular example and was not a universal statement. As I explained in the

23  deposition, shortfalls or uncovered amounts were carried forward and included in deficits in some

24  circumstances, but not in others. For example, shortfalls were not carried forward during the first six

25  months of an MLO's employment or during up to four months per year under the cyclical deficit

26  forgiveness program. In addition, deficits were not deducted from commissions.

28

10

25. The Motion (at 6:15-21) cites page 136:9-22 of my deposition for the proposition that California MLOs took 15-minute rest breaks for a total of 10 hours every four weeks. As I stated at the time, I was uncertain of the length of breaks provided in California. After the deposition, I checked the relevant policies (which plaintiffs' counsel had) and they provided for 10-minute rest breaks. I made this correction in numerous places in the errata sheet for my deposition, which I signed, had notarized, and sent to Plaintiffs' counsel on September 20, 2019. A true and correct copy of my errata sheet and hand-addressed envelope to plaintiffs' counsel is attached hereto as **Exhibit 8**.

26. Finally, the Motion (at 6:24-8:3 and 14:2-9) cites pages 146:17-148:23 of my deposition for the proposition that I "plainly admitted" that "pay provided for rest periods was a draw against commissions, "PNC did not pay for such periods," and "[t]heir total [compensation] at the end of the month would be no different." Again, my testimony was taken out of context. In the deposition, plaintiffs' counsel asked me to consider a pay record that only included a salary payment and ███████████████████████████████████████ and further asked me to assume that PNC decided not to pay for rest periods. I explained, "That isn't how PNC pays." Plaintiffs' counsel then insisted that I answer hypothetical questions if PNC paid differently, which I did based on his hypothetical assumptions. This entire exchange was built on the assumption that an ████████ ████████████████████████████████ however, as I explained during the deposition, ███████████████████████████████████████████████ ███████████████████████████████████████████████ This was certainly true for Mr. Kazi in 2014 (when he earned no incentives), at times when deficits were not applied or forgiven, for the ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████.

#

#

#

#

---

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS

1      I declare under penalty of perjury under the laws of the United States of America that the

2 foregoing is true and correct.

3      Executed this 5th day of November, 2019 at *Plainfield*, Illinois.

4

5      Michael Smiles

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF MICHAEL SMILES**
Case No. 3:18-cv-04810-J CS

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is:10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 5, 2019, I served the document(s) described as:

## DECLARATION OF MICHAEL SMILES

The undersigned certifies that the document listed above was filed this November 5, 2019. Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 5, 2019, at Los Angeles, California.

_/s/_  Saman M. Rejali

**CERTIFICATE OF SERVICE**
Case No. 3:18-cv-04810-J CS

**Exhibit 8**



------
ERRATA – Rule 30(b)(6) Deposition of Michael Smiles on August 20, 2019
in *Kazi v. PNC Bank*, No. 318-cv-04810-J CS (N.D. Cal.)
------

| PAGE | LINE | CHANGE | REASON |
|------|------|--------|--------|
| 8 | 16 | Insert "Incentive" after "Mortgage" | Accuracy; clarity |
| 9 | 2 | Delete "Administration Manager," | Accuracy; clarity |
| 18 | 24 | Replace "borrow" with "borrower" | Accuracy; clarity |
| 19 | 7 | Replace entire line with "calculation is completed in many cases." | Accuracy; clarity |
| 19 | 19 | Replace "those" with "the MLO" | Accuracy; clarity |
| 20 | 6 | Replace the second "plan" with "plans" | Accuracy; clarity |
| 20 | 7 | Replace "is" with "are" | Accuracy; clarity |
| 25 | 6 | Replace "borrow" with "borrower" | Accuracy; clarity |
| 25 | 7 | Replace "Emapta (phonetic)" with "application to" | Accuracy; clarity |
| 25 | 8 | Insert "ready" after "underwrite" | Accuracy; clarity |
| 42 | 22 | Delete "dollars" | Accuracy; clarity |
| 49 | 19 | Delete "period" after "incentive" | Accuracy; clarity |
| 56 | 2 | Replace "begun" with "one" | Accuracy; clarity |
| 57 | 24 | Replace "evenings" with "earnings" | Accuracy; clarity |
| 64 | 6-7 | Replace "underlying" with "assigned" | Accuracy; clarity |
| 64 | 7 | Replace "that that if" with "that. If" | Accuracy; clarity |
| 74 | 6 | Replace "described" with "informed" | Accuracy; clarity |
| 95 | 15 | Replace the first "that" with "because" | Accuracy; clarity |
| 122 | 6 | Delete "loan-level snapshot – an MLO level" | Accuracy; clarity |
| 132 | 12-13 | Replace ", doesn't he not earn – or not earn – but" with "and based on the circumstances you described," | Accuracy; clarity |

**MAGNA**
LEGAL SERVICES

| 132 | 24 | Insert "After reviewing this, the California policies provide for 10 minutes." after "right?" | Accuracy; clarity |
|-----|----|-----------------------------------------------------------------------------------------------|-------------------|
| 133 | 12 | Replace "Yes, that's my understanding" with "The California policies provide for two 10-minute breaks in an eight-hour day" | Accuracy; clarity |
| 133 | 16-17 | Replace "That sounds appropriate, that sounds right" with "The California policies provide for two 10-minute breaks in an eight-hour day, which would add up to 100 minutes for five eight-hour days" | Accuracy; clarity |
| 133 | 21 | Insert ", and two weeks at 100 a week would be 200" after "300" | Accuracy; clarity |
| 134 | 2 | Insert "; however, the California policies provide for two 10-minute breaks in an eight-hour day" after "allowed" | Accuracy; clarity |
| 134 | 22 | Replace "15" with "10" and replace "allocated" with "allowed" | Accuracy; clarity |
| 135 | 2 | Insert ", but after reviewing this the California policies provide for two 10-minute breaks in an eight-hour day" after "weeks" | Accuracy; clarity |
| 136 | 5 | Insert ", but the California policies provide for two 10-minute breaks in an eight-hour day" after "right" | Accuracy; clarity |
| 136 | 8 | Insert ", but not if the breaks are 10 minutes long" after "Right" | Accuracy; clarity |
| 136 | 14 | Replace "Yes" with "After reviewing this, the California policies provide for two 10-minute breaks in an eight-hour day, so that is not accurate" | Accuracy; clarity |
| 137 | 4 | Delete "Yeah." | Accuracy; clarity |
| 137 | 7 | Insert "The California policies provide for two 10-minute rest breaks in an eight-hour day, so that is not accurate." after "breaks." | Accuracy; clarity |
| 137 | 12 | Replace "30 minutes rest break per day" with "two 10-minute rest breaks in an eight-hour day" | Accuracy; clarity |
| 139 | 5 | Replace "commissions" with "incentives" | Accuracy; clarity |
| 156 | 21 | Replace "date after" with "day after funding" | Accuracy; clarity |
| 157 | 12 | Insert "later the" after "day" | Accuracy; clarity |

Seven Penn Center
1635 Market Street - 8th Floor
Philadelphia, PA 19103



| 199 | 20 | Replace "Yeah. A" with "It's a" | Accuracy; clarity |
| 226 | 14 | Insert "You also need to consider garnishments, if any, when determining net pay." after "right?" | Accuracy; clarity |
| 228 | 6 | Replace "either" with "both" | Accuracy; clarity |
| 228 | 7 | Replace "or" with "and" and insert "It just allocates dollars from one accounting area to another." after "negative." | Accuracy; clarity |
| 233 | 1 | Replace "So anytime that's part" with "So any salary that's paid for part" | Accuracy; clarity |
| 233 | 3 | Replace "comp plan" with "incentive compensation plan calculations" | Accuracy; clarity |
| 233 | 18 | Delete "hours," | Accuracy; clarity |

ACKNOWLEDGMENT OF DEPONENT

I, _Michael Smiles_, do hereby certify
that I have read the foregoing pages, 1 - PGS, and
that the same is a correct transcription of the
answers given by me to the questions therein
propounded, except for the corrections or changes
in form or substance, if any, noted in the attached
Errata Sheet.

_(signature)_     _9/20/19_

WITNESS NAME       DATE

Subscribed and sworn to before me this _20_ day of
_September_, 20 _19_.
My commission expires: _3-26-2023_

_(signature)_

Notary Public

TOM SCHWEIGHARDT
Official Seal
Notary Public - State of Illinois
My Commission Expires Mar 26, 2023

www.MagnaLS.com       866-624-6221

Seven Penn Center
1635 Market Street - 8th Floor
Philadelphia, PA 19103





FOREVER

895490918120714

Justin Swidler
Swartz Swidler, LLC
1101 Kings Highway North, Suite 402
Cherry Hill, NJ 08034

PNC Bank
Michael Smiles
2650 Warrenville Rd
Downers Grove, IL 60515

# EXHIBIT 2

## REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**DECLARATION OF ANTHONY LOCY IN OPPOSITION TO CLASS CERTIFICATION**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

1

**DECLARATION OF ANTHONY LOCY**
Case No.: 3:18-cv-04810-J CS

**DECLARATION OF ANTHONY LOCY**

I, Anthony Locy, hereby declare as follows:

1.     I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC").  I have held this position for a little over one year, having joined PNC Bank in October, 2018.  I have worked in the mortgage loan industry for approximately 31 years.  My principal office is located at 5700 Stoneridge Mall Rd., Pleasanton, CA.  This declaration is provided based on my personal knowledge.

2.     My responsibilities as an MLO require that I perform a variety of tasks, but the principal focus of my work is generating mortgage loan sales.  I participate in training, sales meetings and other activities as part of my job.

3.     For my work at PNC, I am paid a variety of types of compensation.  Some aspects of my compensation are outlined in the job offer letter I received at the commencement of my work at PNC, other aspects are detailed in the PNC Mortgage Originations Incentive Plan and Addendum A (the "Incentive Plan"), and still other aspects are offered and explained to me by my manager.

4.     I am not sure exactly what compensation other MLOs receive, but I do know that MLOs receive compensation that varies greatly for each MLO.  It varies because there are a wide range of potential payments an MLO might receive, from salary, to onboarding incentives (signing bonuses) of differing amounts, to referral fees of differing amounts, to flat fee payments received for helping recruit new MLOs to work at PNC.  Some of the incentive payments relate directly to mortgage loan originations, some relate indirectly to loan originations, and others have no relationship whatsoever to loan originations.  All of these different types of payments compensate me and other MLOs for all of our work on the job.

5.     More specifically, as stated in my offer letter, I am paid an annual salary for a 40-hour workweek.  I am a non-exempt employee.  Because the salary only pays for the first 40 hours each week, I am also eligible to receive overtime.  PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans.  I have been successful in closing loans, so I have

304006865 v2

1    never had to rely solely on my base salary as my income.  I never been asked to write a check back

2    or to otherwise return any of my salary to PNC.

3          6.    My offer letter also explained that, in addition to my salary, I was entitled to receive

4    an onboarding incentive payment that I understood was negotiable, but I determined the proposed

5    incentive amount offered to me by PNC was fair based upon my background, and I accepted the

6    onboarding incentive amount offered.  That payment, in the amount of ▆▆▆▆▆ was a contingent

7    payment made to me over my first two months of employment.  I understood that this incentive was

8    intended to provide me with sufficient compensation as I built a flow of work.  I also understood that

9    the contingency in the payment would be removed if I remained employed for a predetermined

10   period of time, and that the amount was not earned until that time had passed.  I received my full

11   onboarding payment, the contingency was removed, and I earned my onboarding incentive.  The

12   onboarding incentive was in addition to, and completely unrelated to any amount I would earn under

13   the Incentive Plan on mortgage loan sales I generated.

14         7.    My offer letter further explained that in addition to the onboarding incentive payment

15   previously described, as another onboarding incentive, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

16   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  This was a special arrangement for me

17   designed as further enticement for me to join PNC.  ▆▆▆▆▆▆▆▆▆▆▆▆▆

18   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

19   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

20   ▆▆▆▆▆▆▆▆▆▆▆  I was successful in my sales of loans at PNC, and earned the

21   ▆▆▆▆▆▆▆▆▆  afforded by this special incentive.

22         8.    My offer letter also explained that, in addition to my salary and onboarding

23   incentives, I was eligible to earn standard incentive compensation for loan originations under the

24   Incentive Plan.  The Incentive Plan and Addendum documents have changed over time and, with

25   each change, we are provided the new document, asked to review it, and are required to

26   acknowledge our understanding.  The documents are also available online for review at any time.

27         9.    I understand that Plaintiff Tanzeer Kazi testified that a one-page summary document

28   labeled PNC 001001 was the Incentive Plan under which he was paid.  I have reviewed that

---

2

**DECLARATION OF ANTHONY LOCY**
Case No.: 3:18-cv-04810-J CS

document and can confirm that, although it summarizes some Incentive Plan information, it is not the full Incentive Plan under which I was paid. The Incentive Plan documents were far more detailed.

10.     Although the Incentive Plan is complex and can be difficult to understand for people who are not in the industry, and it periodically changes, I have worked in the industry for a long time and have no trouble understanding the arrangements. Moreover, when I have had any questions, my managers have explained the Incentive Plan to me, they are accessible to answer any questions I have about it, and PNC provides me with access to other detailed documents including earnings statements that outline all of the relevant components and calculations. ███████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████

████████

11.     Finally, in addition to my salary onboarding incentive and any pay under the Incentive Plan, I have also received other bonus compensation outside of the Incentive Plan. For example, I received a generous ██████ bonus from PNC earlier this year as a result of the changes in federal tax laws that decreased taxes on certain corporate entities.

3

12.     I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest breaks and other activities not directly related to sales.  That is not true with respect to me and the compensation arrangements that I have agreed to with PNC.  I agreed that the above described compensation PNC provides to me pays for all my time at work, including time originating loans, taking rest breaks (which I take), attending training and sales meeting, and engaging in other activities.  For example, my salary covers all work time regardless of its nature, and many other types of compensation, including onboarding incentives, periodic bonuses and awards, and incentives calculated under the Incentive Plan, are not limited to production activities and cover all time at work regardless of its nature.  PNC policy requires me to report all time that I work, and I am clocked-in during all time periods at work, except when I clock out and back in for a meal break.  PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at times that are convenient for me in compliance with the policy.

13.     I have been paid all sums owed to me by PNC, I have never been asked to return any part of the salary or contingent payments I received, and I have never written a check or otherwise paid back any of those payments.

14.     I participate in training activities that are designed to comply with industry and company policies, procedures, rules, and regulations, to keep me current, and to help me become a better salesperson.  As mentioned above, I am paid for my participation in training.  I should note, however, that there are times when I am credited for training when I don't have to complete the full training course because I have tested-out of the full course.  To the best of my knowledge, PNC does not keep any records as to whether I have tested-out; only that I have been credited with completing the course.  The ability to test-out usually occurs because the course has been offered in the industry in prior years, I have taken the course before, and I have a pretty good memory and am able to answer the pre-test questions pretty easily.  The only way to determine whether I actually took a full training course being offered is to ask me, and I can tell you my individual circumstance, assuming I remember.

15.     I am also aware that training courses typically state an amount of time a full course is anticipated to take to complete.  For example, some courses indicate they will take 60 minutes to

4

1  complete. However, I am usually able to complete the courses in about 15 minutes. Since no

2  records are kept of the length of time it took me to take the course, the only way you could

3  determine how long it took is by asking me about my individual circumstances, and I could tell you,

4  assuming I remember.

5       16.    I also attend sales meetings. As mentioned above, I am paid for my attendance at

6  sales meetings. I don't attend all of the various sales meetings that occur (local, regional, national).

7  For those I do attend (either in person, via Skype or phone), I am sometimes only able to attend a

8  part of the meeting. Regardless, to the best of my knowledge, no attendance record is kept with

9  respect to those meetings, nor is there a record of how long I attended any meetings. The only way

10  to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I

11  can tell you my individual circumstance, assuming I remember.

12       17.    I also understand that one or more of the Plaintiffs in this case contend that they

13  cannot or did not engage in any productive work related to loan originations while in training or

14  meetings. I cannot speak for them, but that is not true for me. First, because many of the training

15  sessions focus on issues of legal compliance, the sessions are directly related to our loan origination

16  work. Second, I usually multi-task during sales meetings, including working on actual loan

17  documents or texting or emailing customers, real estate brokers and salespersons, and escrow

18  companies. I also, on occasion, step out of meetings to make or take a phone call. I have observed

19  other MLOs doing the same thing during the course of meetings.

20

21       I declare under penalty of perjury under the laws of the United States of America that the

22  foregoing is true and correct. Executed this 9 day of November, 2019 at 16:00, *Livermore,* California.

23

24                                Anthony Locy

25

26

27

28

**DECLARATION OF ANTHONY LOCY**
Case No.: 3:18-cv-04810-J CS

304006865 v2

## CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

### DECLARATION OF ANTHONY LOCY

The undersigned certifies that the document listed above was filed this November 12, 2019.  Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.


*/s/*  Saman M. Rejali

**CERTIFICATE OF SERVICE**

Case No.: 3:18-cv-04810-J CS

303762399 v7

# EXHIBIT 3

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

Attorneys for Defendant PNC Bank, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**DECLARATION OF KYLE BEAGLE IN OPPOSITION TO CLASS CERTIFICATION**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

# DECLARATION OF KYLE BEAGLE

I, Kyle Beagle, hereby declare as follows:

1.    I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC"). I have held this position for almost two and a half years, having joined PNC Bank in June, 2017. I have worked in the mortgage loan industry for approximately 29 years. My principal office is located at 19620 Stevens Creek Blvd., Cupertino, CA. This declaration is provided based on my personal knowledge.

2.    My responsibilities as an MLO require that I perform a variety of tasks, but the principal focus of my job is generating mortgage loan sales. I also participate in training, sales meetings and other activities as part of the job.

3.    For my work at PNC, I am paid a variety of types of compensation. Some aspects of my compensation are outlined in the job offer letter I received at the commencement of my work at PNC, other aspects are detailed in the PNC Mortgage Originations Incentive Plan and Addendum A (the "Incentive Plan"), and still other aspects are offered and explained to me by my manager. I am not sure exactly what compensation other MLOs receive, but I do know that the compensation they receive differs depending upon their agreements with PNC, their salary, and their ability to qualify for one or more of the various incentive payments available in the Incentive Plan.

4.    I am paid an annual salary for a 40-hour workweek. I am a non-exempt employee. I am also eligible to receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans. I have been successful in closing loans, so I have never had to rely solely on my base salary as my income. I have never been asked to write a check back or to otherwise return any of my salary to PNC.

5.    In addition to my salary, I received an onboarding incentive payment that was based upon my background, understanding that for six months prior to joining PNC, I was on a sabbatical and had no mortgage loan originations during that period. That payment, in the amount of $14,000, was a contingent payment made to me over my first two months of employment to help with my transition while I built a pipeline of work. I also understood that the contingency in the payment would be removed if I remained employed for a predetermined period of time, and that the amount was not earned until that time had passed. I received my full onboarding payment, the contingency

1

1  was removed, and I earned my onboarding incentive.  The onboarding incentive was in addition to,

2  and completely unrelated to any amount I would earn on mortgage loan sales I generated in that

3  early period of my employment.

4    6.    In addition to my salary and onboarding incentives, I was eligible to earn standard

5  incentive compensation for loan originations under the Incentive Plan.  The Incentive Plan and

6  Addendum are documents of over 10 pages in length , it is usually changed annually and, with each

7  change, we are provided the new document, asked to review it, and are required to acknowledge our

8  understanding.  The documents are also available online for review at any time.

9    7.    Although the Incentive Plan is complex, whenever I have had any questions, my

10  managers have explained the Incentive Plan to me, they are accessible to answer any questions I

11  have about it, and PNC provides me with access to other detailed documents including earnings

12  statements that outline all of the relevant components and calculations.  ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

23    8.    In addition to my salary, onboarding incentive and any pay under the Incentive Plan,

24  ████████████████  have also received bonus compensation outside of the Incentive Plan.  For

25  example, I received a ███████ bonus payment from PNC earlier this year as a result of the changes in

26  federal tax laws that decreased taxes on certain corporate entities.

27    9.    I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest

28  breaks and other activities not directly related to sales.  That is not true with respect to me and the

2

**DECLARATION OF KYLE BEAGLE**
Case No.: 3:18-cv-04810-J CS

1    compensation arrangements that I have agreed to with PNC. I agreed that the above described

2    compensation PNC provides to me pays for all my time at work, including time originating loans,

3    taking rest breaks (which I take), attending training and sales meeting, and engaging in other

4    activities. For example, my salary covers all work time regardless of its nature, and many other

5    types of compensation, including onboarding incentives, periodic bonuses and awards, and

6    incentives calculated under the Plan, are not limited to production activities and cover all time at

7    work regardless of its nature. PNC policy requires me to report all time that I work, and I am

8    clocked-in during all time periods at work, except when I clock out and back in for a meal break.

9    PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at

10    times that are convenient for me in compliance with the policy.

11        10.    I have been paid all sums owed to me by PNC, I have never been asked to return any

12    part of the salary or contingent payments I received, and I have never written a check or otherwise

13    paid back any of those payments.

14        11.    I participate in training activities on the job. I am paid for my participation in

15    training. I have tested-out of many of the full training courses in the past. To the best of my

16    knowledge, PNC does not keep any records as to whether I have tested-out; only that I have been

17    credited with completing the course. The ability to test-out usually occurs because the course has

18    been offered in the industry in prior years, and I have taken the course before. The only way to

19    determine whether I actually took a full training course being offered is to ask me, and I can tell you

20    my individual circumstance, assuming I remember.

21        12.    I am also aware that training courses typically state an amount of time a full course is

22    anticipated to take to complete. For example, some courses indicate they will take 60 minutes to

23    complete. However, I usually am able to complete the course in a quarter of that time. Since no

24    records are kept of the length of time it took me to take the course, the only way you could

25    determine how long it took is by asking me about my individual circumstances, and I could tell you,

26    assuming I remember.

27        13.    I usually attend sales meetings, although I occasionally have to step away from a

28    meeting to make or receive a sales related call. I understand that one or more of the Plaintiffs in this

**DECLARATION OF KYLE BEAGLE**
Case No.: 3:18-cv-04810-J CS

1  case contend that they cannot or did not engage in any productive work related to loan originations

2  while in training or meetings. I cannot speak for them, but that is not true for me. I usually multi-

3  task during sales meetings, including working on actual loan documents or texting or emailing

4  customers and other people in connection with mortgage loan activities. I also, on occasion, step out

5  of meetings to make or take a phone call. I have observed other MLOs doing the same thing during

6  the course of meetings.

7      I declare under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct. Executed this _8th_ day of November, 2019 at _Cupertino_, California.

9

10                           Kyle Beagle

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**DECLARATION OF KYLE BEAGLE**

Case No.: 3:18-cv-04810-J CS

304006858 v2

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is:10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF KYLE BEAGLE

The undersigned certifies that the document listed above was filed this November 12, 2019.  Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.



*/s/*  Saman M. Rejali

---

**CERTIFICATE OF SERVICE**
Case No.: 3:18-cv-04810-J CS

303762399 v7

EXHIBIT 4

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated, | Case No.: 3:18-cv-04810-J CS |
| Plaintiffs, | **DECLARATION OF JEFF RHODES IN OPPOSITION TO CLASS CERTIFICATION** |
| vs. | |
| PNC BANK, N.A., and DOES 1-100 inclusive, | [Hon. Mag. Judge Joseph C. Spero] |
| Defendants. | |

# DECLARATION OF JEFF RHODES

I, Jeff Rhodes, hereby declare as follows:

1. I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC"). I have held this position for going on seven years, having joined PNC Bank in February, 2013. I have worked in the mortgage loan industry for approximately 17 to 18 years. My principal office is located at 634 N. Santa Cruz Ave., Los Gatos, CA. This declaration is provided based on my personal knowledge.

2. My responsibilities as an MLO require that I perform a variety of tasks, but the principal focus of my work is generating mortgage loan sales. I also participate in training, sales meetings and other activities as part of my job.

3. For my work at PNC, I am paid a variety of types of compensation. Some aspects of my compensation are outlined in the job offer letter I received at the commencement of my work at PNC, other aspects are detailed in the PNC Mortgage Originations Incentive Plan and Addendum A (the "Incentive Plan"), and still other aspects are offered and explained to me by my manager.

4. Specifically, as stated in my offer letter, I am paid an annual salary for a 40-hour workweek. I am a non-exempt employee. Because the salary only pays for the first 40 hours each week, I am also eligible to receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans. I have been successful in closing loans, so I have never had to rely solely on my base salary as my income. I have never been asked to write a check back or to otherwise return any of my salary to PNC.

5. My offer letter also explained that, in addition to my salary and overtime, I was entitled to receive an onboarding incentive payment that I negotiated with PNC. That payment, in the amount of &#9608;&#9608;&#9608; was a contingent payment made to me over my first two months of employment to help with my transition while I built a pipeline of work. I also understood that the contingency in the payment would be removed if I remained employed for 12 months at PNC, and that the amount was not earned until that time had passed. I received my full onboarding payment, the contingency was removed, and I earned my onboarding incentive. The onboarding incentive was

304006863 v2

in addition to, and completely unrelated to any amount I would earn on mortgage loan sales I generated.

6.     In addition to my salary and onboarding incentives, I was eligible to earn standard incentive compensation for loan originations under the Incentive Plan. The Incentive Plan and Addendum documents have changed over time and, with each change, we are provided the new document, asked to review it, and are required to acknowledge our understanding. The documents are also available online for review at any time.

7.     I understand that Plaintiff Tanzeer Kazi testified that a one-page summary document labeled PNC 001001 was the Incentive Plan under which he was paid. I have reviewed that document and can confirm that, although it summarizes some Incentive Plan information, it is not the full Incentive Plan under which I was paid. The Incentive Plan documents were far more detailed. No MLO could credibly contend that the one-page summary constitutes the entire Incentive Plan.

8.     Although the Incentive Plan is complex and can be difficult to understand for people who are not in the industry, and it periodically changes, I have worked in the industry for a long time and have no trouble understanding the arrangements. Moreover, when I have had any questions, my managers have explained the Incentive Plan to me, they are accessible to answer any questions I have about it, and PNC provides me with access to other detailed documents including earnings statements that outline all of the relevant components and calculations.

28

**DECLARATION OF JEFF RHODES**

Case No.: 3:18-cv-04810-J CS

304006863 v2

9. In addition to my salary onboarding incentive and any pay under the Incentive Plan, I have also received bonus compensation outside of the Incentive Plan. For example, I received a ▇ bonus from PNC earlier this year as a result of the changes in federal tax laws that decreased taxes on certain corporate entities like PNC.

10. I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest breaks and other activities not directly related to sales. That is not true with respect to me and the compensation arrangements that I have agreed to with PNC. I agreed that the above described compensation PNC provides to me pays for all my time at work, including time originating loans, taking rest breaks (which I take), attending training and sales meeting, and engaging in other activities. For example, my salary covers all work time regardless of its nature, and many other types of compensation, including onboarding incentives, periodic bonuses and awards, and incentives calculated under the Plan, are not limited to production activities and cover all time at work regardless of its nature. PNC policy requires me to report all time that I work, and I am clocked-in during all time periods at work, except when I clock out and back in for a meal break. PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at times that are convenient for me in compliance with the policy.

11. I have been paid all sums owed to me by PNC, I have never been asked to return any part of the salary or contingent payments I received, and I have never written a check or otherwise paid back any of those payments.

12. I participate in training activities on the job. I have tested-out of many of the full training courses in the past. To the best of my knowledge, PNC does not keep any records as to whether I have tested-out; only that I have been credited with completing the course. The ability to test-out usually occurs because the course has been offered in the industry in prior years, and I have taken the course before. The only way to determine whether I actually took a full training course being offered is to ask me, and I can tell you my individual circumstance, assuming I remember.

---

3

**DECLARATION OF JEFF RHODES**
Case No.: 3:18-cv-04810-J CS

304006863 v2

13.     While I know other MLOs are paid under the Incentive Plan, I am not sure exactly what compensation other MLOs receive.  However, I do know the reason why MLOs receive compensation that varies greatly for each MLO.  It varies because there are a wide range of potential payments an MLO might receive, from salary, to onboarding incentives of differing amounts, to referral fees of differing amounts, to flat fee payments received for helping recruit new MLOs to work at PNC.  Some of the incentive payments relate directly to mortgage loan originations, some relate indirectly to loan originations, and others have no relationship whatsoever to loan originations.  All of these different types of payments, to the extent they are earned, compensate me and other MLOs for all of our work on the job.

14.     I participate in training, for which I am paid.  I am aware that training courses typically state an amount of time a full course is anticipated to take to complete.  For example, some courses indicate they will take 60 minutes to complete.  However, I am almost always able to complete the course in half that time or less.  Since no records are kept of the length of time it took me to take the course, the only way you could determine how long it took is by asking me about my individual circumstances, and I could tell you, assuming I remember.

15.     I usually attend sales meetings but I have missed some because of mortgage loan demands.  As mentioned above, I am paid for my attendance at sales meetings.  For those I do attend (either in person, via Skype or phone), I am sometimes only able to attend a part of the meeting because I arrive late, I step out during the meeting, or I have to leave early.  For example, I specifically recall stepping out of a sales meeting to meet with one of PNC's underwriter supervisors who was in town from Florida.  To the best of my knowledge, no attendance record is kept with respect to those meetings, nor is there a record of how long I attended any meetings.  The only way to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I can tell you my individual circumstance, assuming I remember.

16.     I also understand that one or more of the Plaintiffs in this case contend that they cannot or did not engage in any productive work related to loan originations while in training or meetings.  I cannot speak for them, but that is not true for me.  First, because many of the training sessions focus on issues of legal compliance, the sessions are directly related to our loan origination

4

**DECLARATION OF JEFF RHODES**
Case No.: 3:18-cv-04810-J CS

1    work.  Second, I usually multi-task during sales meetings, including working on actual loan

2    documents or texting or emailing customers, real estate brokers and salespersons.  I also, on

3    occasion, step out of meetings to make or take a mortgage related phone call.  I have observed other

4    MLOs doing the same thing during the course of meetings.

5        I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct.  Executed this _12_ day of November, 2019 at ___Los Gatos___, California.

7

8                       Jeff Rhodes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF JEFF RHODES**

304006863 v2                Case No.: 3:18-cv-04810-J CS

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF JEFF RHODES

The undersigned certifies that the document listed above was filed this November 12, 2019.  Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.


*/s/*  Saman M. Rejali

**CERTIFICATE OF SERVICE**

303762399 v7

Case No.: 3:18-cv-04810-J CS

EXHIBIT 5

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

1 Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
2 Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
3 K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
4 Los Angeles, CA 90067
Telephone: +1 310 552 5000
5 Facsimile: +1 310 552 5001

6 Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
7 K&L GATES LLP
925 Fourth Avenue, Suite 2900
8 Seattle, WA 98104-1158
United States of America
9 P: +1.206.623.7580
F: +1.206.623.7022

10

11

12 UNITED STATES DISTRICT COURT

13 NORTHERN DISTRICT OF CALIFORNIA

14 SAN FRANCISCO DIVISION

15 | TANSEER KAZI and LINDA SCHEID,
individually and on behalf of all those similarly
16 | situated, | Case No.: 3:18-cv-04810-J CS

17 | Plaintiffs, | **DECLARATION OF DAVID DEGLOW IN OPPOSITION TO CLASS CERTIFICATION**

18 | vs. |

19 | PNC BANK, N.A., and DOES 1-100 inclusive, | [Hon. Mag. Judge Joseph C. Spero]

20 | Defendants. |

21

22

23

24

25

26

27

28

### DECLARATION OF DAVID DEGLOW

I, David Deglow, hereby declare as follows:

1.    I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC"). I began work with National City Bank ("NCB") in 2003 as a Loan Officer. In 2009, NCB was acquired by PNC, and I have remained employed with PNC since that time. My principal office is located at 591 Camino de la Reina, San Diego, California. This declaration is provided based on my personal knowledge.

2.    My responsibilities as an MLO require that I perform a variety of tasks, but the principal focus of my work is generating mortgage loan sales. I also participate in training, sales meetings and other activities as part of my job.

3.    To the best of my knowledge, I am paid in the same way as all other MLOs. That means I am paid a variety of types of compensation for my work at PNC. I am paid an annual salary for a 40-hour workweek. I am a non-exempt employee. Because the salary only pays for the first 40 hours each week, I also receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans. I have been successful in closing loans, so I have never had to rely solely on my base salary as my income. I have never been asked to write a check back or to otherwise return any of my salary to PNC.

4.    In addition to my salary and overtime, I am eligible to earn standard incentive compensation for loan originations under the PNC Mortgage Originations Incentive Plan and an Addendum A to the Incentive Plan (the "Incentive Plan") for MLOs in California. The Incentive Plan documents are detailed, they have changed over time and, with each change, we are provided the new document, asked to review it, and are required to acknowledge our understanding. The documents are also available online for review at any time.

5.    Although the Incentive Plan is complex and can be difficult to understand for people who are not in the industry, and it periodically changes, I have worked in the industry for a long time and have no trouble understanding the arrangements. Also, when changes are made to the Plan,

1

1  there is always a conference call held to explain the changes.  Moreover, when I have had any

2  questions, my managers have explained the Incentive Plan to me, they are accessible to answer any

3  questions I have about it, and PNC provides me with access to other detailed documents including

4  earnings statements that outline all of the relevant components and calculations.  ███████

5  ████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ████████████████████████████████

16        6.      In addition to my salary onboarding incentive and any pay under the Incentive Plan, I

17  have also received bonus compensation outside of the Incentive Plan.  For example, I received a

18  generous ██████ bonus from PNC earlier this year as a result of the changes in federal tax laws that

19  decreased taxes on certain corporate entities.

20        7.      I understand that some MLOs receive an onboarding incentive payment when they

21  join PNC.  I was not paid an onboarding incentive.

22        8.      I am not sure exactly what compensation other MLOs receive, but I do know that

23  MLOs receive compensation that can vary greatly for each MLO.  It varies because there are a wide

24  range of potential payments an MLO might receive, from salary, to onboarding incentives (signing

25  bonuses) of differing amounts, to referral fees of differing amounts, to flat fee payments received for

26  helping recruit new MLOs to work at PNC.  Some of the incentive payments relate directly to

27  mortgage loan originations, some relate indirectly to loan originations, and others have no

28

2

**DECLARATION OF DAVID DEGLOW**

Case No.: 3:18-cv-04810-J CS

relationship whatsoever to loan originations. All of these different types of payments, to the extent they are earned, compensate me and other MLOs for all of our work on the job.

9.      I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest breaks and other activities not directly related to sales. That is not true with respect to me and the compensation arrangements that I have agreed to with PNC. I agreed that the above described compensation PNC provides to me pays for all my time at work, including time originating loans, taking rest breaks (which I take), attending training and sales meeting, and engaging in other activities. For example, my salary covers all work time regardless of its nature, and many other types of compensation, including onboarding incentives, periodic bonuses and awards, and incentives calculated under the Plan, are not limited to production activities and cover all time at work regardless of its nature. PNC policy requires me to report all time that I work, and I am clocked-in during all time periods at work, except when I clock out and back in for a meal break. PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at times that are convenient for me in compliance with the policy.

10.      I have been paid all sums owed to me by PNC, I have never been asked to return any part of the salary or contingent payments I received, and I have never written a check or otherwise paid back any of those payments.

11.      I participate in training activities. As mentioned above, I am paid for my participation in training. There are times when I am credited for training when I don't have to complete the full training course because I have tested-out of the full course. To the best of my knowledge, PNC does not keep any records as to whether I have tested-out; only that I have been credited with completing the course. The ability to test-out usually occurs because the course has been offered in the industry in prior years, and I have taken the course before. The only way to determine whether I actually took a full training course being offered is to ask me, and I can tell you my individual circumstance, assuming I remember.

12.      I am also aware that training courses typically state an amount of time a full course is anticipated to take to complete. For example, some courses indicate they will take 90 minutes to complete. However, I am almost always able to complete the course in substantially less than the

3

**DECLARATION OF DAVID DEGLOW**

time allocated. Since no records are kept of the length of time it took me to take the course, the only way you could determine how long it took is by asking me about my individual circumstances, and I could tell you, assuming I remember.

13.     I also attend sales meetings when they are held, and when I am able (it is rare that local sales meetings are held in my office). As mentioned above, I am paid for my attendance at sales meetings. For those regional or national meetings I do attend (via Skype or phone), I am sometimes only able to attend a part of the meeting. Regardless, to the best of my knowledge, no attendance record is kept with respect to those meetings, nor is there a record of how long I attended any meetings. The only way to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I can tell you my individual circumstance, assuming I remember.

14.     I also understand that one or more of the Plaintiffs in this case contend that they cannot or did not engage in any productive work related to loan originations while in training or meetings. I cannot speak for them, but that is not true for me. First, because many of the training sessions focus on issues of legal compliance, the sessions are directly related to our loan origination work. Second, I usually multi-task during sales meetings, including texting or emailing customers, real estate brokers and others related to mortgage loan sales.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this _12_ day of November, 2019 at _Lc To/la_ , California.

_David Deglow_

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF DAVID DEGLOW

The undersigned certifies that the document listed above was filed this November 12, 2019.  Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.

*/s/*  Saman M. Rejali

**CERTIFICATE OF SERVICE**
Case No.: 3:18-cv-04810-J CS

303762399 v7

EXHIBIT 6

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated, | Case No.: 3:18-cv-04810-J CS |
| Plaintiffs, | **DECLARATION OF FRANCO LANTERI IN OPPOSITION TO CLASS CERTIFICATION** |
| vs. | |
| PNC BANK, N.A., and DOES 1-100 inclusive, | [Hon. Mag. Judge Joseph C. Spero] |
| Defendants. | |

**DECLARATION OF FRANCO LANTERI**
Case No.: 3:18-cv-04810-J CS

## DECLARATION OF FRANCO LANTERI

I, Franco Lanteri, hereby declare as follows:

1.      I am a Supervising Mortgage Loan Officer ("SLO") with PNC Bank, NA. ("PNC").  I have held this position for approximately a year and a half, having started in the position in April, 2018.  Prior to that, I was a Mortgage Loan Officer ("MLO") at PNC, having joined in April, 2014. My principal office is located at 49 Discovery, Irvine, CA.   This declaration is provided based on my personal knowledge.

2.      My responsibilities as an SLO are primarily twofold:  First, I have the same responsibilities as MLOs, that is, primarily focusing on generating mortgage loan sales.  Second, I help a team of MLOs to better develop their marketing efforts in order to be able to build more mortgage loan business for themselves and for PNC.  I also participate in training, sales meetings, and other activities.

3.      For my work at PNC, I am paid a variety of types of compensation. Like MLOs,  I am paid an annual salary for a 40-hour workweek.  I am a non-exempt employee. Because the salary only pays for the first 40 hours each week, I am also eligible to receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans.  I have been successful in closing loans, so I have never had to rely solely on my base salary as my income.  I have never been asked to write a check back or to otherwise return any of my salary to PNC.

4.      When I was originally hired as an MLO at PNC in 2014, I did negotiate and received an onboarding incentive payment, the precise amount of which I do not recall.    I understood that the onboarding incentive was intended to provide me with sufficient compensation as I built a flow of work, that is  was a contingency payment, that the contingency would be removed if I remained employed for a predetermined period of time, and that the amount was not earned until that time had passed.  I received my full onboarding payment, the contingency was removed, and I earned my onboarding incentive.  The onboarding incentive was in addition to, and completely unrelated to any amount I would earn on mortgage loan sales I generated.

**DECLARATION OF FRANCO LANTERI**
Case No.: 3:18-cv-04810-J CS

5.      I am also eligible as an SLO to earn standard incentive compensation for loan originations under the PNC Mortgage Originations Incentive Plan and an Addendum A to the Incentive Plan (the "Incentive Plan") for MLOs in California.  The Incentive Plan documents have changed over time and, with each change, we are provided the new document, asked to review it, and are required to acknowledge our understanding.  The documents are also available online for review at any time.

6.      Although the Incentive Plan is complex and can be difficult to understand for people who are not in the industry, and it periodically changes, I have worked in the industry for a long time and have no trouble understanding the arrangements.  Moreover, when I have had any questions, my managers have explained the Incentive Plan to me, they are accessible to answer any questions I have about it, and PNC provides me with access to other detailed documents including earnings statements that outline all of the relevant components and calculations.

2

304006873 v2

7.      I have also received bonus compensation outside of the Incentive Plan.  For example, I received a generous ▮▮▮▮▮ bonus from PNC earlier this year as a result of the changes in federal tax laws that decreased taxes on certain corporate entities like PNC.

8.      As an SLO, I also receive override payments based upon the mortgage loan productions of the team I lead.  Those payments are made to me by PNC in exchange for the supervisory and assistance role I perform in helping the team to grow mortgage loan originations.  The override payments for each SLO at PNC varies, depending upon the production levels of their team.

9.      I am not sure exactly what compensation other MLOs receive.  However, I do know that compensation varies greatly among MLOs, and the reason for this variance.   It varies because there are a wide range of potential payments an MLO might receive, from salary, to onboarding incentives (signing bonuses) of differing amounts, to referral fees of differing amounts, to flat fee payments received for helping recruit new MLOs to work at PNC.  Some of the incentive payments relate directly to mortgage loan originations, some relate indirectly to loan originations, and others have no relationship whatsoever to loan originations.  All of these different types of payments compensate me and other MLOs for all of our work on the job.

10.      I understand that, in this lawsuit, Plaintiffs contend that MLOs and SLOs are not paid for rest breaks and other activities not directly related to sales.  That is not true with respect to me and the compensation arrangements that I have agreed to with PNC.  I agreed that the above described compensation PNC provides to me pays for all my time at work, including time originating loans, taking rest breaks (which I take), attending training and sales meeting, and engaging in other activities.  For example, my salary covers all work time regardless of its nature, and many other types of compensation, including onboarding incentives, periodic bonuses and awards, and incentives calculated under the Plan, are not limited to production activities and cover all time at work regardless of its nature.  PNC policy requires me to report all time that I work, and I am clocked-in during all time periods at work, except when I clock out and back in for a meal break.  PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at times that are convenient for me in compliance with the policy.

3

**DECLARATION OF FRANCO LANTERI**

Case No.: 3:18-cv-04810-J CS

11.     I have been paid all sums owed to me by PNC, I have never been asked to return any part of the salary or contingent payments I received, and I have never written a check or otherwise paid back any of those payments.

12.     I also understand that some MLOs have not earned any incentive payments for substantial periods of time, but continue to receive their base salary -- which is intended to pay them for all of their work on the job, even when they are not successful salespersons.  I know this happens.  Let me say, however, that my observation over the last four years has been that it is extremely difficult for an MLO not to be able to earn sufficient incentives to receive more than a base salary. Given the low interest rates that have prevailed in the marketplace during this period, my office has been overwhelmed with qualified borrowers requesting purchase and refinance mortgage loans.  Mortgage loan opportunities are falling into our laps.  Consequently, if an MLO has not earned more than a base salary during this period, then those MLOs simply are not working hard enough.

13.     I participate in training activities that are designed help me become a better salesperson.  Indeed, such training is taken by all MLOs and is intended to help them become the the kind of salesperson who consistently earns incentive payments materially above their base pay salary.  As mentioned above, I am paid for my participation in training.  There are times when I am credited for training when I do not have to complete the full training course because I have tested-out of the full course.  To the best of my knowledge, PNC does not keep any records as to whether I have tested-out; only that I have been credited with completing the course.  The ability to test-out usually occurs because the course has been offered in prior years, and I have taken the course before. The only way to determine whether I actually took a full training course being offered is to ask me, and I can tell you my individual circumstance, assuming I remember.

14.     I am also aware that training courses typically state an amount of time a full course is anticipated to take to complete.  For example, some courses indicate they will take 60 minutes to complete.  However, I almost always complete those courses in about one-third of the designated time.  To the best of my knowledge, since no records are kept of the length of time it took me to take

4

**DECLARATION OF FRANCO LANTERI**

Case No.: 3:18-cv-04810-J CS

the course, the only way you could determine how long it took is by asking me about my individual circumstances, and I could tell you, assuming I remember.

15. I attend most sales meetings. As mentioned above, I am paid for my attendance at sales meetings. I occasionally miss a meeting when I have pressing mortgage loan matters. For those meetings I do attend (either in person, via Skype or phone), I am sometimes only able to attend a part of the meeting because I arrive late, step out during the meeting, or have to leave early. Regardless, to the best of my knowledge, no attendance record is kept with respect to those meetings, nor is there a record of how long I attended any meetings. The only way to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I can tell you my individual circumstance, assuming I remember.

16. I also understand that one or more of the Plaintiffs in this case contend that they cannot or did not engage in any productive work related to loan originations while in training or meetings. I cannot speak for them, but that is not true for me. First, the training sessions are often directly related to our loan origination work. Second, I usually multi-task during sales meetings, including working on actual loan documents or texting or emailing customers and other persons regarding mortgage loan business. I have observed other MLOs doing the same thing during the course of meetings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __12th__ day of November, 2019 at __Irvine__, California.

_____
Franco Lanteri

---

5

**DECLARATION OF FRANCO LANTERI**

304006873 v2

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF FRANCO LANTERI

The undersigned certifies that the document listed above was filed this November 12, 2019. Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.

*/s/* Saman M. Rejali

**CERTIFICATE OF SERVICE**

Case No.: 3:18-cv-04810-J CS

303762399 v7

EXHIBIT 7

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>     Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>     Defendants. | Case No.: 3:18-cv-04810-J CS<br><br>**DECLARATION OF BELA SINGH IN OPPOSITION TO CLASS CERTIFICATION**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

# DECLARATION OF BELA SINGH

I, Bela Singh, hereby declare as follows:

1. I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC"). I have held this position for a little over five years, having joined PNC Bank in August 2014. I have worked in the mortgage loan industry for approximately 15years. My principal office is located at 5700 Stoneridge Mall Rd., Pleasanton, California. This declaration is provided based on my personal knowledge.

2. My principal responsibility as an MLO is to generate mortgage loan sales. I also participate in training, sales meetings and other activities as part of my job.

3. I am paid an annual salary for a 40-hour workweek. I am a non-exempt employee. Because the salary only pays for the first 40 hours each week, I am also eligible to receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans I have been successful in closing loans, so I have never had to rely solely on my base salary as my income. I have never been asked to write a check back or to otherwise return any of my salary to PNC.

4. In addition to my salary, when I started work at PNC, I received an onboarding incentive payment that was individually established for me by PNC based upon my experience and production in my prior mortgage loan sales job. That payment was in the amount of ███████ and was paid to me over my first three months of employment. I understood that this incentive was intended to provide me with sufficient compensation as I built a flow of work. I also understood that it was a contingent payment, and the contingency would be removed if I remained employed for 12 months, and that the amount was not earned until that time had passed. I received my full onboarding payment, the contingency has was removed, and I earned my onboarding incentive. The onboarding incentive was in addition to, and completely unrelated to any amount I would earn on mortgage loan sales I generated.

5. In addition to the onboarding incentive payment described above, as another onboarding incentive, ███████████████████████████████████████████ ██████████████████████████████████████████████████████

1

DECLARATION OF BELA SINGH

Case No.: 3:18-cv-04810-J CS

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I was successful in my sales of loans at PNC, and

3   earned ▮▮▮▮▮▮▮▮▮ afforded by this special incentive.

4        6.    In addition to my salary and onboarding incentives, I was eligible to earn standard

5   incentive compensation for loan originations under the PNC Mortgage Originations Incentive Plan

6   and an Addendum A to the Incentive Plan ("the Incentive Plan") for MLOs in California. The

7   Incentive Plan and Addendum documents are approximately 16-20 pages in length, and have

8   changed in various ways annually and, with each change, we are provided the new document, asked

9   to review it, and are required to acknowledge our understanding. Although the Incentive Plan is

10  complex and can be difficult to understand for people who are not in the industry, and it periodically

11  changes, I have worked in the industry for a long time and have no trouble understanding the

12  arrangements. Moreover, when I have had any questions, my managers have explained the Incentive

13  Plan to me, they are accessible to answer any questions I have about it, and PNC provides me with

14  access to other detailed documents including earnings statements that outline all of the relevant

15  components and calculations.

16        7.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮

26        8.    In addition to my salary, onboarding incentives and any pay under the Incentive Plan,

27  I have also received bonus compensation outside of the Incentive Plan. For example, I received a

28

1    ████ bonus from PNC earlier this year as a result of the changes in federal tax laws that decreased

2    taxes on certain corporate entities like PNC.

3           9.    I am not sure exactly what compensation other MLOs receive, but I do know that

4    MLOs receive compensation that can vary greatly for each MLO.  It varies because there are a wide

5    range of potential payments an MLO might receive, from salary, to onboarding incentives (signing

6    bonuses) of differing amounts, to referral fees of differing amounts, to flat fee payments received for

7    helping recruit new MLOs to work at PNC.  Some of the incentive payments relate directly to

8    mortgage loan originations, some relate indirectly to loan originations, and others have no

9    relationship whatsoever to loan originations.  All of these different types of payments compensate

10   me and other MLOs for all of our work on the job.

11          10.   I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest

12   breaks and other activities not directly related to sales.  That is not true with respect to me and the

13   compensation arrangements that I have agreed to with PNC.  I agreed that the above described

14   compensation PNC provides to me pays for all my time at work, including time originating loans,

15   taking rest breaks (which I take), attending training and sales meeting, and engaging in other non-

16   sales activities.  For example, my salary covers all work time regardless of its nature, and many other

17   types of compensation, including onboarding incentives, periodic bonuses and awards, and

18   incentives calculated under the Plan, are not limited to production activities and cover all time at

19   work regardless of its nature.  PNC policy requires me to report all time that I work, and I am

20   clocked-in during all time periods at work, except when I clock out and back in for a meal break.

21   PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at

22   times that are convenient for me in compliance with the policy.

23          11.   I have been paid all sums owed to me by PNC, I have never been asked to return any

24   part of the salary or contingent payments I received, and I have never written a check or otherwise

25   paid back any of those payments.

26          12.   I participate in training activities.  As mentioned above, I am paid for my

27   participation in training.  I tested-out of certain training many times, and didn't have to complete the

28   full training course.  However, I am still entitled to receive credit for having completed the course.

---

3

**DECLARATION OF BELA SINGH**

To the best of my knowledge, PNC does not keep any records with respect to whether I have tested-out; only that I have been credited with completing the course. The ability to test-out usually occurs because I have taken the course in prior years. The only way to determine whether I actually took a full training course being offered is to ask me, and I can tell you my individual circumstance, assuming I remember.

13.     I am also aware that training courses typically state an amount of time a full course is anticipated to take to complete. For example, some courses indicate they will take 30 minutes to complete. However, I am usually able to complete the course in substantially less time than stated, but occasionally it takes me more time. Since no records are kept of the length of time it took me to take the course, the only way you could determine how long it took is by asking me about my individual circumstances, and I could tell you, assuming I remember.

14.     I also attend sales meetings when I am able to. The frequency of sales meetings and their length vary by managers and offices. As mentioned above, I am paid for my attendance at sales meetings. For those meetings I do attend (either in person, via Skype or phone), I am sometimes only able to attend a part of the meeting. Regardless, to the best of my knowledge, no attendance record is kept with respect to those meetings, nor is there a record of how long I attended any meetings. The only way to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I can tell you my individual circumstance, assuming I remember.

15.     I also understand that one or more of the Plaintiffs in this case contend that they cannot or did not engage in any productive work related to loan originations while in training or meetings. I cannot speak for them, but that is not true for me. I usually am able to accomplish several tasks during the course of sales meetings, including working on actual loan documents, texting, emailing or phoning customers, and others things related to generating loan sales. I have observed other MLOs doing the same thing during the course of meetings.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 11 day of November, 2019 at Pleasant, California.

Bela Singh

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

### DECLARATION OF BELA SINGH

The undersigned certifies that the document listed above was filed this November 12, 2019. Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.

*/s/* Saman M. Rejali

**CERTIFICATE OF SERVICE**

Case No.: 3:18-cv-04810-J CS

303762399 v7

EXHIBIT 8

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

1   Paul W. Sweeney, Jr. (SBN 112511)
    paul.sweeney@klgates.com
2   Saman M. Rejali (SBN 274517)
    saman.rejali@klgates.com
3   K&L GATES LLP
    10100 Santa Monica Boulevard Eighth Floor
4   Los Angeles, CA 90067
    Telephone: +1 310 552 5000
5   Facsimile: +1 310 552 5001

6   Patrick M. Madden (*admitted pro hac vice*)
    patrick.madden@klgates.com
7   K&L GATES LLP
    925 Fourth Avenue, Suite 2900
8   Seattle, WA 98104-1158
    United States of America
9   P: +1.206.623.7580
    F: +1.206.623.7022

10

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15  TANSEER KAZI and LINDA SCHEID,
    individually and on behalf of all those similarly
16  situated,                                        Case No.: 3:18-cv-04810-JCS

17                      Plaintiffs,                   **DECLARATION OF JASEN MACKENZIE
                                                     IN OPPOSITION TO CLASS
18  vs.                                              CERTIFICATION**

19  PNC BANK, N.A., and DOES 1-100 inclusive,        [Hon. Mag. Judge Joseph C. Spero]

20                      Defendants.

21

22

23

24

25

26

27

28
                                          1
                       **DECLARATION OF JASEN MACKENZIE**
303762399 v7                Case No.: 3:18-cv-04810-JCS

### DECLARATION OF JASEN MACKENZIE

I, Jasen Mackenzie, hereby declare as follows:

1.     I am the Senior Vice President, Western Territory Executive, PNC Mortgage, a Division of PNC Bank, NA.  I have held this position for over six years, having joined PNC Mortgage in June 2013.  My principal office is located at 634 N. Santa Cruz, Suite 203, Los Gatos, California 95030.  This declaration is provided based on my personal knowledge or knowledge I have gained through my management role and my custody and control of PNC Mortgage records.

2.     PNC Mortgage is in the business of providing mortgage loans to its customers.  Loans are generated by, among others, individuals who are called Mortgage Loan Officers ("MLO").

3.     My job responsibilities include, among other things, overseeing all of the activities of MLOs employed in California.  From June 2014 to June 2019, PNC Mortgage has employed a total of approximately 208 MLOs in California, which has included approximately 75 MLOs at any given point during this time period.  Only 120 of those 208 have worked for PNC Mortgage since January 1, 2017.  More specifically, I supervise all of the individuals who directly manage MLOs in PNC Mortgage's markets and offices in California.  These managers typically have the title of Market Managers.  There are 16 offices in California, which includes markets/main offices, satellites, and executive suites, and those offices range in size from one MLO in a smaller office, to a dozen or more MLOs in a larger office.  Each market has an assigned Market Manager, and each Market Manager has significant flexibility with respect to how they manage MLOs in their markets.  In addition to directly managing those Market Managers, during this period, I have also directly managed MLOs when, for example, an office or Market Manager is in transition.  I make it my practice to regularly monitor the activities of both Market Managers and MLOs.

4.     MLOs in California are classified as non-exempt employees, and are paid an annual salary on a bi-weekly basis for all the time they work.  The salary thus covers any and all activities, functions, and responsibilities while on the job, including direct sales activities, rest periods, and time not spent on direct sales activities.  As required by California law, MLO salaries are only applied to the first 40 hours per week.  If they work overtime hours, MLOs also receive additional overtime pay at the required time-and-a-half or double-time rate for all overtime hours worked.  The

2

### DECLARATION OF JASEN MACKENZIE
Case No.: 3:18-cv-04810-J CS

303762399 v7

1  annual salary for most California MLOs is ▮▮▮▮ but the amount can vary by individual.

2  Regardless, the annual salary is always well in excess of state minimum wage requirements.

3       5.      In addition to their annual salary, MLOs may be eligible to earn three different types

4  of incentive pay: initial onboarding incentives (which were previously called forgivable draws),

5  ongoing incentive payments under the PNC Mortgage Originations Incentive Plan ("Plan"), and

6  various non-Plan bonuses and overrides that our management team awards from time to time.

7       6.      Onboarding incentives are contingent payments that are made to some, but not all,

8  incoming MLOs. The amount of these incentives are negotiable and can vary greatly among MLOs,

9  depending upon an MLOs prior experience in the industry, their existing client relationships, and

10  their prospects for being successful at PNC. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Among other things, these incentives are

12  intended to minimize cash flow issues for new employees who are building or attempting to

13  maintain and grow a flow of work at PNC, and to encourage and reward their retention over a period

14  of time. The amount of and terms under which these incentives are paid are discussed in each

15  MLO's offer letter or other communications addressing the incentive. Onboarding incentives are

16  typically paid out to MLOs in a few bi-weekly pay cycles near the start of their work at PNC, but

17  they can be arranged and paid out in other circumstances. Since the amounts provided are

18  contingent, if MLOs leave PNC for any reason during their probation period or within a year after

19  that period (typically from 12 to 15 months), they are contractually obligated to repay the full

20  amount (absent some other negotiated arrangement). If MLOs remain employed for the full 12-15

21  months, the contingency is removed and the payments are deemed earned. Onboarding incentives

22  are not tied to the MLO's generation of mortgage loans or any particular work behavior and, instead,

23  are intended to compensate MLOs for all hours spent on the job during the relevant 12-15 month

24  period.

25       7.      The eligibility requirements for earning ongoing incentive, the second type of

26  incentive pay, are set forth in the PNC Mortgage Originations Incentive Plan, and ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**DECLARATION OF JASEN MACKENZIE**
Case No.: 3:18-cv-04810-J CS

1 modified and updated at least once per year. The Plan and Addendum A identify the types of

2 incentives that can be earned, establish eligibility criteria, and provide a detailed explanation for how

3 these incentives are calculated. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Some MLOs earn these

8 unrelated incentives, and others do not. The calculations of these incentives are complex, they differ

9 for each MLO, they involve many different components, and are handled by PNC's Incentive

10 Compensation Department. ████████████████████████████

████████████████████████████████████████

12 If MLOs do not generate a sufficient value of loans or satisfy other criteria specified in Addendum

13 A, they nevertheless always receive their bi-weekly salary but no monthly incentive pay. If MLOs

14 generate sufficient loans or satisfy other criteria and are otherwise eligible, they can earn ongoing

15 incentive pay in addition to their salary. Obviously, MLOs fit into different categories.

16      8.     I am aware that Plaintiffs have made the claim in this case that their salaries did not

17 pay them for rest periods and unproductive time (which they characterize as time when they were

18 not engaged in direct sales activities that resulted in the successful closing of loans) because the

19 Incentive Compensation Plan and Addendum A set a threshold for earning ongoing incentive

20 payments that was above the salary previously paid. However, this is not true. All time, other than

21 rest periods, is productive time, but even if non-selling time were deemed to be non-productive,

22 MLOs were paid for that time. I believe that Plaintiffs know this because I explained to them and

23 other MLOs during the course of their employment that their salary paid them for all of the hours

24 spent working, and ongoing incentives were earned separately. Additionally, the actual way PNC

25 paid MLOs reflected this plan. For example, many MLOs either never earned any incentive pay, or

26 failed to earn incentive pay in many months. Nevertheless, they were paid their salary every bi-

27 weekly pay period. Thus, by definition, even given their claim, they were paid for rest periods and

28 non-productive time because none of their time was productive. The fact that they may have carried

4

**DECLARATION OF JASEN MACKENZIE**
Case No.: 3:18-cv-04810-JCS

a "deficit" because they didn't earn incentives was irrelevant to their receipt of their bi-weekly salary. The bi-weekly salary was always paid. Each MLO's circumstance was different, and would have to be reviewed on a monthly basis to determine what work they performed, whether it generated incentives, whether the incentives covered any part of their salary, and what other factors impacted the payments they received or did not receive in addition to their salary. Many MLOs left employment with PNC carrying large "deficits" because they had been continuously paid their bi-weekly salaries, but never earned incentives. Those MLOs were never asked to repay their salary, and it was never repaid. This is indisputable evidence that those MLOs were paid for all of their hours worked because they were not able to generate incentive compensation through the sale of mortgage loans.

9. In addition to onboarding and ongoing Plan incentives, I often arrange for other bonuses and overrides for MLOs in California. These can be focused on specific months, specific circumstances, or specific MLOs. Regardless, they are separate from the ongoing Plan incentives. For example, from ███████████████████████████ ███████ Although the circumstances of these payments are unique, they are typically paid for all time worked during the relevant period they cover and are not limited to direct sales activities.

10. In addition to their direct sales activities, MLOs occasionally participate in training and attended sales meetings. Not all MLOs participate in training to the same extent. New MLOs typically have more training requirements; however, some MLOs are able to test-out of training, and others may be exempted from training because of their prior industry experience. Although PNC Mortgage keeps track of trainings assigned to and completed by MLOs, those records do not specify whether MLOs attended the training sessions, tested-out of the sessions, or were exempted from particular training courses. Similarly, attendance at sales meetings varies by MLO. Some branch offices do not hold sales meetings and, if an office holds sales meetings, not all MLOs attend those meetings or the entirety of a particular meeting. Because of the variable time periods, experience levels, and locations, one MLO's experience at PNC does not necessarily reflect another's. PNC Mortgage does not keep records of sales meetings, their length, who attended the meetings, or for how long an MLO attended a meeting.

5

**DECLARATION OF JASEN MACKENZIE**
Case No.: 3:18-cv-04810-J CS

11.     More specifically with respect to training, I review and set the training curriculum for MLOs in California.  While there is a template curriculum, I review and set an individual curriculum for each individual MLO.  In other words, the training for each MLO is customized.

12.     Whether a particular training course is required will depend on my assessment of each individual MLO's background and experience.  For example, some MLOs may have used the same software and systems at their previous employer, and thus would have already completed the same training courses at a previous employer or would be sufficiently proficient based on prior experience such that the training courses would be unnecessary.  For others, I may waive the requirement that they take certain courses based on my knowledge of their strengths and weaknesses, and whether I think the course would be helpful or useful to the particular MLO.

13.     While PNC's training curricula indicate a duration for training courses, assuming the training course is actually taken by an MLO, it is not an actual estimate of the duration of each training module.  PNC uses an automated system that calculates the number of topics and number of words per page in each module from which the maximum time for median comprehension is calculated.

14.     Based on my own experience completing training modules, and my knowledge of the time my subordinates take to complete the training modules, I know that the training modules take far less time to complete than the calculated duration indicates, and that the time it takes to complete each module varies greatly from MLO to MLO.

15.     PNC has no record of how long it takes each MLO to complete a particular training course.  PNC does not track log-on/log-off times for training modules.

16.     If an MLO tests out of a class, PNC's training records for that MLO will reflect that the course was "completed" despite the fact that the MLO did not take the course and spent no time on it.

17.     Similarly, if a class was waived for an MLO, PNC's training records for that MLO will reflect that the course was "completed" despite the fact that the MLO did not take the course and spent no time on it.

**DECLARATION OF JASEN MACKENZIE**
Case No.: 3:18-cv-04810-J CS

303762399 v7

18.     More specifically with respect to sales meetings, I am aware of all sales meetings that are open for Calfornia MLOs to attend.  As mentioned above, some MLOs do not attend office sales meetings because their office does not hold sales meetings.  The size of each office impacted what, if any, sales meetings took place.  Larger offices had SLOs, mentors, and team sharing arrangements that were not possible in some small offices.  Other MLOs infrequently attend sales meetings because they are busy generating mortgage loans.  There is no way to determine which MLO attended which sales meeting, if any, because PNC doesn't track or keep records of the scheduling of sales meetings, attendance by MLOs at any such meeting, or the duration of any such meeting.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this ____ day of November, 2019 at Los Gatos, California.

_____

Jasen Mackenzie

7

**DECLARATION OF JASEN MACKENZIE**

Case No.: 3:18-cv-04810-J CS

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is:10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF JASEN MACKENZIE

The undersigned certifies that the document listed above was filed this November 12, 2019.  Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.



_/s/_  Saman M. Rejali

**CERTIFICATE OF SERVICE**

303762399 v7

Case No.: 3:18-cv-04810-J CS

EXHIBIT 9

**REDACTED VERSION OF DOCUMENT TO BE FILED UNDER SEAL**

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Patrick M. Madden (*admitted pro hac vice*)
patrick.madden@klgates.com
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
United States of America
P: +1.206.623.7580
F: +1.206.623.7022

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TANSEER KAZI and LINDA SCHEID, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PNC BANK, N.A., and DOES 1-100 inclusive,<br><br>Defendants. | Case No.: 3:18-cv-04810-JCS<br><br>**DECLARATION OF NELLY MELIAN IN OPPOSITION TO CLASS CERTIFICATION**<br><br>[Hon. Mag. Judge Joseph C. Spero] |

### DECLARATION OF NELLY MELIAN

I, Nelly Melian, hereby declare as follows:

      1.     I am a Mortgage Loan Officer ("MLO") with PNC Bank, NA. ("PNC"). I have held this position for about two and a half years, having joined PNC Bank in April, 2017. I have worked in the mortgage loan industry for approximately 13 ½ years. My principal office is located at 11846 Ventura Blvd., Studio City, CA. This declaration is provided based on my personal knowledge.

      2.     My responsibilities as an MLO require that I perform a variety of tasks, but the principal focus of my work is generating mortgage loan sales. I also participate in training, sales meetings and other activities as part of my job.

      3.     For my work at PNC, I am paid a variety of types of compensation. Some aspects of my compensation are outlined in the job offer letter I received at the commencement of my work at PNC, other aspects are detailed in the PNC Mortgage Originations Incentive Plan and Addendum A (the "Incentive Plan"), and still other aspects are offered and explained to me by my manager.

      4.     I am not sure exactly what compensation other MLOs receive, but I do know that compensation varies greatly among MLOs. It varies because there are a wide range of potential payments an MLO might receive, from salary, to onboarding incentives (signing bonuses) of differing amounts, to referral fees of differing amounts, to flat fee payments received for helping recruit new MLOs to work at PNC. Some of the incentive payments relate directly to mortgage loan originations, some relate indirectly to loan originations, and others have no relationship whatsoever to loan originations. All of these different types of payments compensate me and other MLOs for all of our work on the job.

      5.     Specifically, as stated in my offer letter, I am paid an annual salary for a 40-hour workweek. I am a non-exempt employee. Because the salary only pays for the first 40 hours each week, I am also eligible to receive overtime. PNC pays my salary on a bi-weekly basis regardless of whether I have closed any loans. I have been successful in closing loans, so I have never had to rely solely on my base salary as my income. I have never been asked to write a check back or to otherwise return any of my salary to PNC.

1

6. My offer letter also explained that, in addition to my salary and overtime, I was entitled to receive an onboarding incentive payment that I negotiated with PNC. That payment, in the amount of ████ was a contingent payment made to me during my first month of employment. I understood that this incentive was intended to provide me with sufficient compensation as I built a flow of work. I also understood that the contingency in the payment would be removed if I remained employed at PNC for 12 months, and that the amount was not earned until that time had passed. I received my full onboarding payment, the contingency was removed, and I have earned my onboarding incentive. The onboarding incentive was in addition to, and completely unrelated to any amount I would earn on mortgage loan sales I generated. As an additional onboarding incentive payment to me, I could earn an additional ██████████████ of my employment if I generated specific numbers of loan applications or accumulated specific dollar volumes of loan applications. I was, indeed, able to achieve those goals, and was paid the full amount of this incentive which, when combined with the above mentioned ████ onboarding incentive, meant that I received a total of ██████ for those first four months of employment. This was in addition, and unrelated to, to the standard incentive compensation I would receive for originating and closing mortgage loans.

7. My offer letter further explained that in addition to the onboarding incentive payment previously described, as another onboarding incentive, I would receive ████████████████████████ ██████████████████████████████████ This was a special arrangement for me designed as further enticement for me to join PNC. It afforded me the opportunity to ██████████ ████████████████████████████████████████████████████ at the time, even though I had not yet produced any business for PNC. I was successful in my sales of loans at PNC, and earned ████████████████ afforded by this special incentive.

8. My offer letter also explained that, in addition to my salary and onboarding incentives, I was eligible to earn standard incentive compensation for loan originations under the Incentive Plan. The Incentive Plan documents have changed over time and, with each change, we are provided the new document, asked to review it, and are required to acknowledge our understanding. The documents are also available online for review at any time.

2

**DECLARATION OF NELLY MELIAN**
Case No.: 3:18-cv-04810-J CS

304006851 v2

9.      Although the Incentive Plan is complex and can be difficult to understand for people who are not in the industry, and it periodically changes, I have worked in the industry for a long enough time and have no trouble understanding the arrangements.  Moreover, when I have had any questions, my managers have explained the Incentive Plan to me, they are accessible to answer any questions I have about it, and PNC provides me with access to other detailed documents including earnings statements that outline all of the relevant components and calculations.

10.      Finally, in addition to my salary onboarding incentive and any pay under the Incentive Plan, I have also received bonus compensation outside of the Incentive Plan.  For example, I received a generous ███ bonus from PNC earlier this year as a result of the changes in federal tax laws that decreased taxes on certain corporate entities like PNC.

11.      I understand that, in this lawsuit, Plaintiffs contend that MLOs are not paid for rest breaks and other activities not directly related to sales.  That is not true with respect to me and the compensation arrangements that I have agreed to with PNC.  I agreed that the above described compensation PNC provides to me pays for all my time at work, including time originating loans, taking rest breaks (which I take), attending training and sales meeting, and engaging in other activities.  For example, my salary covers all work time regardless of its nature, and many other types of compensation, including onboarding incentives, periodic bonuses and awards, and

3

**DECLARATION OF NELLY MELIAN**

incentives calculated under the Plan, are not limited to production activities and cover all time at work regardless of its nature. PNC policy requires me to report all time that I work, and I am clocked-in during all time periods at work, except when I clock out and back in for a meal break. PNC policy also requires me to take rest and meal breaks, and I am allowed to and do take them at times that are convenient for me in compliance with the policy.

12. I have been paid all sums owed to me by PNC, I have never been asked to return any part of the salary or contingent payments I received, and I have never written a check or otherwise paid back any of those payments.

13. I participate in training activities. As mentioned above, I am paid for my participation in training. I have never tested-out of any training course. I am aware that training courses typically state an amount of time a course is anticipated to take to complete. For example, some courses indicate they will take 90 minutes to complete. However, I almost always complete those courses in substantially less time than stated. To the best of my knowledge, since no records are kept of the length of time it took me to take the course, the only way you could determine how long it took is by asking me about my individual circumstances, and I could tell you, assuming I remember.

14. I also attend sales meetings. As mentioned above, I am paid for my attendance at sales meetings. I occasionally miss a meeting when I have pressing mortgage loan matters. For those I do attend (either in person, via Skype or phone), I am sometimes only able to attend part of the meeting because I arrive late, step out during the meeting, or have to leave early. Regardless, to the best of my knowledge, no attendance record is kept with respect to those meetings, nor is there a record of how long I attended any meetings. The only way to determine if I attended a particular sales meeting, or for how long I attended, is to ask me, and I can tell you my individual circumstance, assuming I remember.

15. I also understand that one or more of the Plaintiffs in this case contend that they cannot or did not engage in any productive work related to loan originations while in training or meetings. I cannot speak for them, but that is not true for me. I usually multi-task during sales meetings, including working on actual loan documents or texting or emailing customers and others

**DECLARATION OF NELLY MELIAN**

Case No.: 3:18-cv-04810-J CS

1    related to mortgage loan business.  I have observed other MLOs doing the same thing during the

2    course of meetings.

3           I declare under penalty of perjury under the laws of the United States of America that the

4    foregoing is true and correct.  Executed this 8th day of November, 2019 at Studio City, California.

Nelly Melian

**DECLARATION OF NELLY MELIAN**

304006851 v2                                      Case No.: 3:18-cv-04810-J CS

# CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles.  I am over the age of 18 and not a party to the within action; my business address is: 10100 Santa Monica Blvd., 8th Floor, Los Angeles, CA 90067.

On November 12, 2019, I served the document(s) described as:

## DECLARATION OF NELLY MELIAN

The undersigned certifies that the document listed above was filed this November 12, 2019. Notice of this filing will be sent to all parties in this case listed below by operation of the Court's electronic filing system (ECF).  Parties may access this filing via the Court's ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2019, at Los Angeles, California.

*/s/*  Saman M. Rejali

**CERTIFICATE OF SERVICE**
Case No.: 3:18-cv-04810-J CS

303762399 v7

# EXHIBIT 10

James M. Sitkin (SBN 107650)
jsitkin@sitkinlegal.com
1 Kaiser Plaza, Suite 505
Oakland, CA 94612
Tel: (415) 318-1048
Fax: (415) 362-3268

Justin L. Swidler
jswidler@swartz-legal.com
Swartz Swidler LLC
1101 Kings Hwy. N. Ste. 402
Cherry Hill, NJ 08003
Tel: (856) 685-7420
Fax: (856) 685-7417

Robert D. Soloff
robert@solofflaw.com
Robert D. Soloff, P.A.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 472-0002
Fax: (954) 472-0052

Marc A. Silverman
msilverman@fwblaw.net
Frank Weinberg Black, P.L.
7805 S.W. 6th Court
Plantation, FL 33324
Tel: (954) 474-8000
Fax: (954) 474-9850

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANSEER KAZI, *et al.*, individually and on behalf of all those similarly situated, | Case No.: 3:18-cv-04810-JCS |
| Plaintiffs, | **DECLARATION OF LINDA SCHEID IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| PNC BANK, N.A., *et al.*, | Date: January 24, 2020 |
| Defendants. | Time: 9:30 a.m. |
| | Before: Hon. Joseph C. Spero |
| | Trial Date: None Set |

1      I, LINDA SCHEID, declare as follows:

2      1.    I am the Plaintiff in this case.  I have personal knowledge of the facts set

3 forth herein, and if called as a witness, I could and would testify to such facts.  I offer this

4 declaration in support of Plaintiffs' motion for class certification.

5      2.    I was employed by PNC Bank as a Mortgage Loan Officer from the start of

6 the class period (June of 2014) through in or about February 8, 2019.

7      3.    I understand that my employee ID at PNC Bank was 562977775.

8      4.    I understand that in bringing this lawsuit I am seeking to act on behalf of

9 other former or current loan officers whom PNC Bank employed in California at any time

10 since June of 2014, in addition to myself.  As a class representative, I intend to continue

11 to look out for their interests regarding the claims asserted in this action.  I understand

12 that as a class representative I cannot put my interests ahead of those whom I represent.

13 I do not have any interests or claims against PNC Bank that conflict with the interests of

14 the proposed classes.

15      5.    Mortgage Loan Officers share basic job duties.  Primarily, I was responsible

16 for originating and selling residential mortgage loans for potential borrowers from PNC,

17 in accordance with PNC's established policies and procedures.

18      6.    During my employment, PNC paid me according to a "Loan Officer

19 Compensation Plan," which it updated, generally approximately once per year, during my

20 employment.

21      7.    Pursuant to the Compensation Plans, I was paid commissions once per

22 month, and was provided differing commission rates depending on the type and amount

23 of loans I sold.

24      8.    Every two weeks, I was provided $16 per hour for each hour I was clocked

25 into the timekeeping system.  I generally clocked in around 8 am, clocked out for lunch

26 around 12 pm, clocked in again around 1 pm, and clocked out at the end of the day around

27 5 pm.  During each four-hour block, PNC's policy instructed me to take a rest break.  I

28 was not to clock out for such rest periods.

9.      Some of the job duties I performed included attending webinars and online trainings. In addition, I was periodically required to attend sales and/or training meetings conducted by my manager or other management, in-person and via telephone. During these sessions, PNC instructed me to clock in, but I was not permitted or able to engage in sales activities.

10.     All hourly pay provided to me was considered "Regular Pay" under the Compensation Plans, and was treated as a draw against my monthly commissions. Thus, all Regular Pay, including all pay for Rest Periods and all pay for non-sales time, was subject to repayment and offset my commissions earnings. Additionally, if my commissions were not enough to cover my "Regular Pay," PNC placed me in a deficit and held the deficit over for as many months as it took for more to "repay" my "Regular Pay" to PNC.

11.     For example, for the month of October of 2016, I was provided Regular Pay for 160 hours of work at $16/hour, totaling $1,280 every two weeks, or $2,560 for the month.

12.     PNC issued me and other Loan Officers pay statements every two weeks. As an example of such pay statements, I have attached as "Exhibit A" to this Declaration a copy of the pay statements PNC provided me in October 2016, along with my Commission Earnings Statement, also provided to me for the October 2016 period.

13.     The Regular Pay was provided for the hours I was clocked in to work, including during my morning and afternoon rest periods and for non-sales work I performed during the month.

14.     I understand that the data provided by PNC shows that I completed seven trainings during the month of October of 2016. When I completed these training sessions, I was not able to engage in work directly related to selling loans. The records showing my October of 2016 trainings are shown immediately below. I estimate that in total, I spent 9-12 hours on the trainings listed below in the month of October 2016.

| Employee ID | Registration Date | Completion Date | Title | Type | Provider | Status |
|---|---|---|---|---|---|---|
| 562977775 | 8/9/2016 | 10/4/2016 | 2016 PNC Committing to Ethics | Online Class | Web Based Training (PNC) | Completed |
| 562977775 | 9/28/2016 | 10/4/2016 | Review of Prequalification Process, Credit Report Requirements and Remediation Steps | Material | Materials | Completed |
| 562977775 | 10/5/2016 | 10/5/2016 | 2016 PNC Recognizing and Reporting Red Flags of Money Laundering, Terrorist Financing, and Sanctions Violations | Online Class | Web Based Training (PNC) | Completed |
| 562977775 | 10/4/2016 | 10/5/2016 | 2016 PNC Maintaining Privacy & Security of Confidential Information | Online Class | Web Based Training (PNC) | Completed |
| 562977775 | 7/28/2016 | 10/5/2016 | 2016 PNC Committing to Ethics and Managing Risk Refresher | Curriculum | Curriculum | Completed |
| 562977775 | 10/11/2016 | 10/14/2016 | PNCM Seamless 2.0 Recording | Material | Materials | Completed |
| 562977775 | 10/11/2016 | 10/14/2016 | PNC 2016 Financial Exploitation of Elder and Vulnerable Adults (FEEVA) | Online Class | Web Based Training (PNC) | Completed |

15.     During the same month, I closed two loans totaling $1,205,500.  According to my Earnings Statement, I should have been paid 75 basis points for such loans based on the volume.  *See* Exhibit A at PNC000666.  However, I was only provided 75 basis points on the first loan, and was paid 30 basis points on the second loan. *See* PNC000667. My gross commissions on such loans totaled $6,982.50.  The calculation relating to such loan sales was produced at PNC000301 and is shown immediately below.

| INCENTIVE CREDIT DETAILS | | | | | | | | |

**Standard**

| Loan ID | Emp/Refi /Loan | App Date | Disb. Date | Borrower | Loan Amt | Unit Count | Origination Incentive | Branch of Sale |
|---|---|---|---|---|---|---|---|---|
| 8000737064 | | 09/07/2016 | 10/26/2016 | ALEXANDER | $748,000.00 | 1 | $5,610.00 | 3205 - Torrance CA |
| 8000746818 | R | 10/01/2016 | 10/31/2016 | FARR | $457,500.00 | 1 | $1,372.50 | 3205 - Torrance CA |
| | | | | **Totals for Standard :** | **$1,205,500.00** | **2** | **$6,982.50** | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | **Period Totals/Gross Incentive :** | **$1,205,500.00** | **$0.00** | **2** | **$6,982.50** |

| ADJUSTMENTS | | |
|---|---|---|
| **Adjustment Type** | **Memo/Notes** | **Amount** |
| ET RTL ADJ MIN STD D | MINIMUM PRODUCTION DEDUCTION ADJUSTMENT FROM PAY DATE 10/14/2016 | ($1,280.00) |
| ET RTL ADJ MIN STD D | MINIMUM PRODUCTION DEDUCTION ADJUSTMENT FROM PAY DATE 10/28/2016 | ($1,280.00) |

16. Pursuant to the Compensation Plan, PNC treated the $2,560 as a draw against my commissions, and reduced my earned commissions by the that amount. Thus, instead of being paid $6,982.50 in *addition* to my Regular Pay of $2,560, my monthly commission payment was reduced to reflect the draw I had already been provided, and I was only paid the remaining portion of my commissions, $4,422.50, at the end of the month. The records showing this deduction and pay have been produced at PNC000666 and are shown immediately below.

| PERIOD DRAW INFORMATION | | | | | |
|---|---|---|---|---|---|
| **Description** | **Period Beginning Balance** | **Paid** | **Recovered** | **Unrecovered** | **Period Ending Balance** |
| | | This Period Activity | | | |
| Regular Pay | $0.00 | $2,560.00 | $2,560.00 | $0.00 | $0.00 |

| REFERRAL CROSS SELL INCENTIVE | | |
|---|---|---|
| **Description** | **Number of Revenue Credits** | **Amount** |
| Retail Cross Sell Referral | 0.00 | $0.00 |
| AMG Cross Sell Referral | 0.00 | $0.00 |

| INCENTIVE PERIOD ADJUSTMENTS | | | | | |
|---|---|---|---|---|---|
| **Description** | **Period Amount** | **Repay Regular Pay** | **Repay Non-Cumulative** | **Repay Cumulative** | **Gross Payroll Amount** |
| Gross Incentive Period | $6,982.50 | | | | $6,982.50 |
| Incentive Adjusted | $6,982.50 | $2,560.00 | $0.00 | $0.00 | $4,422.50 |
| **Total Variable Earning:** | **$6,982.50** | **$2,560.00** | **$0.00** | **$0.00** | **$4,422.50** |

4

1    17.    As a result, my Regular Pay served simply as a draw against commissions,

2    and I was accordingly not paid for any Rest Period or non-sales work I performed.

3    18.    I understand that all loan officers at PNC working in the state of California

4    were subject to the same Compensation Plans and the same types of deductions that I was

5    subject to and that are discussed in this declaration.

6    19.    I declare under penalty of perjury under the laws of the United States that

7    the foregoing is true and correct.  Executed on August 30, 2019 in Fontana, California.

8

9    **Signature:**  ~~Linda A Scheid~~                              Aug 30, 2019
           Linda A Scheid (Aug 30, 2019)

10   **Email:**  lscheid274@aol.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

**PNC**

## Earnings Statement

Pay Period from 10/16/2016 to 10/31/2016, Pay Date 11/25/2016

Includes Activity thru 11/22/2016

FINAL STATEMENT

| | | | | | | |
|---|---|---|---|---|---|---|
| **Producer:** | SCHEID,LINDA | **Job Title:** | MTG LOAN OFFICER WEST (MLO) | **Manager:** | GILLIAM-MCCULLOUGH, YVETTE | **Logon ID:** PP58113 | **Salary:** $33,280.00 |
| **Job Entry Date:** | 07/25/2011 | **Last Day Worked:** | | **Branch:** | 3205 - Torrance CA | **Cost Center:** 2172821 |

All calculations were made under PNC Mortgage, a division of PNC Bank, National Association's Incentive Policies and Procedures, a copy of which has previously been furnished to you. If you have any questions concerning this report, please contact your Incentive Analyst.

# Earnings Statement

**Pay Period from 10/16/2016 to 10/31/2016, Pay Date 11/25/2016**

Includes Activity thru 11/22/2016

**FINAL STATEMENT**

| Producer: | SCHEID,LINDA | Job Title: | MTG LOAN OFFICER WEST (MLO) | Manager: | GILLIAM-MCCULLOUGH, YVETTE | Logon ID: | PP58113 | Salary: | $33,280.00 |
|---|---|---|---|---|---|---|---|---|---|
| Job Entry Date: | 07/25/2011 | Last Day Worked: | | Branch: | 3205 - Torrance CA | | | Cost Center: | 2172821 |

## DRAW INFORMATION

| Draw Type | Amount | Start | End |
|---|---|---|---|

### ELEVATED BPS INFORMATION

| Start Date | End Date | | Amount |
|---|---|---|---|
| 10/01/2011 | 12/31/2011 | | 65.0 |

### PERIOD DRAW INFORMATION

| | Period Beginning Balance | | This Period Activity | | | Period Ending Balance |
|---|---|---|---|---|---|---|
| Description | | Paid | Repay Regular Pay | Recovered | Unrecovered | |
| Regular Pay | $0.00 | $2,560.00 | $2,560.00 | $2,560.00 | $0.00 | $0.00 |

### REFERRAL CROSS SELL INCENTIVE

| Description | Number of Revenue Credits | | Amount |
|---|---|---|---|
| Retail Cross Sell Referral | 0.00 | | $0.00 |
| AMG Cross Sell Referral | 0.00 | | $0.00 |

### INCENTIVE PERIOD ADJUSTMENTS

| Description | Period Amount | Repay Regular Pay | Repay Non-Cumulative | Repay Cumulative | Gross Payroll Amount |
|---|---|---|---|---|---|
| Gross Incentive Period | $6,982.50 | | | | $6,982.50 |
| Incentive Adjusted | $6,982.50 | $2,560.00 | $0.00 | $0.00 | $4,422.50 |
| **Total Variable Earning:** | **$6,982.50** | **$2,560.00** | **$0.00** | **$0.00** | **$4,422.50** |

## EARNINGS SUMMARY

| Description | Amount |
|---|---|
| Total Variable Earning | $4,422.50 |
| Regular Pay | $1,280.00 |
| **Grand Total Earnings :** | **$5,702.50** |

### MONTHLY TIERING AND INCENTIVE WEIGHT

| Tier | Volume | Units | Tier Weight BPS | Quality Incentive BPS |
|---|---|---|---|---|
| 1 | $0 - $400,000 | 1 - 3 | 40.0 | |
| 2 | $400,001 - $1,000,000 | 4 - 6 | 55.0 | 5.00 |
| 3 | $1,000,001 - $1,750,000 | 7 - 10 | 75.0 | 5.00 |
| 4 | $1,750,001+ | 11+ | 80.0 | 5.00 |

*Each incentive period the tier level is determined by the higher of the total "funded-disbursed" volume or "funded-disbursed" units. (1 BPS = 1/10,000) Loan Officers will not receive credit for loans that close after the last day worked, except as may be required by state law.

All calculations were made under PNC Mortgage, a division of PNC Bank, National Association's Incentive Policies and Procedures, a copy of which has previously been furnished to you. If you have any questions concerning this report, please contact your Incentive Analyst.

# PNC

## Earnings Statement

Pay Period from 10/16/2016 to 10/31/2016, Pay Date 11/25/2016
Includes Activity thru 11/22/2016

**FINAL STATEMENT**

| | |
|---|---|
| **Producer:** SCHEID,LINDA | **Job Title:** MTG LOAN OFFICER WEST (MLO) |
| **Job Entry Date:** 07/25/2011 | **Last Day Worked:** |

**Manager:** GILLIAM-MCCULLOUGH, YVETTE
**Branch:** 3205 - Torrance CA

**Logon ID:** PP58113

**Salary:** $33,280.00
**Cost Center:** 2172821

### INCENTIVE CREDIT DETAILS

| Loan ID | Emp/Refi /Loan | App Date | Disb. Date | Borrower | Loan Amt | Unit Count | Origination Incentive | Branch of Sale |
|---|---|---|---|---|---|---|---|---|
| | | | | | | **Standard** | | |
| 8000737964 | | 09/07/2016 | 10/26/2016 | ALEXANDER | $748,000.00 | 1 | $5,610.00 | 3205 - Torrance CA |
| 8000746818 | R | 10/01/2016 | 10/31/2016 | FARR | $457,500.00 | 1 | $1,372.50 | 3205 - Torrance CA |
| | | | | **Totals for Standard :** | $1,205,500.00 | **2** | **$6,982.50** | |

| | | | |
|---|---|---|---|
| **Period Totals/Gross Incentive :** | $1,205,500.00 | $0.00 | **2** $6,982.50 |

### ADJUSTMENTS

| Adjustment Type | Memo/Notes | Amount |
|---|---|---|
| ET RTL ADJ MIN STD D | MINIMUM PRODUCTION DEDUCTION ADJUSTMENT FROM PAY DATE 10/14/2016 | ($1,280.00) |
| ET RTL ADJ MIN STD D | MINIMUM PRODUCTION DEDUCTION ADJUSTMENT FROM PAY DATE 10/28/2016 | ($1,280.00) |

All calculations were made under PNC Mortgage, a division of PNC Bank, National Association's Incentive Policies and Procedures, a copy of which has previously been furnished to you. If you have any questions concerning this report, please contact your Incentive Analyst.

# Earnings Statement

Pay Period from 10/16/2016 to 10/31/2016, Pay Date 11/25/2016
Includes Activity thru 11/22/2016

**FINAL STATEMENT**

| | | | | | |
|---|---|---|---|---|---|
| **Producer:** | SCHEID,LINDA | **Job Title:** | MTG LOAN OFFICER WEST (MLO) | **Manager:** | GILLIAM-MCCULLOUGH, YVETTE |
| **Job Entry Date:** | 07/25/2011 | **Last Day Worked:** | | **Branch:** | 3205 - Torrance CA |

| | | | |
|---|---|---|---|
| **Logon ID:** | PP58113 | **Salary:** | $33,280.00 |
| | | **Cost Center:** | 2172821 |

### SUMMARY

| Group | Monthly Volume | YTD Volume |
|---|---|---|
| Standard | $748,000.00 | $8,605,587.00 |
| Home Equity Partners | $0.00 | $0.00 |
| Internal Refinance | $457,500.00 | $6,672,855.00 |
| Broker Loans | $0.00 | $0.00 |
| | **$1,205,500.00** | **$15,278,442.00** |

### PNC CROSS SELL REFERRAL TIERING AND REWARD

| Tier | Revenue Credit Accumulation | Referral Compensation |
|---|---|---|
| GOLD | 2,400+ | $500 |
| SILVER | 1,800 - 2,399 | $300 |
| BRONZE | 1,200 - 1,799 | $200 |

### ASSET MANAGEMENT GROUP (AMG) CROSS SELL REFERRAL TIERING AND REWARD

| Tier | Revenue Credit Accumulation | Referral Compensation |
|---|---|---|
| GOLD | 25,000+ | $500 |
| SILVER | 5,000 - 24,999 | $250 |
| BRONZE | 1 - 4,999 | $100 |

All calculations were made under PNC Mortgage, a division of PNC Bank, National Association's Incentive Policies and Procedures, a copy of which has previously been furnished to you. If you have any questions concerning this report, please contact your Incentive Analyst.

Tuesday, April 02, 2019 10:39 AM

PNC 000668



**PNC**

Torrance E CA172        002592-002537
MAIL- 2172821
*PNC Bank, National Association*
*Corporate Payroll Loc: BY-YB32-02-1*
*4100 West 150th Street*
*Cleveland OH 44135-1389*

Phone number: 1-877-968-7762

| Department: | 8500008605 | |
|---|---|---|
| Employee ID: | 562977775 | |
| Marital Status: | Fed: S | State: S |
| Expts/Allow: | Fed: 05 | State: 05 |
| Add'l Withholdings: | Fed: 0 | State: 0 |
| Work State: | CA | |

# Earnings Statement

Page 001 of 002
Period Beg/End:    10/03/2016-10/16/2016
Advice Date:        10/14/2016
Advice Number:     6425228
Batch Number:     00563

**LINDA SCHEID**
**734 SOUTH DUNSMUIR AVE**
**LOS ANGELES, CA 90036**

| Earnings | hours | this period | year-to-date |
|---|---|---|---|
| Regular Pay | | 1024.00 | 24832.00 |
| Vacation | 16.00 | 256.00 | 1152.00 |
| Commission-Reg Tax | | | 34196.05 |
| Commission-Supp Tax | | | 288.05 |
| Holiday | | | 896.00 |
| OT Non-Discr Variable | | | 1169.66 |
| Other Comp Paid | | | 2.00 |
| Overtime Pay | | | 2664.00 |
| Straight Time | | | 80.00 |
| CarryoverVacationHrs | | | 32.00 |
| Other Earnings | | | |
| Gross Pay | | 1280.00 | 65279.76 |

## Taxable Benefit (Imputed) Items
| | | | |
|---|---|---|---|
| Emplyer Pd Disability | | 11.19 | 580.55 |
| Non-Cash Award | | | 5.00 |
| IMP LIF | | | 0.42 |

| Other Taxable Benefits | | | |
|---|---|---|---|
| Total Taxable Benefit Items | | 11.19 | 585.97 |

## Other Benefit Information
| | | |
|---|---|---|
| Savings Plan Company Match | 51.20 | 2421.43 |
| ER HSA CON | 4.00 | 80.80 |
| Vacation Balance | | 50.67 |

| Taxable Wgs | Federal | FICA | State | Local |
|---|---|---|---|---|
| Current | 1202.84 | 1254.04 | 1202.84 | |
| YTD | 62664.15 | 65085.58 | 62664.15 | |

| Tax Deductions | this period | year-to-date |
|---|---|---|
| Federal Income Tax | 33.75 | 10540.48 |
| Social Security | 77.75 | 4035.31 |
| Medicare | 18.18 | 943.74 |
| CA Income Tax | 3.96 | 3766.63 |

| Other Taxes | | |
|---|---|---|
| Total Taxes | 133.64 | 19286.16 |

## Additional Deductions
| | | | |
|---|---|---|---|
| ISP | * | 51.20 | 2421.43 |
| ACC INS | | 1.11 | 23.31 |
| DENTAL | * | 6.77 | 142.17 |
| EE HSA CON | * | 5.00 | 105.00 |
| ISP Loan 1 | | 37.68 | 791.28 |
| MEDICAL | * | 25.38 | 532.98 |
| OPT LIF EE | | 30.33 | 633.02 |

| Other Deductions | | |
|---|---|---|
| Total Deductions | 157.47 | 4649.19 |

* This deduction reduces taxable gross.

| Net Pay (Direct Deposit + Check) | 988.89 |
|---|---|

©1998, 2006, ADP, LLC. All Rights Reserved.

▼ TEAR HERE

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**PNC**

**PNC Bank, National Association**
**Corporate Payroll Loc: BY-YB32-02-1**
**4100 West 150th Street**
**Cleveland OH 44135-1389**

Advice Number:  6425228
Advice Date:  10/14/2016

**Deposited to the account of**
LINDA SCHEID

**Account Number**
21664-01158

**Amount**
988.89

THIS IS NOT A CHECK

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.    HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Earnings Statement

**PNC**

Torrance E CA172          002593-002537
MAIL- 2172821
PNC Bank, National Association
Corporate Payroll Loc: BY-YB32-02-1
4100 West 150th Street
Cleveland OH 44135-1389

Phone number: 1-877-968-7762

Page 002 of 002
Period Beg/End:    10/03/2016-10/16/2016
Advice Date:       10/14/2016
Advice Number:     6425228
Batch Number:      00563

| | |
|---|---|
| Department: | 8500008605 |
| Employee ID: | 562977775 |
| Marital Status: | Fed: S     State: S |
| Expts/Allow: | Fed: 05    State: 05 |
| Add'l Withholdings: | Fed: 0     State: 0 |
| Work State: | CA |

**LINDA SCHEID**
**734 SOUTH DUNSMUIR AVE**
**LOS ANGELES, CA  90036**

| Earnings | Pay Period | Rate | Hours | Amount |
|---|---|---|---|---|
| Regular Pay | 10/03/16 - 10/16/16 | 16.000 | -16.00 | 1,024.00 |
| Vacation | 09/26/16 - 10/02/16 | 16.000 | 16.00 | 256.00 |
| **TOTALS** | | | **0.00** | **1,280.00** |

©1998, 2006. ADP, LLC. All Rights Reserved.

▼ TEAR HERE

© 2002 Automatic Data Processing (PCS/VO)

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**PNC**

THIS IS NOT A CHECK

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Earnings Statement

**PNC**

Torrance E CA172          002845-002790
MAIL- 2172821
PNC Bank, National Association
Corporate Payroll Loc: BY-YB32-02-1
4100 West 150th Street
Cleveland OH 44135-1389

Phone number: 1-877-968-7762

Page 001 of 002
Period Beg/End:   10/17/2016-10/30/2016
Advice Date:      10/28/2016
Advice Number:    6477778
Batch Number:     00569

**LINDA SCHEID**
**734 SOUTH DUNSMUIR AVE**
**LOS ANGELES, CA 90036**

| Department: | 8500008605 |
|---|---|
| Employee ID: | 562977775 |
| Marital Status: | Fed: S    State: S |
| Expts/Allow: | Fed: 05   State: 05 |
| Add'l Withholdings: | Fed: 0    State: 0 |
| Work State: | CA |

## Earnings

| Earnings | hours | this period | year-to-date |
|---|---|---|---|
| Regular Pay | | 1024.00 | 25856.00 |
| Commission-Reg Tax | | 10275.00 | 44471.05 |
| Holiday | 8.00 | 128.00 | 1024.00 |
| Personal Day | 8.00 | 128.00 | 128.00 |
| Commission-Supp Tax | | | 288.05 |
| OT Non-Discr Variable | | | 1169.66 |
| Other Comp Paid | | | 2.00 |
| Overtime Pay | | | 2664.00 |
| Straight Time | | | 80.00 |
| Vacation | | | 1152.00 |
| CarryoverVacationHrs | | | 32.00 |
| **Gross Pay** | | **11555.00** | **76834.76** |

## Taxable Benefit (Imputed) Items

| | this period | year-to-date |
|---|---|---|
| Emplyer Pd Disability | 103.66 | 684.21 |
| Non-Cash Award | | 5.00 |
| IMP LIF | | 0.42 |

Other Taxable Benefits

| Total Taxable Benefit Items | 103.66 | 689.63 |
|---|---|---|

## Other Benefit Information

| | this period | year-to-date |
|---|---|---|
| Savings Plan Company Match | 256.70 | 2678.13 |
| ER HSA CON | 3.84 | 84.64 |
| Vacation Balance | | 50.67 |

## Taxable Wgs

| | Federal | FICA | State | Local |
|---|---|---|---|---|
| Current | 11364.81 | 11621.51 | 11364.81 | |
| YTD | 74028.96 | 76707.09 | 74028.96 | |

## Tax Deductions

| Tax Deductions | this period | year-to-date |
|---|---|---|
| Federal Income Tax | 2831.32 | 13371.80 |
| Social Security | 720.53 | 4755.84 |
| Medicare | 168.51 | 1112.25 |
| CA Income Tax | 1028.83 | 4795.46 |

Other Taxes

| Total Taxes | 4749.19 | 24035.35 |
|---|---|---|

## Additional Deductions

| | this period | year-to-date |
|---|---|---|
| ISP | * | 256.70 | 2678.13 |
| ACC INS | | 1.11 | 24.42 |
| DENTAL | * | 6.77 | 148.94 |
| EE HSA CON | * | 5.00 | 110.00 |
| ISP Loan 1 | | 37.68 | 828.96 |
| MEDICAL | * | 25.38 | 558.36 |
| OPT LIF EE | | 30.33 | 663.35 |

Other Deductions

| Total Deductions | 362.97 | 5012.16 |
|---|---|---|

* This deduction reduces taxable gross.

| Net Pay (Direct Deposit + Check) | 6442.84 |
|---|---|

©1998, 2006, ADP, LLC  All Rights Reserved.

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**PNC**

PNC Bank, National Association
Corporate Payroll Loc: BY-YB32-02-1
4100 West 150th Street
Cleveland OH 44135-1389

Advice Number:  6477778
Advice Date:    10/28/2016

| Deposited to the account of | Account Number | Amount |
|---|---|---|
| LINDA SCHEID | 21664-01158 | 6442.84 |

THIS IS NOT A CHECK

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Earnings Statement

**PNC**

Torrance E CA172       002846-002790
MAIL- 2172821
*PNC Bank, National Association*
*Corporate Payroll Loc: BY-YB32-02-1*
*4100 West 150th Street*
*Cleveland OH 44135-1389*

Phone number: 1-877-968-7762

| | |
|---|---|
| Period Beg/End: | 10/17/2016-10/30/2016 |
| Advice Date: | 10/28/2016 |
| Advice Number: | 6477778 |
| Batch Number: | 00569 |

Page 002 of 002

| Department: | 8500008605 |
| Employee ID: | 562977775 |
| Marital Status: | Fed: S     State: S |
| Expts/Allow: | Fed: 05    State: 05 |
| Add'l Withholdings: | Fed: 0     State: 0 |
| Work State: | CA |

**LINDA SCHEID**
**734 SOUTH DUNSMUIR AVE**
**LOS ANGELES, CA 90036**

| Earnings | Pay Period | Rate | Hours | Amount |
|---|---|---|---|---|
| Regular Pay | 10/17/16 - 10/30/16 | 16.000 | -16.00 | 1,024.00 |
| Commission-Reg Tax | 09/01/16 - 09/30/16 | 0.000 | 0.00 | 10,275.00 |
| Holiday | 10/10/16 - 10/16/16 | 16.000 | 8.00 | 128.00 |
| Personal Day | 10/17/16 - 10/23/16 | 16.000 | 8.00 | 128.00 |
| **TOTALS** | | | **0.00** | **11,555.00** |

©1998, 2006, ADP, LLC. All Rights Reserved.

TEAR HERE

© 2006 Automatic Data Processing (PC6SDV0)

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

**PNC**

THIS IS NOT A CHECK

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

# Declaration of Linda Scheid

Final Audit Report                                                    2019-08-30

| | |
|---|---|
| Created: | 2019-08-30 |
| By: | Justin Swidler (jswidler@swartz-legal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXXv3idfdv7eRpr1dUoCvF7uGiC2BfPX2 |

## "Declaration of Linda Scheid" History

📄 Document created by Justin Swidler (jswidler@swartz-legal.com)
2019-08-30 - 10:39:12 PM GMT- IP address: 96.248.80.30

📧 Document emailed to Linda A Scheid (lscheid274@aol.com) for signature
2019-08-30 - 10:39:41 PM GMT

📄 Email viewed by Linda A Scheid (lscheid274@aol.com)
2019-08-30 - 11:45:38 PM GMT- IP address: 174.210.14.107

🖊 Document e-signed by Linda A Scheid (lscheid274@aol.com)
Signature Date: 2019-08-30 - 11:58:32 PM GMT - Time Source: server- IP address: 174.210.14.107

✅ Signed document emailed to Marc Silverman (msilverman@fwblaw.net), Justin Swidler (jswidler@swartz-legal.com), James Sitkin (jsitkin@sitkinlegal.com), Daeun Kim (dkim@swartz-legal.com), and 2 more
2019-08-30 - 11:58:32 PM GMT

Adobe Sign

# EXHIBIT 11

1   James M. Sitkin (SBN 107650)
    jsitkin@sitkinlegal.com
2   1 Kaiser Plaza, Suite 505
    Oakland, CA 94612
3   Tel: (415) 318-1048
    Fax: (415) 362-3268
4
    Justin L. Swidler
5   jswidler@swartz-legal.com
    Swartz Swidler LLC
6   1101 Kings Hwy. N. Ste. 402
    Cherry Hill, NJ 08003
7   Tel: (856) 685-7420
    Fax: (856) 685-7417
8
    Robert D. Soloff
9   robert@solofflaw.com
    Robert D. Soloff, P.A.
10  7805 S.W. 6th Court
    Plantation, FL 33324
11  Tel: (954) 472-0002
    Fax: (954) 472-0052
12
    Marc A. Silverman
13  msilverman@fwblaw.net
    Frank Weinberg Black, P.L.
14  7805 S.W. 6th Court
    Plantation, FL 33324
15  Tel: (954) 474-8000
    Fax: (954) 474-9850
16
    Attorneys for Plaintiffs
17

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

20

21  TANSEER KAZI, *et al.*, individually and on    Case No.:  3:18-cv-04810-JCS
    behalf of all those similarly situated,
22                                                  **DECLARATION OF TANSEER KAZI**
            Plaintiffs,                             **IN SUPPORT OF PLAINTIFFS'**
23                                                  **MOTION FOR CLASS**
    vs.                                             **CERTIFICATION**
24
    PNC BANK, N.A., *et al.*,                       Date:      January 24, 2020
25                                                  Time:      9:30 a.m.
            Defendants.                             Before:  Hon. Joseph C. Spero
26
                                                    Trial Date: None Set
27

28

---

I, TANSEER KAZI, declare as follows:

1.     I am the Plaintiff in this case.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify to such facts.  I offer this declaration in support of Plaintiffs' motion for class certification.

2.     I was employed by PNC Bank as a Mortgage Loan Officer in or around September of 2014.  I was then rehired by PNC Bank as a Mortgage Loan Officer in or around January of 2017 and remained employed in that role until in or around June 28, 2018.

3.     I understand that my employee ID at PNC Bank was 633634964.

4.     I understand that in bringing this lawsuit I am seeking to act on behalf of other former or current loan officers whom PNC Bank employed in California at any time since June of 2014, in addition to myself.  As a class representative, I intend to continue to look out for their interests regarding the claims asserted in this action.  I understand that as a class representative I cannot put my interests ahead of those whom I represent. I do not have any interests or claims against PNC Bank that conflict with the interests of the proposed classes.

5.     Mortgage Loan Officers share basic job duties.  Primarily, I was responsible for originating and selling residential mortgage loans for potential borrowers from PNC, in accordance with PNC's established policies and procedures.

6.     During my employment, PNC paid me according to a "Loan Officer Compensation Plan," which it updated, generally approximately once per year, during my employment.

7.     Pursuant to the Compensation Plans, I was paid commissions once per month, and was provided differing commission rates depending on the type and amount of loans I sold.

8.     Every two weeks, I was provided $16 per hour for each hour I was clocked into the timekeeping system.  Most days, I clocked in at 8 am, clocked out for lunch at 12 pm, clocked in again at 1 pm, and clocked out at the end of the day at 5 pm.  During each

1

1  four-hour block, PNC's policy instructed me to take a rest break. I was not to clock out
2  for such rest periods.

3      9.    Some of the job duties I performed included attending webinars and online
4  trainings. In addition, I was periodically required to attend sales and/or training meetings
5  conducted by my manager or other management, in-person and via telephone. During
6  these sessions, PNC instructed me to clock in, but I was not permitted or able to engage
7  in sales activities.

8      10.    All hourly pay provided to me was considered "Regular Pay" under the
9  Compensation Plans, and was treated as a draw against my monthly commissions. Thus,
10  all Regular Pay provided, including all pay for Rest Periods and all pay for non-sales time,
11  was subject to repayment and offset my commissions earnings. Additionally, if my
12  commissions were not enough to cover my "Regular Pay," PNC placed me in a deficit
13  and held the deficit over for as many months as it took for more to "repay" my "Regular
14  Pay" to PNC.

15     11.    For example, for the month of May of 2017, I was provided Regular Pay for
16  160 hours of work at $16/hour, totaling $1,280 every two weeks, or $2,560 for the month.
17  Copies of the Earnings Records produced by PNC showing these payments are directly
18  below and I understand have been produced by PNC at bate stamp PNC000050.

```
P/E Date    FormID <----- REGULAR ----->  <---- OVERTIME ---->  <-------- OTHER ---------->                  <
Check# \Dept. ID   Hours    Earnings   Hours    Earnings   Type Hours      Earnings      Gross Pay
Hourly Rate
------- Earnings Type Description ----------
CP1-Cap on VCA Earn/ISP
CXC-Commission-Supp Tax
712-Emplyer Pd Disability
----------------------------------------------
05/14/17 DEPOS1
7223192 8500008377  80.00    1,280.00                       CP1                           1,280.00
16.000                                                      712          10.55

------- Earnings Type Description ----------
CP1-Cap on VCA Earn/ISP
712-Emplyer Pd Disability
----------------------------------------------
05/28/17 DEPOS1
7276280 8500008377  80.00    1,280.00                       CP1          469.41           2,218.82
16.000                                                      CDB          938.82
                                                            712          19.00
```

12.     PNC issued me and other Loan Officers pay statements every two weeks which provided the same information that is shown in the record produced by PNC and referenced in the previous paragraph.  As an example, I have attached as "Exhibit A" to this Declaration a copy of the pay statement PNC provided me for the May 14, 2017 check.

13.     The Regular Pay was provided for the hours I was clocked in to work, including during my morning and afternoon rest periods and for non-sales work I performed during the month.

14.     I understand that the data provided by PNC shows that I completed three trainings during the month of May of 2017, each completed on May 18, 2017.  When I completed these training sessions, I was not able to engage in work directly related to selling loans. The records showing my May of 2017 trainings are shown immediately below.  I estimate that in total, I spent 3.5-4 hours on the trainings listed below in the month of May 2017.

| Employee ID | Registration Date | Completion Date | Title | Type | Provider | Status |
|---|---|---|---|---|---|---|
| 633634964 | 4/25/2017 | 5/18/2017 | Fundamentals of Sales Coaching and Skills (FSCS): Sales Employee Learning Experience: Overview and Application Curriculum | Curriculum | Curriculum | Completed |
| 633634964 | 4/25/2017 | 5/18/2017 | RB Role-Specific Discussion Forum and Concept Review | Material | Materials | Completed |
| 633634964 | 4/25/2017 | 5/18/2017 | Fundamentals of Sales Coaching and Skills: Sales Employee Learning Experience - Overview and Application Learning Guide | Material | Materials | Completed |

15.     During the same month, I closed two loans totaling $1,469,400.  Under the Plan, such volume placed me on the third tier and required PNC pay me 75 basis points (0.75%) of the loan volume as gross commission.  *See* PNC000300-000303.  Accordingly, my gross commissions on such loans totaled $11,020.50.  The calculation relating to such

loan sales was produced at PNC000301 and is shown immediately below.

| INCENTIVE CREDIT DETAILS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Mortgages** | | | | | | | | |
| Loan ID | Empl/Refi\Lead | App Date | Disb. Date | Borrower | Loan Amt | Unit Count | Gross Commission | Branch of Sale |
| 8000775923 | | 03/09/2017 | 05/09/2017 | SANIL | $595,000.00 | 1 | $4,462.50 | 3233 - Cupertino CA |
| 8000783943 | | 04/16/2017 | 05/11/2017 | OZA | $874,400.00 | 1 | $6,558.00 | 3233 - Cupertino CA |
| | | | | Totals for Mortgages : | $1,469,400.00 | 2 | $11,020.50 | |
| | | | | Period Totals/Gross Commission : | $1,469,400.00 | $0.00 | 2 | $11,020.50 |

| ADJUSTMENTS | | |
|---|---|---|
| Adjustment Type | Memo/Notes | Amount |
| ET RTL ADJ MIN STD D | REGULAR PAY ADJUSTMENT FOR PAY DATE 5/26/2017 | ($1,280.00) |
| ET RTL ADJ MIN STD D | REGULAR PAY ADJUSTMENT FOR PAY DATE 5/12/2017 | ($1,280.00) |

16.     Pursuant to the Compensation Plan, PNC treated the $2,560 as a draw against my commissions, and reduced my earned commissions by the that amount.  Thus, instead of being paid $11,020.50 in *addition* to my Regular Pay of $2,560, my monthly commission payment was reduced to reflect the draw I had already been provided, and I was only paid the remaining portion of my commissions, $8,460.50, at the end of the month.  The records showing this deduction and pay have been produced at PNC000300 are shown immediately below.

| PERIOD INFORMATION | | | | | |
|---|---|---|---|---|---|
| Description | Period Beginning Balance | This Period Activity | | | Period Ending Balance |
| | | Paid | Earn Through | Non Earn Through | |
| Regular Pay | $0.00 | $2,560.00 | $2,560.00 | $0.00 | $0.00 |

| CROSS SELL INCENTIVE | | |
|---|---|---|
| Description | Number of Revenue Credits/QIAs | Amount |
| Retail/AMG Cross Sell | 0.00 | $0.00 |
| PNCI QIA Incentive | | $0.00 |

| COMMISSION/INCENTIVE CALCULATION | | | | |
|---|---|---|---|---|
| Description | Period Amount | Regular Pay Earn Through | Earn Through App to UW/Deficit | Gross Payroll Amount |
| Gross Commission Period | $11,020.50 | | | $11,020.50 |
| Commission Adjusted | $11,020.50 | $2,560.00 | $0.00 | $8,460.50 |
| Total Variable Earnings: | $11,020.50 | $2,560.00 | $0.00 | $8,460.50 |

1

2      17.    As a result, my Regular Pay served simply as a draw against commissions,

3  and I was accordingly not paid for any Rest Period or non-sales work I performed.

4      18.    I understand that all loan officers at PNC working in the state of California

5  were subject to the same Compensation Plans and the same types of deductions that I was

6  subject to and that are discussed in this declaration.

7      19.    I declare under penalty of perjury under the laws of the United States that

8  the foregoing is true and correct.  Executed on August 30, 2019 in Freemont, California.

9

10

11                                                                      Aug 30, 2019

         **Signature:**  *Tanseer Kazi*
12                     Tanseer Kazi (Aug 30, 2019)

13         **Email:**  tonykazi@hotmail.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# Earnings Statement

**PNC**

Cupertino CA161
MAIL- 2171813          002980-002945
*PNC Bank, National Association*
*Corporate Payroll Loc: BY-YB32-02-1*
*4100 West 150th Street*
*Cleveland OH 44135-1389*

Phone number: 1-877-968-7762

| | | | |
|---|---|---|---|
| Department: | 8500008377 | | |
| Employee ID: | 633634964 | | |
| Marital Status: | Fed: M | State: M | |
| Expts/Allow: | Fed: 00 | State: 08 | |
| Add'l Withholdings: | Fed: 0 | State: 0 | |
| Work State: | CA | | |

Page 001 of 002
Period Beg/End:   05/01/2017-05/14/2017
Advice Date:      05/12/2017
Advice Number:    7223192
Batch Number:     00655

**TANSEER KAZI**
**43575 MISSION BLVD**
**STE-347**
**FREMONT, CA 94539**

| Earnings | hours | this period | year-to-date |
|---|---|---|---|
| Regular Pay | | 1280.00 | 8832.00 |
| Additional Regular | | | 512.00 |
| Commission-Reg Tax | | | 35000.00 |
| Commission-Supp Tax | | | 10000.00 |
| Holiday | | | 128.00 |

| Other Earnings | | | |
|---|---|---|---|
| Gross Pay | | 1280.00 | 54472.00 |

| Taxable Benefit (Imputed) Items | | | |
|---|---|---|---|
| Emplyer Pd Disability | | 10.55 | 483.11 |

| Other Taxable Benefits | | | |
|---|---|---|---|
| Total Taxable Benefit Items | | 10.55 | 483.11 |

**Other Benefit Information**

| | | |
|---|---|---|
| Vacation Balance | | 40.00 |

| Taxable Wgs Federal | FICA | State | Local |
|---|---|---|---|
| Current | 1131.37 | 1182.57 | 1131.37 | |
| YTD | 52905.90 | 54160.70 | 52905.90 | |

| Tax Deductions | this period | year-to-date |
|---|---|---|
| Social Security | 73.32 | 3357.96 |
| Medicare | 17.15 | 785.33 |
| CA Income Tax | | 4236.05 |

| Other Taxes | | |
|---|---|---|
| Total Taxes | 90.47 | 8379.34 |

| Additional Deductions | | this period | year-to-date |
|---|---|---|---|
| TSP New | * | 51.20 | 1254.80 |
| ACC INS | | 2.08 | 15.31 |
| DENTAL | * | 9.08 | 66.81 |
| MEDICAL | * | 92.31 | 679.12 |
| OPT LIF CH | | 0.72 | 5.29 |
| OPT LIF EE | | 12.08 | 68.55 |
| OPT LIF SP | | 2.24 | 16.48 |
| VISION | * | 6.59 | 48.48 |

| Other Deductions | | |
|---|---|---|
| Total Deductions | 176.30 | 2154.84 |

\* This deduction reduces taxable gross.

| Net Pay (Direct Deposit + Check) | 1013.23 |
|---|---|

©1998, 2006, ADP, LLC, All Rights Reserved.

TEAR HERE

# Earnings Statement

**PNC**

Cupertino CA161  002981-002945
MAIL- 2171813
*PNC Bank, National Association*
*Corporate Payroll Loc: BY-YB32-02-1*
*4100 West 150th Street*
*Cleveland OH 44135-1389*

*Phone number: 1-877-968-7762*

Page 002 of 002
Period Beg/End:    05/01/2017 - 05/14/2017
Advice Date:       05/12/2017
Advice Number:     7223192
Batch Number:      00655

| Department: | 8500008377 |
|---|---|
| Employee ID: | 633634964 |
| Marital Status: | Fed: M    State: M |
| Expts/Allow: | Fed: 00    State: 08 |
| Add'l Withholdings: | Fed: 0    State: 0 |
| Work State: | CA |

**TANSEER KAZI**
**43575 MISSION BLVD**
**STE-347**
**FREMONT, CA  94539**

| Earnings | Pay Period | Rate | Hours | Amount |
|---|---|---|---|---|
| Regular Pay | 05/01/17 - 05/14/17 | 16.000 | 0.00 | 1,280.00 |
| **TOTALS** | | | **0.00** | **1,280.00** |

©1998, 2006, ADP, LLC. All Rights Reserved.

TEAR HERE

# Declaration of Tanseer Kazi

Final Audit Report                                        2019-08-30

| | |
|---|---|
| Created: | 2019-08-30 |
| By: | Justin Swidler (jswidler@swartz-legal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAALkyYmb-YmLT0KaH2GnVNhzTIDJOQNdSc |

## "Declaration of Tanseer Kazi" History

📄 Document created by Justin Swidler (jswidler@swartz-legal.com)
2019-08-30 - 8:41:34 PM GMT- IP address: 96.248.80.30

✉ Document emailed to Tanseer Kazi (tonykazi@hotmail.com) for signature
2019-08-30 - 8:42:18 PM GMT

📄 Email viewed by Tanseer Kazi (tonykazi@hotmail.com)
2019-08-30 - 8:48:10 PM GMT- IP address: 99.203.107.18

✍ Document e-signed by Tanseer Kazi (tonykazi@hotmail.com)
Signature Date: 2019-08-30 - 9:07:50 PM GMT - Time Source: server- IP address: 99.203.107.18

✅ Signed document emailed to Daeun Kim (dkim@swartz-legal.com), James Sitkin (jsitkin@sitkinlegal.com), Marc Silverman (msilverman@fwblaw.net), Tanseer Kazi (tonykazi@hotmail.com), and 2 more
2019-08-30 - 9:07:50 PM GMT

Adobe Sign

# EXHIBIT 12

```
 1              UNITED  STATES  DISTRICT  COURT
 2           NORTHERN  DISTRICT  OF  CALIFORNIA
 3                SAN  FRANCISCO  DIVISION
 4     _____
                                      )
 5   TANSEER  KAZI  and  LINDA         )
     SCHEID,  individually  and  on   )
 6   behalf  of  all  those  similarly)
     situated,                        )
 7                                     )CASE  NO.
              Plaintiffs,             )3:18-cv-04810-JCS
 8                                     )
              vs.                      )
 9                                     )
     PNC  BANK,  N.A.,  and  DOES      )
10   1-100  inclusive,                 )
                                       )
11           Defendants.               )
     _____)
12
13
14
15         VIDEOTAPED  DEPOSITION  OF  TANSEER  KAZI
16               San  Francisco,  California
17               Thursday,  October  17,  2019
18                      Volume  1
19
20
21
22
23   Reported  by:
     RACHEL  FERRIER,  CSR  No.  6948
24   Job  No.  3599791
25   PAGES  1  -  294
```

                                              Page  1

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4    _____
                                     )
 5    TANSEER KAZI and LINDA         )
      SCHEID, individually and on    )
 6    behalf of all those similarly  )
      situated,                      )
 7                                   )CASE NO.
                Plaintiffs,          )3:18-cv-04810-JCS
 8                                   )
                vs.                  )
 9                                   )
      PNC BANK, N.A., and DOES       )
10    1-100 inclusive,               )
                                     )
11              Defendants.          )
      _____)
12
13
14
15         VIDEOTAPED DEPOSITION OF TANSEER KAZI, VOLUME 1,
16    taken on behalf of the Defendants, at K&L Gates LLP,
17    4 Embarcadero Center, Suite 1200, San Francisco,
18    California, beginning at 9:03 a.m. and ending at
19    5:28 p.m. on Thursday, October 17, 2019, before
20    RACHEL FERRIER, Certified Shorthand Reporter No. 6948.
21
22
23
24
25
                                              Page  2
```

Tanseer Kazi - October 17, 2019

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4              LAW OFFICES OF JAMES M. SITKIN

 5              BY:  JAMES M. SITKIN

 6              Attorney at Law

 7              One Kaiser Plaza, Suite 505

 8              Oakland, California 94612

 9              415.318.1048

10              jsitkin@sitkinlegal.com

11

12    For Defendants:

13              K&L GATES LLP

14              BY:  PATRICK M. MADDEN

15              Attorney at Law

16              925 Fourth Avenue, Suite 2900

17              Seattle, Washington 98104-1158

18              206.623.7580

19              patrick.madden@klgates.com

20

21    Also Present:

22              JASON MACKENZIE, PNC Bank

23

24    Videographer:

25              KEVIN FOOR
```

Page 3

```
 1                         INDEX

 2   WITNESS                           EXAMINATION

 3   TANSEER KAZI

 4   VOLUME 1

 5

 6                   BY MR. MADDEN          7, 139

 7                   BY MR. SITKIN            291

 8

 9

10

11                       EXHIBITS

12   NUMBER           DESCRIPTION            PAGE

13   Exhibit 1    Second Amended Complaint     11

14   Exhibit 2    Declaration of Tanseer Kazi  15

15   Exhibit 3    Bankruptcy Docket            37

16   Exhibit 4    Voluntary Petition for
                  Individuals Filing for
17                 Bankruptcy                  41

18   Exhibit 5    Declaration of Tanseer Kazi  74

19   Exhibit 6    Third Amended Individual,
                  Class, and Collective
20                 Action Complaint            75

21   Exhibit 7    Settlement Agreement & Release 79

22   Exhibit 8    Joint Stipulation of Class
                  Action Settlement and
23                 Release                     102

24

25

                                      Page  4
```

```
 1                      EXHIBITS
 2   NUMBER           DESCRIPTION              PAGE
 3   Exhibit 9     Memorandum of Points and
                   Authorities in Support
 4                 of Plaintiffs' Motion
                   for Class Certification      122
 5
     Exhibit 10    Hire letter received in
 6                 September of 2014            176
 7   Exhibit 11    Employee Earnings Record     189
 8   Exhibit 12    Hire letter received in
                   January of 2017             190
 9
     Exhibit 13    Documents produced by
10                 Tanseer Kazi                197
11   Exhibit 14    Earnings Statement for
                   February 2nd, 2018          220
12
     Exhibit 15    PNC Mortgage Originations
13                 Incentive Plan revised
                   April 1st, 2014             242
14
     Exhibit 16    Mortgage Originations
15                 Incentive Plan Effective
                   January 1st, 2017           245
16
     Exhibit 17    Incentive Mortgage
17                 Origination Loan
                   Officer - West              256
18
     Exhibit 18    First Set of Requests
19                 for Production of
                   Documents to Plaintiff
20                 Tanseer Kazi                279
21
22
23
24
25
                                            Page  5
```

| | |
|---|---|
| 1 | San Francisco, California; Thursday, October 17, 2019 |
| 2 | 9:03 a.m. |
| 3 | 09:03:58 |
| 4 | THE VIDEOGRAPHER:  Good morning. 09:03:58 |
| 5 | We are going on the record at 9:03 on 09:03:59 |
| 6 | October 17th of the year 2019. 09:04:01 |
| 7 | Please understand microphones are very sensitive 09:04:04 |
| 8 | and can pick up whispering and private conversation. 09:04:06 |
| 9 | This is Disc 1, Volume 1 in the video deposition 09:04:12 |
| 10 | of Tanseer Kazi, taken by counsel for Defendant in the 09:04:16 |
| 11 | matter of Tanseer Kazi v PNC Bank, et al., filed in 09:04:22 |
| 12 | United States District Court for the Northern District 09:04:26 |
| 13 | of California.  It's Case No. 3:18-cv-04810-JCS. 09:04:28 |
| 14 | We are at K&L Gates.  They are at 4 Embarcadero 09:04:37 |
| 15 | Center in San Francisco. 09:04:41 |
| 16 | I'm Kevin Foor.  I'm with Rachel Ferrier.  We are 09:04:43 |
| 17 | from Veritext. 09:04:47 |
| 18 | Will the attorneys please state their 09:04:47 |
| 19 | appearances. 09:04:49 |
| 20 | MR. MADDEN:  Patrick Madden for -- of K&L Gates 09:04:51 |
| 21 | for Defendants, PNC Bank, et al. 09:04:57 |
| 22 | MR. SITKIN:  My name is James Sitkin.  I'm 09:05:00 |
| 23 | appearing here today for the plaintiffs. 09:05:03 |
| 24 | THE VIDEOGRAPHER:  Thank you. 09:05:05 |
| 25 | If the Court Reporter will please administer the 09:05:06 |

Page 6

Tanseer  Kazi - October 17, 2019

| | | |
|---|---|---|
| 1 | talk about 2014. | 02:07:03 |
| 2 | It's been marked as Exhibit No. 10. | 02:07:18 |
| 3 | (Exhibit 10 was marked for | 02:07:20 |
| 4 | identification.) | 02:07:21 |
| 5 | BY MR. MADDEN: | 02:07:21 |
| 6 | Q    Do you recognize that document? | 02:07:48 |
| 7 | A    Yes. | 02:08:10 |
| 8 | Q    So let me start with:  Is it a true and correct | 02:08:11 |
| 9 | copy of a hire letter you received in September of 2014? | 02:08:19 |
| 10 | A    It looks like it. | 02:08:23 |
| 11 | Q    Okay.  And is there -- and it looks like there | 02:08:25 |
| 12 | was a hire letter, and then there was an attached | 02:08:29 |
| 13 | non-solicitation, no-hire confidentiality agreement | 02:08:33 |
| 14 | behind that. | 02:08:37 |
| 15 | Do you see that? | 02:08:37 |
| 16 | So it's three pages of a letter and then two | 02:08:41 |
| 17 | pages of an agreement. | 02:08:43 |
| 18 | A    I only have three pages. | 02:08:46 |
| 19 | Q    Oh. | 02:08:48 |
| 20 | MR. SITKIN:  I believe -- | 02:08:48 |
| 21 | MR. MADDEN:  They are front and back. | 02:08:53 |
| 22 | MR. SITKIN:  -- it's two-sided -- two-sided | 02:08:54 |
| 23 | document. | 02:08:55 |
| 24 | MR. MADDEN:  Yeah. | 02:08:56 |
| 25 | THE WITNESS:  Oh, okay, yeah. | 02:08:57 |

Page 176

Tanseer Kazi - October 17, 2019

| | | |
|---|---|---|
| 1 | A    Yes. | 02:10:12 |
| 2 | Q    And you were hired with an annualized salary of | 02:10:22 |
| 3 | $33,280; correct? | 02:10:25 |
| 4 | A    Yes. | 02:10:27 |
| 5 | So just to correct this, I'm confused about the | 02:10:29 |
| 6 | dates here.  The letter is dated September 2nd.  The | 02:10:35 |
| 7 | signed date is September 2nd, and the start date is | 02:10:41 |
| 8 | September 2nd.  I'm not sure if this was signed in the | 02:10:44 |
| 9 | office when I started or it was signed before or I sign | 02:10:51 |
| 10 | it on a later date.  I'm not aware -- I'm not aware -- | 02:10:57 |
| 11 | I'm not familiar with that. | 02:11:00 |
| 12 | Q    Okay.  But the letter said that you were | 02:11:02 |
| 13 | scheduled to start on September 2nd; correct? | 02:11:08 |
| 14 | A    That's what the letter says, yes. | 02:11:11 |
| 15 | Q    Okay.  And the letter states you were hired with | 02:11:13 |
| 16 | an annualized salary of ▮▮▮▮▮   correct? | 02:11:14 |
| 17 | A    Yes. | 02:11:20 |
| 18 | Q    And how long did you work for PNC Bank in 2014? | 02:11:20 |
| 19 | A    I think, first week, I said I'm going to leave, | 02:11:32 |
| 20 | and I left.  I resigned first week. | 02:11:39 |
| 21 | Q    Okay.  So you didn't even finish a week? | 02:11:42 |
| 22 | A    I didn't even finish a week. | 02:11:44 |
| 23 | Q    Okay. | 02:11:46 |
| 24 | A    That -- that's what I remember, and, yeah, first | 02:11:48 |
| 25 | week I made the decision I'm not going to stay there. | 02:11:55 |

Page 178

```
 1      Q    Okay.  And -- and when you were in training, were   02:17:51

 2   there scheduled breaks during the training?              02:17:59

 3      A    Yes.                                              02:18:01

 4      Q    Did you take those breaks?                        02:18:03

 5      A    Yes.                                              02:18:06

 6      Q    And did you understand that the pay you were      02:18:06

 7   receiving for those weeks was paying you for those       02:18:13

 8   breaks?                                                  02:18:16

 9        MR. SITKIN:  Mischaracterizes his prior             02:18:18

10   testimony.                                               02:18:19

11        You may answer.                                     02:18:20

12        THE WITNESS:  I don't know that.                    02:18:21

13   BY MR. MADDEN:                                           02:18:21

14      Q    You don't know one way or another?               02:18:23

15      A    No, I don't know that.                           02:18:25

16      Q    Did anybody tell you, "We are giving you this    02:18:26

17   pay, but it's not for breaks"?                           02:18:30

18      A    No.                                              02:18:33

19      Q    Okay.  So did anybody tell you that you weren't  02:18:33

20   going to get paid a salary broken down on a biweekly     02:18:46

21   basis?                                                   02:18:52

22      A    Did anybody tell me that?                        02:18:52

23      Q    Yes.                                             02:18:57

24      A    It was in the -- it was written in the offer.    02:18:58

25   There is a base salary.                                  02:19:04
```

YOM: Full Service Court Reporting, A Veritext Company
800.831.6973

Tanseer Kazi - October 17, 2019

| | | |
|---|---|---|
| 1 | Q   Oh, well, that's what I'm asking, is:  Did | 02:19:05 |
| 2 | anybody tell you you wouldn't get a base salary? | 02:19:08 |
| 3 | A   Oh, I wouldn't get.  I'm sorry, no. | 02:19:10 |
| 4 | Q   Okay.  In the third paragraph, it states that you | 02:19:12 |
| 5 | would receive a forgivable draw of ▮▮▮▮▮ for the first | 02:19:21 |
| 6 | month of employment; is that accurate? | 02:19:25 |
| 7 | A   Yes. | 02:19:30 |
| 8 | Q   Okay.  So I wanted to ask a couple of questions | 02:19:31 |
| 9 | about that. | 02:19:35 |
| 10 | Did you understand that the forgivable draw was | 02:19:39 |
| 11 | something different than compensation under the standard | 02:19:41 |
| 12 | Mortgage Origination Incentive Compensation Plan? | 02:19:47 |
| 13 | A   Yes. | 02:19:49 |
| 14 | Q   Okay.  And did -- and that's -- if you look at | 02:19:51 |
| 15 | the second line, it talks about, after this time frame, | 02:19:58 |
| 16 | you will revert to the standard compensation plan; | 02:20:00 |
| 17 | correct? | 02:20:03 |
| 18 | A   Yes. | 02:20:03 |
| 19 | Q   So -- so you understood that this was something | 02:20:05 |
| 20 | different than standard plan compensation; correct? | 02:20:08 |
| 21 | A   Correct. | 02:20:12 |
| 22 | Q   Okay.  And -- and did you ever receive that | 02:20:13 |
| 23 | forgivable draw? | 02:20:19 |
| 24 | A   No, I didn't. | 02:20:20 |
| 25 | Q   Okay.  Did you understand that the forgivable | 02:20:21 |

Page 184

Tanseer  Kazi - October 17, 2019

| | | |
|---|---|---|
| 1 | of time when you start working, that there isn't an | 02:27:23 |
| 2 | offset; is that correct? | 02:27:28 |
| 3 | A   That's correct. | 02:27:29 |
| 4 | Q   Okay.  And so during that period, then, people | 02:27:30 |
| 5 | get their salary, and it actually pays for their time; | 02:27:36 |
| 6 | correct? | 02:27:40 |
| 7 | A   Yes. | 02:27:40 |
| 8 | MR. MADDEN:  Okay.  Now -- I guess that's good | 02:27:43 |
| 9 | enough. | 02:27:52 |
| 10 | So let me ask you to look at what I'll mark as | 02:28:10 |
| 11 | Exhibit 12. | 02:28:14 |
| 12 | (Exhibit 12 was marked for | 02:28:14 |
| 13 | identification.) | 02:28:15 |
| 14 | BY MR. MADDEN: | 02:28:15 |
| 15 | Q   Do you recognize that document? | 02:28:22 |
| 16 | A   Yes. | 02:28:38 |
| 17 | Q   And is it a hire letter that you received in | 02:28:45 |
| 18 | January of 2017? | 02:28:55 |
| 19 | A   Yes. | 02:28:56 |
| 20 | Q   And in the second paragraph on page 1, it states | 02:28:57 |
| 21 | that you were hired into an M- -- a mortgage loan | 02:29:03 |
| 22 | officer, MLO, position; correct? | 02:29:07 |
| 23 | A   Yes. | 02:29:10 |
| 24 | Q   Did you, in fact -- oh, and it's -- and did you, | 02:29:17 |
| 25 | in fact, get hired into that position? | 02:29:19 |

Page 190

Tanseer Kazi - October 17, 2019

| | | |
|---|---|---|
| 1 | A   That's correct. | 02:29:21 |
| 2 | Q   Okay. | 02:29:22 |
| 3 | A   Yeah. | 02:29:23 |
| 4 | Q   Were you scheduled to start on January 31st, | 02:29:23 |
| 5 | 2017? | 02:29:27 |
| 6 | A   I'm guessing -- well, I think that's correct. | 02:29:27 |
| 7 | Q   Okay.  Well, I'm -- I'm asking, first, were | 02:29:33 |
| 8 | you -- does it say that you were scheduled to start | 02:29:37 |
| 9 | then? | 02:29:39 |
| 10 | A   Yeah, that's what it says.  Yes. | 02:29:40 |
| 11 | Q   Okay.  And then my next question is:  Did you, in | 02:29:44 |
| 12 | fact, start then? | 02:29:47 |
| 13 | A   I'll have to check the dates, but I think it was | 02:29:48 |
| 14 | around that date. | 02:29:55 |
| 15 | Q   Okay.  And were you hired with an annual- -- | 02:29:57 |
| 16 | annualized salary of ██████████ | 02:30:00 |
| 17 | A   Yes. | 02:30:05 |
| 18 | Q   And that was the same salary that you were hired | 02:30:05 |
| 19 | at in 2014; correct? | 02:30:08 |
| 20 | A   That's correct. | 02:30:10 |
| 21 | Q   Okay.  And did anybody ever tell you from -- or | 02:30:12 |
| 22 | anybody from PNC Bank ever tell you that they would not | 02:30:21 |
| 23 | pay you that annualized salary? | 02:30:25 |
| 24 | MR. SITKIN:  Vague and ambiguous as to subject | 02:30:28 |
| 25 | matter. | 02:30:33 |

Page 191

| | | |
|---|---|---|
| 1 | commission, incentive calculation. | 05:23:17 |
| 2 | Do you see that? | 05:23:19 |
| 3 | A   Yes. | 05:23:19 |
| 4 | Q   Okay.  And you took that out of a pay -- or | 05:23:22 |
| 5 | earnings statement; correct? | 05:23:28 |
| 6 | A   That looks like it's from the commission | 05:23:28 |
| 7 | statement. | 05:23:34 |
| 8 | Q   Okay.  That -- it's labeled earning -- we looked | 05:23:38 |
| 9 | at those.  They are labeled "Earnings Statement" on the | 05:23:41 |
| 10 | top; correct? | 05:23:44 |
| 11 | Well, let me ask you -- | 05:23:48 |
| 12 | A   Okay. | 05:23:50 |
| 13 | Q   Let me ask a different question. | 05:23:50 |
| 14 | We went through an entire series of these, and on | 05:23:57 |
| 15 | each one of those documents, after the commission -- the | 05:24:03 |
| 16 | commission incentive calculation was at the bottom of | 05:24:09 |
| 17 | the left-hand side, and then on the right-hand side, | 05:24:12 |
| 18 | there was a box that said "Earnings Summary" that listed | 05:24:17 |
| 19 | the amount you actually earned in that pay period; | 05:24:21 |
| 20 | correct? | 05:24:25 |
| 21 | A   Yes. | 05:24:25 |
| 22 | Q   Okay.  Is there a reason you did not include the | 05:24:35 |
| 23 | earnings summary box in your declaration?  We don't | 05:24:42 |
| 24 | have -- that exhibit doesn't have the relevant page. | 05:25:09 |
| 25 | A   I don't have an answer to that. | 05:25:25 |

Page 289

```
1              I, TANSEER KAZI, do hereby declare under

2   penalty of perjury that I have read the foregoing

3   transcript; that I have made any corrections as appear

4   noted, in ink, initialed by me, or attached hereto; that

5   my testimony as contained herein, as corrected, is true

6   and correct.

7              EXECUTED this _____ day of _____,

8   2019, at _____, _____.

9                   (City)                (State)

10

11        _____

12         TANSEER KAZI

13         VOLUME 1

14

15

16

17

18

19

20

21

22

23

24

25

                                            Page  293
```

1

2

3

4        I, the undersigned, a Certified Shorthand

5    Reporter of the State of California, do hereby certify:

6        That the foregoing proceedings were taken before

7    me at the time and place herein set forth; that any

8    witnesses in the foregoing proceedings, prior to

9    testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14       I further certify that I am neither financially

15   interested in the action nor a relative or employee of

16   any attorney or any of the parties.

17       IN WITNESS WHEREOF, I have this date subscribed

18   my name.

19

20   Dated:  October 21, 2019

21

22

23

24                    RACHEL FERRIER

25                    CSR No. 6948

                                        Page  294

Tanseer  Kazi - October 17, 2019

```
 1    James M. Sitkin

 2    jsitkin@sitkinlegal.com

 3                            October 21, 2019

 4    RE: Kazi, Tanseer And Scheid, Linda v. PNC Bank, N.A., Et Al.

 5    10/17/2019, Tanseer  Kazi (#3599791)

 6

 7    The above-referenced transcript, which you have agreed

 8    to provide to the witness for review, is available.  The

 9    witness has 30 days from the date of this notice to

10    complete reading and signing of the deposition.

11

12    Please return the signed and dated Correction &

13    Signature page via email to the following

14    address: litsup-YOM@veritext.com.

15

16    If we do not receive a signed Correction & Signature

17    Page for this witness within 30 days of the date of

18    this letter, you may conclude that no corrections

19    were timely received by our office.

20
      The original transcript will be filed with the ordering attorney.

21

22

23    YOM: Full Service Court Reporting, A Veritext Company

24

25    206.622.6875 | litsup-YOM@veritext.com
```

Page 295

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

**REVISED**



September 2, 2014

Tanseer (Tony) Kazi
43575 Mission Blvd
Fremont, Ca 94539

Dear Tanseer (Tony),

**Congratulations, and let me be the first of many to welcome you to PNC!**

We are pleased to confirm your verbal acceptance of the terms of employment for the Mortgage Origination Loan Officer Supervisor position, at an annualized salary of ███████ and starting on September 02, 2014.  If you are in a non-exempt position, your annualized salary is based on a 40-hour workweek.

In addition, you will also be receiving a forgivable draw of ██████ for the 1st month of employment.  After this timeframe, you would revert to the standard compensation plan.  If employment with PNC Mortgage terminates for any reason within twelve (12) months from the date the Forgivable Draw commences, regardless whether termination is voluntary or involuntary, you will owe PNC Mortgage all Forgivable Draws that were paid to you. You hereby authorize PNC Mortgage to deduct such Forgivable Draw deficits from any unpaid incentives owed to you. If your unpaid incentives are insufficient to satisfy the unrecovered Forgivable Draw deficits, you further agree to repay PNC Mortgage the remainder of any Forgivable Draw deficits within thirty (30) days after your separation from employment.

In addition, you will also be receiving 80 bps on all "standard" loan products for months 5 through 10 of employment.  This excludes any loans we pay at a different rate (i.e. Brokered, Internal Refinances etc). This does include Purchases & Non-PNC Refinance transactions. After this timeframe, you would revert to the standard compensation plan.

You are eligible to participate in the Mortgage Originations Incentive plan. As a Supervising Loan Officer, you will be eligible to receive a bps override from the Mortgage Loan Officers assigned to you. Details of this plan will be shared with you by your manager as part of your on-boarding process.

EXHIBIT

10

10|17|19

PENGAD 800-631-6989

PNC 000033

On your first day with us, please come to the Cupertino CA – Mortgage – 19620 Stevens Creek Blvd Suite 220, Cupertino, CA, 95014 at 8:30 AM. Upon arrival please ask for Marinchi Estella. During the day, you'll meet quite a few people and go through new employee orientation. This will give you more information about the organization, our generous benefit plan, along with specific instructions for enrollment, and will get you started on your rewarding new adventure with us.

This employment offer is contingent on PNC receiving satisfactory results from your drug-screening test. You must have taken the test within 72 hours of the verbal offer of employment, and successfully pass the test.  In addition, as a condition of employment you will be required to submit your fingerprints for comparison within the FBI database. The report must meet both PNC's and the FDIC's standards for employment in the banking industry. At the time you are scheduled for your drug test, you will also be scheduled to be fingerprinted. Prospective employees are expected to be printed pre-employment.  If you are unable to make your appointment prior to your first day, please contact me as employees not printed within seven days of beginning employment may no longer be employed by PNC.

In compliance with the Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act) and Consumer Financial Protection Bureau (CFPB) regulations, and as a requirement of your employment in this role with PNC Bank, this employment offer is  contingent on your providing answers to the SAFE Act disclosure questions which are acceptable to PNC, on your successful registration in the Nationwide Mortgage Licensing System (NMLS) and Registry and on you meeting the CFPB qualifications requirements - which includes a review of your criminal and credit history. You may not begin employment until you successfully meet all requirements.

This offer is also contingent upon you agreeing to, signing and returning the original attached Non-Solicitation/No-Hire/Confidentiality Agreement (found below) to the following individual on your first day of employment:

> PNC Mortgage
> Division On-Boarding Representative
> 2650 Warrenville Road
> Suite 400
> Downers Grove, IL 60515
> Mailstop: D1-YB59-05-9

As a new employee, our goal is to help get you ready for the onboarding process.  To do that, you'll receive an email inviting you to complete the first of three tours in our onboarding system, PNC Welcome.  Tour 1 is called "Getting Ready" and as the name implies, you'll learn valuable information about our company's history, brand and values to prepare you for a rewarding career with us.

PNC 000034

We encourage you to complete this tour prior to your start date. Review your checklist and make updates to your personal information if need be.

All PNC applicants are required to complete an I-9 as stated by the Immigration Reform and Control Act.  To help you, we include a list of documents that are deemed acceptable as proof of identity and work authorization.  Review this carefully and be sure to bring those documents with you on your first day. Also, it is important to note that original documents, not photocopies, are required.

Lastly, an overview of some of our ethics and conduct policies are included in your tour. These are important to the way we work. Please review these PNC Key Pre-Employment Issues carefully and let me know if you have any concerns about them or how they may affect you.

Please note that PNC's offer of employment does not, of course, constitute a contract of employment or otherwise create any contractual rights or obligations for you or for PNC.  If you have any questions about the offer, the materials on the website, or if we can do anything to help make things easier, please call me at 630-486-3253.

Again, Tanseer (Tony), we're thrilled to welcome you to PNC. And we wish you great success in your new position.

Best Regards,

Heather Anderson
Talent Acquisition
PNC

PNC 000035

## Non-Solicitation/No-Hire/Confidentiality Agreement

This Non-Solicitation/No-Hire/Confidentiality Agreement ("Agreement") is between you (Tanseer (Tony) Kazi) and PNC (as used herein, "PNC" refers to The PNC Financial Services Group, Inc, its parents, subsidiaries and other affiliates, and each of their successors and assigns).

In consideration of your employment by PNC, you agree to the following.

1. **Non-Solicitation; No-Hire.**  During the period of your employment with PNC, and for twelve months thereafter, you will not:

    (a) directly or indirectly, either for your own benefit or purpose or for the benefit or purpose of any person or entity other than PNC, solicit, call on, actively interfere with PNC's relationship with, or attempt to divert or entice away, any person or entity which you should reasonably know (i) is a customer of PNC Mortgage (as used herein, referring to the PNC Mortgage division of PNC and PNC Partnership Solutions, Inc., as well as their affiliates and each entity with which either of them has had a strategic partnership during the twelve months preceding your separation from employment, both individually and severally) or is a person or entity for which PNC Mortgage provides any services, (ii) was a customer of PNC Mortgage or is a person or entity for which PNC Mortgage provided any services at any time during the twelve months preceding your separation from employment with PNC, or (iii) was, as of your separation from employment, considering retention of PNC Mortgage to provide any services; or, (b) directly or indirectly, either for your own benefit or purpose or for the benefit or purpose of any person or entity other than PNC, employ or offer to employ, call on, or actively interfere with PNC's relationship with, or attempt to divert or entice away, any employee of PNC, nor shall you assist any other person or entity in such activities.

2. **Confidentiality.**  During your employment by PNC, and thereafter regardless of the reason for separation from employment, you will not disclose or use in any way any confidential business or technical information or trade secret acquired in the course of such employment, all of which are the exclusive and valuable property of PNC whether or not conceived of or prepared by you, other than (i) information generally known in the PNC industry, (ii) as required in the course of such employment, (iii) as required by any court,  supervisory authority, administrative agency or applicable law, or (iv) with the prior written consent of the PNC.

3. **Governing Law; Jurisdiction.**  This Agreement is governed by and construed under the laws of the Commonwealth of Pennsylvania, without regard to conflict of laws rules.  Any dispute or claim arising out of or relating to the Agreement or claim of breach hereof shall be brought exclusively in the federal court for the Western District of Pennsylvania or in the Court of Common Pleas of Allegheny County, Pennsylvania.  By execution of this Agreement, you and PNC consent to the exclusive jurisdiction of such courts, and waive any right

PNC 000036

to challenge jurisdiction or venue in such courts with regard to any suit, action, or proceeding under or in connection with this Agreement.

4. **Equitable Remedies.** A breach of Section 1 or 2 of this Agreement will cause PNC irreparable harm, and PNC will therefore be entitled to issuance of injunctive relief restraining you, and each and every person and entity acting in concert or participating with you, from initiation and/or continuation of such breach.

5. **Tolling Period.** If it becomes necessary or desirable for PNC to seek compliance with the provisions of Section 1 or 2 of this Agreement by way of legal proceedings, the period during which you shall be required to comply with said provisions shall extend for a period of twelve (12) months from the date of the legal order requiring such compliance.

6. **No Waiver.** Failure of PNC to demand strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of such term, covenant or condition, nor shall any waiver or relinquishment of any such term, covenant or condition on any occasion or on multiple occasions be deemed a waiver or relinquishment of such term, covenant or condition.

7. **Severability.** The restrictions and obligations imposed by Sections 1 and 2 of this Agreement are separate and severable, and it is the intent of you and PNC that if any restriction or obligation imposed by any of these provisions is deemed by a court of competent jurisdiction to be void for any reason whatsoever, the remaining provisions, restrictions and obligations shall remain valid and binding upon you.

8. **Reform.** In the event any of restrictions set forth in Section 1 or 2 of this Agreement are determined by a court of competent jurisdiction to be unenforceable because unreasonable either as to length of time or area to which such restriction applies, it is the intent of you and PNC that said court reduce and reform the provisions thereof so as to apply the greatest limitation considered enforceable by the court.

9. **Waiver of Jury Trial.** You and PNC hereby waive any right to trial by jury with regard to any suit, action or proceeding under or in connection with this Agreement.

You and PNC have signed and dated this Agreement below, intending to be legally bound hereby.

For PNC

By: _____        Dated: ___9 . 2 . 14___

Jason Mackenzie

_____        Dated: ___9/2/14.___

Page **5** of 6

PNC 000037

Tanseer (Tony) Kazl

PNC 000038



**PNC**

January 20, 2017

Tony (Tanseer) Kazi
43575 Mission Blvd. #347
Fremont, CA 94539

Dear Tony (Tanseer),

**Congratulations, and let me be the first of many to welcome you to PNC!**

We are pleased to confirm your verbal acceptance of the terms of employment for the position of Mortgage Loan Officer West (MLO) at an annualized salary of ████████ based on a 40-hour workweek, and starting on January 31, 2017.

**Additional Offer Terms:** You are eligible to participate in the PNC Mortgage Originations Incentive plan. Performance requirements and additional incentive are outlined in the attached addendum.

In addition, you will also be receiving a forgivable draw of ████████ per month for the first month of employment. After this timeframe, you would revert to the standard compensation plan. To fully earn this forgivable draw, you must be employed by PNC Mortgage, in good standing, on the date of payment. If employment with PNC Mortgage terminates for any reason within twelve (12) months from the date the Forgivable Draw commences, regardless whether termination is voluntary or involuntary, you will owe PNC Mortgage all Forgivable Draws that were paid to you. You hereby authorize PNC Mortgage to deduct such Forgivable Draw deficits from any unpaid incentives owed to you. If your unpaid incentives are insufficient to satisfy the unrecovered Forgivable Draw deficits, you further agree to repay PNC Mortgage the remainder of any Forgivable Draw deficits within thirty (30) days after your separation from employment.

**Compliance Requirements:** In compliance with the Secure and Fair Enforcement for Mortgage Licensing Act (SAFE Act) and Consumer Financial Protection Bureau (CFPB) regulations, and as a requirement of your employment in this role with PNC Bank, this employment offer is contingent on your providing answers to the SAFE Act disclosure questions which are acceptable to PNC, on your successful registration in the Nationwide Mortgage Licensing System (NMLS) and Registry and on you meeting the CFPB qualifications requirements - which includes a review of your criminal and credit history. You may not begin employment in your new position until you successfully meet all requirements.

To the extent that you have an employment agreement or restrictive covenant with any previous employers that affects your work with PNC, you are fully responsible for complying with the terms of such agreement. As we discussed, you acknowledge that you will comply with the terms of any employment agreement(s) with your former employer(s), if applicable, and that you are solely responsible to defend or otherwise respond to any legal action taken against you for alleged violations of that agreement. PNC also reserves the right to take appropriate disciplinary action for your violation of any such agreement.

On your first day with us, please report to Minerva Avila at 19620 Stevens Creek Blvd. - Suite 220, Cupertino, CA, 95014-2485 at 9:30 AM. During the day, you'll meet quite a few people and go through new employee orientation. This will give you more information about the organization, our generous benefit plan, along with specific instructions for enrollment, and will get you started on your rewarding new adventure with us.



**EXHIBIT**

12

10|17|19

**Non-Solicitation/No-Hire/Confidentiality Agreement:** This offer is also contingent upon you agreeing to, signing, and returning the original attached Non-Solicitation/No-Hire/Confidentiality Agreement enclosed with this letter.

**PNC Welcome:** As a new employee, our goal is to help get you ready for the onboarding process. To do that, you'll receive an email inviting you to complete the first of three tours in our onboarding system, PNC Welcome. Tour 1 is called "Getting Ready" and as the name implies, you'll learn valuable information about our company's history, brand and values to prepare you for a rewarding career with us. We encourage you to complete this tour prior to your start date.

**Federal Form I-9:** All PNC applicants are required to complete an I-9 as stated by the Immigration Reform and Control Act. Included in PNC Welcome is a list of documents that are deemed acceptable as proof of identity and work authorization. Review this carefully and be sure to bring those documents with you on your first day. Also, it is important to note that original documents, not photocopies, are required.

**Drug Testing and Fingerprinting:** This employment offer is contingent on you taking and successfully passing PNC's drug-screening test. The test must have been taken within 72 hours of the verbal offer of employment (excluding any Saturday, Sunday and federal holidays). At the time you are scheduled for your drug test, you will also be scheduled to be fingerprinted and your fingerprints will be submitted for comparison within the FBI database. As a condition of employment the FBI report, as well as the results of any other criminal background check performed by PNC, must meet both PNC's and the FDIC's standards for employment. Prospective employees are expected to be fingerprinted pre-employment. If you are unable to make your appointment prior to your first day, please contact me as employees not printed within seven days of beginning employment may no longer be employed by PNC. Finally, depending upon the position being offered you may also be subject to additional background checks, and PNC must be satisfied with those results as well, as a condition of your employment or continued employment.

Please note that PNC's offer of employment does not, of course, constitute a contract of employment or otherwise create any contractual rights or obligations for you or for PNC. If you have any questions about the offer, the materials on the website, or if we can do anything to help make things easier, please call me at 318-265-6425.

Again, Tony (Tanseer), we're thrilled to welcome you to PNC. We wish you great success in your new position.

Best Regards,

Nick Roach
Talent Acquisition
PNC

# EXHIBIT 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

_____

**CONFIDENTIAL**

TANSEER KAZI and LINDA SCHEID,　)
individually and on behalf of　)
all those similarly situated,　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　vs.　　　　　　　　　　　)　　CASE NO.
　　　　　　　　　　　　　　　　　)　3:18-cv-04810-JCS
PNC BANK, N.A., and DOES 1-100　)
inclusive,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)
_____)




CONFIDENTIAL

VIDEOTAPED DEPOSITION OF LINDA SCHEID

LOS ANGELES, CALIFORNIA

WEDNESDAY, OCTOBER 16, 2019




Reported By:
Kyung Lee-Green, CSR No. 12655, CLR

Job: 46996

LINDA SCHEID

October 16, 2019

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                  SAN FRANCISCO DIVISION

 4      _____
                                              )
 5      TANSEER KAZI and LINDA SCHEID,        )
        individually and on behalf of         )
 6      all those similarly situated,         )
                                              )
 7           Plaintiffs,                       )
                                              )
 8           vs.                               )        CASE NO.
                                              )  3:18-cv-04810-JCS
 9      PNC BANK, N.A., and DOES 1-100        )
        inclusive,                            )
10                                            )
             Defendants.                       )
11      _____)

12

13

14

15

16

17

18               Videotaped Deposition of LINDA SCHEID,

19      taken on behalf of Defendant PNC Bank, N.A.

20      at 10100 Santa Monica Boulevard, 8th Floor,

21      Los Angeles, California, commencing at 9:02 a.m.,

22      and ending at 3:26 p.m., on Wednesday,

23      October 16, 2019, before KYUNG LEE-GREEN, Certified

24      Shorthand Reporter No. 12655 for the State of

25      California, CLR.
```

LINDA SCHEID

```
 1    APPEARANCES OF COUNSEL:

 2

 3        For the Plaintiffs:

 4            LAW OFFICES OF JAMES M. SITKIN

 5            BY:  JAMES M. SITKIN, ESQ.

 6            One Kaiser Plaza

 7            Suite 505

 8            Oakland, California 94612

 9            (415)318-1048

10            jsitkin@sitkinlegal.com

11

12        For the Defendant:

13            K&L GATES

14            BY:  PAUL W. SWEENEY, JR., ESQ.

15                SAMAN M. REJALI, ESQ.

16            10100 Santa Monica Boulevard

17            8th Floor

18            Los Angeles, California 90067

19            (310)552-5000

20            paul.sweeney@klgates.com

21            saman.rejali@klgates.com

22

23        Also Present:

24            Jasen Mackenzie

25            Stephanie Naifeh, Videographer
```

```
 1                    INDEX OF EXAMINATION

 2    WITNESS:  Linda Scheid                       PAGE

 3    Examination By Mr. Sweeney, Jr.                 9

 4    Examination By Mr. Sitkin                     223

 5

 6                       EXHIBITS

 7    MARKED                                        PAGE

 8    Exhibit 1       Third Amended Individual,       25
                      Class, and Collective Action
 9                    Complaint, Bates-stamped
                      PNC 001220 through PNC 001274,
10                    56 pages

11    Exhibit 2       PNC Employment application,     77
                      Bates-stamped PNC 000103
12                    through PNC 000106, 4 pages

13    Exhibit 3       Offer letter, Bates-stamped     82
                      PNC 000099 through PNC 000100,
14                    2 pages

15    Exhibit 4       Complaint for Damages, 14 pages  83

16    Exhibit 5       Addendum A to PNC Mortgage     102
                      Originations Incentive Plan for
17                    Mortgage Originations Loan
                      Officer/Supervisor,
18                    Bates-stamped PNC 001022
                      through PNC 001041, 20 pages
19
      Exhibit 6       PNC Mortgage Originations      118
20                    Incentive Plan, Bates-stamped
                      PNC 000917 through PNC 000959,
21                    43 pages

22    Exhibit 7       Addendum A to PNC's Mortgage   118
                      Origination Incentive Plan for
23                    Mortgage Originations Loan
                      Officer/Supervisor, Effective
24                    April 1, 2015, Bates-stamped
                      PNC 001042 through PNC 001060,
25                    19 pages
```

LINDA SCHEID

```
 1                     EXHIBITS (continued)

 2      MARKED                                        PAGE
        Exhibit 8      Addendum A to PNC's Mortgage    118
 3                     Origination Incentive Plan for
                       Mortgage Originations Loan
 4                     Officer/Supervisor, Effective
                       January 1, 2015, Bates-stamped
 5                     PNC 000960 through PNC 000978,
                       19 pages
 6
        Exhibit 9      Addendum A to PNC's Mortgage    119
 7                     Origination Incentive Plan for
                       Mortgage Originations Loan
 8                     Officer/Supervisor, Effective
                       July 1, 2015, Bates-stamped
 9                     PNC 001061 through PNC 001079,
                       19 pages
10
        Exhibit 10     Addendum A to PNC's Mortgage    119
11                     Origination Incentive Plan for
                       Mortgage Originations Loan
12                     Officer/Supervisor, Effective
                       January 1, 2017, Bates-stamped
13                     PNC 000979 through PNC 001001,
                       23 pages
14
        Exhibit 11     Addendum A to PNC's Mortgage    119
15                     Origination Incentive Plan for
                       Mortgage Originations Loan
16                     Officer/Supervisor, Effective
                       August 1, 2017, Bates-stamped
17                     PNC 001080 through PNC 001116,
                       37 pages
18
        Exhibit 12     Addendum A to PNC's Mortgage    119
19                     Origination Incentive Plan for
                       Mortgage Originations Loan
20                     Officer/Supervisor, Effective
                       January 1, 2018, Bates-stamped
21                     PNC 001002 through PNC 001021,
                       20 pages
22

23

24

25
```

LINDA SCHEID

October 16, 2019

```
 1                    EXHIBITS (continued)

 2     MARKED                                          PAGE
       Exhibit 13      Addendum A to PNC's Mortgage      120
 3                     Origination Incentive Plan for
                       Mortgage Originations Loan
 4                     Officer/Supervisor, Effective
                       January 1, 2019, Bates-stamped
 5                     PNC 001117 through PNC 001136,
                       20 pages
 6
       Exhibit 14      Earning Statements,               138
 7                     Bates-stamped PNC 000684
                       through PNC 000905, 222 pages
 8
       Exhibit 15      Corrective Action form,           173
 9                     Bates-stamped PNC 000107
                       through PNC 000108, 2 pages
10
       Exhibit 16      2018 Mid-Year Performance         198
11                     Summary (Required) for
                       Linda Scheid, Bates-stamped
12                     PNC 00109 through PNC 000116,
                       8 pages
13
       Exhibit 17      Employee Manual - Benefits,       185
14                     Bates-stamped PNC 001439
                       through PNC 001448, 10 pages
15
       Exhibit 18      Employee Manual - Benefits,       199
16                     Bates-stamped PNC 001471
                       through PNC 001482, 12 pages
17
       Exhibit 19      Mortgage Production Sales         200
18                     Compliance Calendar,
                       Bates-stamped PNC 001554
19                     through PNC 001557, 5 pages

20     Exhibit 20      Declaration of Linda Scheid in    217
                       Support of Plaintiffs' Motion
21                     for Class Certification,
                       16 pages
22
       Exhibit 21      Plaintiff Scheid's Amended        218
23                     Answers to First Set of
                       Interrogatories to Plaintiff
24                     Linda Scheid, 10 pages

25
```

LINDA SCHEID

October 16, 2019

```
 1                    INDEX

 2

 3   QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

 4                  (None.)

 5

 6         INFORMATION REQUESTED

 7                  (None.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

LINDA SCHEID

October 16, 2019

```
 1              LOS ANGELES, CALIFORNIA;
 2         WEDNESDAY, OCTOBER 16, 2019; 9:02 A.M.
 3
 4              THE VIDEOGRAPHER:  We are now, going on
 5    the video record.  Today is October 16th, 2019.  The
 6    time is approximately 9:02 a.m.  The location is
 7    K&L Gates, 10100 Santa Monica Boulevard,
 8    Los Angeles, California 90067.
 9              My name is Stephanie Naifeh.  I am the
10    video specialist representing First Legal Services.
11              The civil action number
12    is 3:18-cv-04810-JCS, in the matter of Tanseer Kazi
13    and Linda Scheid versus PNC Bank, et al.  And the
14    deponent is Linda Scheid.  The video deposition is
15    requested by defense counsel, K&L Gates.
16              Will counsel please identify themselves
17    for the record.
18              MR. SWEENEY, JR.:  Yes.  I'm Paul Sweeney
19    at K&L Gates representing defendant, PNC Bank.
20              MS. REJALI:  Saman Rejali, K&L Gates, for
21    PNC Bank.
22              MR. SWEENEY, JR.:  Let me also mention
23    Jasen Mackenzie, who is the Western Territory
24    Exec -- Executive of PNC Mortgage will be attending
25    as well.  He's running a little late, but we can
```

LINDA SCHEID

October 16, 2019

```
 1                MR. SITKIN:  Object -- excuse me.
 2                Objection.  Vague and ambiguous as to
 3   subject matter.
 4                You may answer.
 5                THE WITNESS:  I live in California.  I do
 6   realize that is the state law.
 7   BY MR. SWEENEY, JR.:
 8        Q    And so you took your breaks as was
 9   necessary and consistent with what you understood
10   California law to be; is that correct?
11                MR. SITKIN:  Asking the witness to
12   speculate and make a legal conclusion.  It's also
13   vague and ambiguous as to subject matter.
14   BY MR. SWEENEY, JR.:
15        Q    Go ahead.
16                MR. SITKIN:  Go ahead.
17                THE WITNESS:  I was denied because I was
18   not paid for them.
19   BY MR. SWEENEY, JR.:
20        Q    I understand what you -- what you want to
21   say.  And I understand what you said.  But please
22   listen to my question.
23                My question is whether or not you took the
24   breaks that you understood you were entitled to take
25   under California law, since you're familiar with
```

LINDA SCHEID

October 16, 2019

```
 1   California law?
 2          MR. SITKIN:  As -- mischaracterizes the
 3   witness' testimony.  Vague and ambiguous as to
 4   subject matter.  Asking the witness to make a legal
 5   conclusion.  Asked and answered.
 6          You may answer again.
 7          THE WITNESS:  Yes, I did take my breaks.
 8   BY MR. SWEENEY, JR.:
 9      Q    And when you took your breaks, were you
10   required to clock out for those breaks?
11      A    No, I was not.
12      Q    Okay.  So you were clocked in during all
13   of your breaks; is that correct?
14      A    That is correct.
15      Q    Okay.  And if you were clocked in during
16   your breaks, is it correct that you were being paid
17   during your breaks?
18          MR. SITKIN:  Misstates the witness' prior
19   testimony.
20   BY MR. SWEENEY, JR.:
21      Q    Go ahead.
22          MR. SITKIN:  Asked and answered.
23          You may answer again.
24          THE WITNESS:  I was not paid for my
25   breaks.  I was denied payment for my breaks.
```

```
 1   isn't that correct?
 2       A    That is correct.  But I was doing other
 3   nonproductive work, like working on co-ops, and they
 4   weren't transferring titles, the County of L.A.  And
 5   PNC did not catch it, so I was doing a lot of
 6   extensive work keeping PNC out of trouble.
 7       Q    And it just happened to be nonproductive
 8   work?
 9       A    It was nonproductive work, but it was very
10   extensive.
11       Q    I understand.
12            Now, let me mark as Exhibit 15 a one-page
13   document.  At the top it says "Corrective Action
14   Form," and it's PNC Bates No. 107 through 108.
15            (Exhibit 15 marked.)
16   BY MR. SWEENEY:
17       Q    Before I move on to that document -- and I
18   believe that you have already answered this for me,
19   but I'm just going to make sure that I have the
20   answer on the record.
21            On PNC 886 --
22       A    PNC --
23       Q    -- which is in the last -- one of the last
24   earning statements we talked about.  It said you had
25   a -- and you can look at 886.
```

LINDA SCHEID

1       **A**     **I'm almost there.**

2       Q     Take your time.

3       **A**     **Got a lot of papers here.**

4             **Okay.**

5       Q     Okay.

6             It indicates that the previous pay deficit

7    by that point was 30,663.60.  Do you see that?

8       **A**     **Correct.**

9       Q     Okay.

10            And your annual salary in the upper,

11   right-hand corner, it says $33,280 still at that

12   point.  Do you see that?

13      **A**     **That's correct.**

14      Q     Okay.  So the amount of your pay deficit

15   at that point in time was almost equal to an entire

16   year's salary; is that correct?

17      **A**     **That's correct.**

18      Q     Were you ever asked to repay this

19   30-plus thousand dollar pay deficit?

20      **A**     **No.**

21      Q     Did you ever repay it?

22      **A**     **No.**

23      Q     Now, focusing on Exhibit 15, have you ever

24   seen this document before, that is PNC Bates 107

25   through 108?

EXHIBIT 14

LAW OFFICES OF JAMES M. SITKIN
ATTORNEY AT LAW

ONE KAISER PLAZA, SUITE 505
OAKLAND, CALIFORNIA 94612
TELEPHONE (415) 318-1048
FACSIMILE (415) 362-3268
E-mail:
jsitkin@sitkinlegal.com

File No. 6017.00

January 25, 2019

VIA ONLINE SUBMISISON

California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:  Tanseer Kazi and Linda Scheid v. PNC Bank, N.A.

Dear LWDA:

    This firm, Swartz Swidler, LLC, 1101 Kings Hwy. N., Suite 402, Cherry Hill, NJ 08034 (att:  Justin Swidler, Esq.), Robert Soloff, P.A.,7805 SW 6th Court, Plantation, FL 3332 (att: Robert Soloff, Esq.), and Frank Weinberg Black, P.L., 7805 SW 6th Court Plantation, FL 33324 (att:  Marc Silverman, Esq.) represent Plaintiffs Tanseer Kazi, who on June 28, 2018 filed a lawsuit, later joined by his co-Plaintiff Linda Scheid, against their employer PNC Bank, N.A. (hereinafter "PNC") on claims for civil penalties arising from their employment as Mortgage Loan Officers in California. This letter supplements my July 2, 2018 and November 14, 2018 letters to the LWDA providing notice of Mr. Kazi and Ms. Scheid's intention on behalf of themselves and others to pursue claims under the Labor Code Private Attorney General Act, Labor Code § 2698, et seq., which letters are incorporated as though fully set forth herein. Copies of those letters without enclosures are enclosed herewith for ease of reference.

    By way of further background, please note that my November 14th letter further states as follows: "…Paragraph 16 of the enclosed First Amended Complaint, which applies to both Plaintiffs and the PNC Mortgage Loan Officers on whose behalf they seek recovery under PAGA, reads as follows:

    "16. Except where otherwise alleged, the following circumstances have existed since at least four years before the filing of this legal action and apply to the members of the Class, including Plaintiffs.  **PNC has paid the Class Members on the basis of commissions earned for loans made.  PNC nominally also has stated that the Class Members have been entitled to hourly pay in the event that the commissions did not rise to a specified level.  However, any such hourly payments to Class**

LWDA
Page 2
January 25, 2019

> **Members have been subject to having been credited against commissions earned and thereby recaptured by Defendants. Consequently, Defendants have not paid the Class Members separate compensation as required for commission employees under California law.** Defendants therefore have not provided the Class Members with rest periods that have been compliant with California law that at all relevant times has required that rest periods be separately compensated for piece rate employees." (emphasis added)

Thus, PNC has not compensated Plaintiffs and other California Mortgage Loan Officers for non-productive time. This includes rest periods, which therefore have not been compliant and for which PNC owes premium wages. PNC's pay structure is not materially distinguishable from those found illegal in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal.App.5th 98 (2017), rev. den. and *Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *2 (C.D. Cal. May 8, 2018). The uncompensated non-productive time also includes training time as training time likewise is not directly related to the commission earning activity and therefore PNC should have made separate payment for this time. PNC has its California Mortgage Loan Officers undergo well over a hundred hours of training per year on average.

In the case of on duty, non-productive time, Plaintiffs and the other California Mortgage Loan Officers are entitled to be paid for their time at the higher of statutory minimum wage/overtime plus penalties or their regular rate of pay, including as adjusted for overtime. PNC compensation policy is to pay all Mortgage Loan Offices overtime according to the host state's law. Moreover, PNC's itemized pay statement and records have not accurately recorded. This same critique applies to all non-productive time that Plaintiffs and other California Mortgage Loan Officers perform."

Examples of non-productive time include, but are not limited to, the following activities in which MLOs routinely engage other than directly connected with commission generating sales activity: trainings, work related meetings with other PNC personnel or other persons, paperwork, work on the computer, phone calls with PNC personnel or other persons, travel to and from work locations, marketing, and public relations. This is not intended to be exhaustive.

A major point of my correspondence is that PNC does not pay MLOs for all work time. In some cases, this involves time that is recorded on MLO time records and time that is not recorded on MLO time records, but of which PNC has actual or constructive notice. Examples of the latter include significant work in the evenings and weekends that can involve either productive or non-productive time. A non-exhaustive list of examples includes attending open houses, related travel, emails, and phone calls.

PNC's non-payment of wages for all time worked has involved non-payment of overtime and non-overtime wages, including premium wages for missed rest periods. PNC therefore routinely has not paid MLOs whose employment has terminated all accrued wages owed within the periods allotted under Labor Code §§ 201-02, entitling former PNC MLOs to waiting time penalties under Labor Code § 203.

LWDA
Page 3
January 25, 2019

Regarding travel, PNC also does not reimburse MLOs for all business-related travel of which it has actual or constructive notice. For example, there are MLOs who use their personal vehicles to travel to or from work locations, including between work locations, and have not been reimbursed as required under Labor Code § 2802, either on an actual cost or assumed mileage rate. MLOs also routinely use for business their personal cell phones without PNC's contributing to the associated costs.

All these Labor Code violations are associated with failure to maintain accurate wage/pay records and provide itemized wage statements under Labor Code §§ 226 and 226.2.

All these Labor Code violations trigger PNC's liability for civil penalties and recovery under PAGA. As stated in the previously submitted First Amended Complaint, "[s]uch penalties for which Plaintiffs now seek recovery include, but are not limited to, those based upon the violation of or as provided under California Labor Code §§ 201-203, 204/204b, 210, 216, 225.5, 226,226.2, 226.3, 226.7, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198 (incorporating Wage Order § 4-2001, § 12 and comparable sections in any other applicable Wage Order), and 2698-99." Please also note that recover under Labor Code § 558 includes, but is not limited, to recovery of back wages. *See Thurman v. Bayshore Transit Mgmt., Inc.* (2012) 203 Cal.App.4th 1112, 1145 (back wages recoverable via PAGA).

Please feel free to contact the undersigned if you have any further questions. Concurrent with the submission of this letter to the LWDA, we have emailed and sent via certified mail a copy to PNC, care of its counsel of record in this legal action.

Sincerely,

LAW OFFICES OF JAMES M. SITKIN

By: James M. Sitkin

c.c. (via certified mail, return receipt requested)
certification no.: 7017 3040 0000 7912 0614

Terry B. Bates
Email: tbates@reedsmith.com
Mara D. Curtis
Email: mcurtis@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

EXHIBIT 15

LAW OFFICES OF JAMES M. SITKIN
ATTORNEY AT LAW

ONE KAISER PLAZA, SUITE 505
OAKLAND, CALIFORNIA 94612
TELEPHONE (415) 318-1048
FACSIMILE (415) 362-3268
E-mail:
jsitkin@sitkinlegal.com

File No. 6017.00

November 14, 2018

<u>VIA ONLINE SUBMISISON</u>

California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:  <u>Tanseer Kazi and Linda Scheid v. PNC Bank, N.A.</u>

Dear LWDA:

This firm, Swartz Swidler, LLC, 1101 Kings Hwy. N., Suite 402, Cherry Hill, NJ 08034 (att: Justin Swidler, Esq.), Robert Soloff, P.A.,7805 SW 6th Court, Plantation, FL 3332 (att: Robert Soloff, Esq.), and Frank Weinberg Black, P.L., 7805 SW 6th Court Plantation, FL 33324 (att:  Marc Silverman, Esq.) represent Plaintiff Tanseer Kazi, who on June 28, 2018 filed a lawsuit against his employer PNC Bank, N.A. (hereinafter "PNC") on claims for civil penalties arising from his employment as a Mortgage Loan Officer in California. This letter supplements my July 2, 2018 letter to the LWDA providing notice of Mr. Kazi's intention on behalf of himself and others to pursue claims under the Labor Code Private Attorney General Act, Labor Code § 2698, et seq., which letter is incorporated as though fully set forth herein.  A copy of that letter is enclosed herewith.  Also enclosed with this letter is a copy of the recently filed First Amended Complaint in this case, which PNC has removed to the U.S. District Court, Northern District of California, which also is incorporated as though fully set forth herein.

Please note that the enclosed First Amended Complaint adds a new co-Plaintiff Linda Scheid.  Ms. Scheid is a current PNC Mortgage Loan Officer whom PNC employs in California and is therefore among those on whose behalf Mr. Kazi gave notice to the LWDA per his July 2nd letter.  Ms. Scheid has experienced the same policies and practices as Mr. Kazi has experienced as described in the July 2nd letter and joins Mr. Kazi in prosecuting all claims. Paragraph 16 of the enclosed First Amended Complaint, which applies to both Plaintiffs and the PNC Mortgage Loan Officers on whose behalf they seek recovery under PAGA, reads as follows:

LWDA
Page 2
November 14, 2018

> "16.  Except where otherwise alleged, the following circumstances have existed since at
> least four years before the filing of this legal action and apply to the members of the
> Class, including Plaintiffs.  **PNC has paid the Class Members on the basis of
> commissions earned for loans made.  PNC nominally also has stated that the Class
> Members have been entitled to hourly pay in the event that the commissions did
> not rise to a specified level.  However, any such hourly payments to Class
> Members have been subject to having been credited against commissions earned
> and thereby recaptured by Defendants.  Consequently, Defendants have not paid
> the Class Members separate compensation as required for commission employees
> under California law.**  Defendants therefore have not provided the Class Members
> with rest periods that have been compliant with California law that at all relevant times
> has required that rest periods be separately compensated for piece rate employees."
> (emphasis added)

Thus, PNC has not compensated Plaintiffs and other California Mortgage Loan Officers for non-productive time.  This includes rest periods, which therefore have not been compliant and for which PNC owes premium wages.  PNC's pay structure is not materially distinguishable from those found illegal in *Vaquero v. Stoneledge Furniture LLC*, 9 Cal.App.5th 98 (2017), rev. den. and *Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *2 (C.D. Cal. May 8, 2018).  The uncompensated non-productive time also includes training time as training time likewise is not directly related to the commission earning activity and therefore PNC should have made separate payment for this time.  PNC has its California Mortgage Loan Officers undergo well over a hundred hours of training per year on average.

In the case of on duty, non-productive time, Plaintiffs and the other California Mortgage Loan Officers are entitled to be paid for their time at the higher of statutory minimum wage/overtime plus penalties or their regular rate of pay, including as adjusted for overtime.  PNC compensation policy is to pay all Mortgage Loan Offices overtime according to the host state's law.  Moreover, PNC's itemized pay statement and records have not accurately recorded.  This same critique applies to all non-productive time that Plaintiffs and other California Mortgage Loan Officers perform.

Please feel free to contact the undersigned if you have any further questions.   Concurrent with the submission of this letter to the LWDA, we have emailed and sent via certified mail a copy to PNC, care of its counsel of record in this legal action.

Sincerely,

LAW OFFICES OF JAMES M. SITKIN

By: _James M. Sitkin_
James M. Sitkin

LWDA
Page 3
November 14, 2018

c.c. (via certified mail, return receipt requested)
certification no.: 7017 3040 0000 7912 1591

Terry B. Bates
Email: tbates@reedsmith.com
Mara D. Curtis
Email: mcurtis@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

EXHIBIT 16

LAW OFFICES OF JAMES M. SITKIN
ATTORNEY AT LAW

ONE KAISER PLAZA, SUITE 505
OAKLAND, CALIFORNIA 94612
TELEPHONE (415) 318-1048
FACSIMILE (415) 362-3268
E-mail:
jsitkin@sitkinlegal.com

File No. 6017.00

July 2, 2018

VIA ONLINE SUBMISISON

California Labor & Workforce Development Agency
800 Capitol Mall, MIC-55
Sacramento, CA 95814

Re:  Tanseer Kazi v. PNC Bank, N.A.

Dear LWDA:

This firm, Swartz Swidler, LLC, 1101 Kings Hwy. N., Suite 402, Cherry Hill, NJ 08034 (att: Justin Swidler, Esq.), Robert Soloff, P.A.,7805 SW 6th Court, Plantation, FL 3332 (att: Robert Soloff, Esq.), and Frank Weinberg Black, P.L., 7805 SW 6th Court Plantation, FL 33324 (att:  Marc Silverman, Esq.) represent Plaintiff Tanseer Kazi (hereinafter "Plaintiff"), who on June 28, 2018 filed a lawsuit against his employer PNC Bank, N.A. (hereinafter "PNC") on claims for civil penalties arising from his employment as a Mortgage Loan Officer in California. The underlying California Labor Code violations include, but are not limited to, the following: a) failure to provide rest periods or in their absence pay premium wages for missed rest periods in violation of California Labor Code §§ 226.7 and 512(referred to as claims for "missed rest periods"); b) failure to provide properly itemized pay statements that accurately describe missed rest periods and premium wages owed; and c) failure to maintain time/pay records that accurately identify missed rest periods and premium wages owed for missed rest periods.  Enclosed with this letter is a file-endorsed copy of the Complaint, the allegations of which are incorporated into this letter as though fully set forth.

PNC at all relevant times was and is a company in the business of banking, including specifically selling and making residential loans, within the State of California.  The statements herein concerning its operations, unless otherwise stated, refer to all times on or after one year before transmission of this letter.

The purpose of this letter is to notify the California Labor and Workforce Development Agency as provided by the Labor Code Private Attorneys General Act of 2004, specifically California Labor Code §2699.3, of the below-described claims by Plaintiff and all other persons

LWDA
Page 2
July 2, 2018

whom PNC, either alone or in conjunction with others, has employed has employed as Mortgage Loan Officers in California (hereinafter "Class" or "Class Members").

The claims elaborated below are asserted against: a) PNC, b) those persons or entities who qualified or qualify as joint employers under Martinez v. Combs (2010) 49 Cal.4th 35 by virtue of the exercise of control over the wages, hours, or working conditions of the Class, c) any person or entity who in acting on behalf of PNC caused or causes violations to occur of the Class rights to be provided rest periods or in their absence to be paid in a timely manner premium wages for missed rest periods, to receive accurately itemized pay statements, to have PNC maintain accurate time/pay records, and to receive timely payment, including accrued premium wages on termination, and d) any person or entity who may be liable for civil or statutory penalties as a result of the illegal conduct described herein. Any person or entity qualifying on any of the foregoing bases is included in "Defendant" and a potential defendant in the lawsuit that Plaintiff has filed.

Plaintiff is an "aggrieved employee[s]" under Labor Code § 2699(c) for purposes of the PAGA claims described herein. Mr. Kazi belongs to that Class as PNC employs Plaintiff as a Mortgage Loan Officer in California. Throughout his employment with PNC, Mr. Kazi resided in California. Mr. Kazi was not provided compliant rest periods or premium wages in their absence or compliant itemized pay statements. He is informed and believes that PNC's pay/time records for him are similarly inaccurate.

Plaintiff, like other members of the Class, has suffered the violations of his legal rights as described in this letter. In providing notice of these claims on behalf of others, Plaintiff and his counsel are serving as representatives of other Class Members as provided by Labor Code § 2699.3(a)(1). Thus, this notice letter is intended to cover other Class Members who may join Plaintiff in bringing suit or separately bring suit against any Defendant. Insofar as Plaintiff or others who may bring suit seek to have a class action certified and to prosecute non-class, representative claims under the Labor Code Private Attorneys General Act of 2004, this notice is intended to cover any claims by those plaintiffs and those whom they would represent.

For work in California, Defendant, subject to limited exceptions, generally paid Plaintiff and the other members of the Class on the basis of commissions earned for loans made. PNC nominally also has stated that the Class Members have been entitled to hourly pay in the event that the commissions did not rise to a specified level. However, any such hourly payments to Class Members have been subject to having been credited against commissions earned and thereby recaptured by Defendants. Consequently, Defendants have not paid the Class Members separate compensation as required for commission employees under California law. Defendants therefore have not provided the Class Members with rest periods that have been compliant with California law that at all relevant times has required that rest periods be separately compensated for piece rate employees, though Plaintiff and the other Class Members regularly worked and work sufficient hours to require PNC to provide rest periods. Defendants thus do not compensate for all "rest and recovery periods" as defined in Labor Code § 226.2.

LWDA
Page 3
July 2, 2018

The itemized pay statements that Defendants provided to Plaintiff and the other Mortgage Loan Officers do not report rest and recovery time. The itemized pay statements do not report missed rest periods or premium wages owed. The itemized pay statements also do not contain information required by Labor Code § 226.2(a)(2) including: a) "[t]he total hours of compensable rest and recovery periods (subsection(A)) and (B) if not paying minimum wage for other non-productive time, then the total hours of other nonproductive time and the rate of its compensation (subsect (B)). It is believed that Defendant's pay and time records have been similarly inaccurate.

Defendants have not paid premium wages owed to the Class in a timely manner, including when they terminated Class member's employment.

Please feel free to contact the undersigned if you have any further questions.   Concurrent with the mailing of this letter to the LWDA, we have emailed a copy to PNC.

Sincerely,

LAW OFFICES OF JAMES M. SITKIN

By: _James M. Sitkin_

c.c. (via certified mail, return receipt requested)
certification no.: 7017 3040 0000 7912 0577

William S. Demchak, Chairman, President, & Chief Executive Officer
300 Fifth Avenue
The Tower at PNC Plaza
Pittsburgh, PA 15222

Certification no.: 7017 3040 0000 7912 0584

Gregory B. Jordan, General Counsel & Chief Administrative Office
300 Fifth Avenue
The Tower at PNC Plaza
Pittsburgh, PA 15222

EXHIBIT 17

# Appellate Courts Case Information

## Supreme Court

Change court ▾

*Court data last updated: 01/05/2021 11:39 AM*

## Docket (Register of Actions)

**MALDONADO v. EPSILON PLASTICS**
**Division SF**
**Case Number S249879**

| Date | Description | Notes |
|------|-------------|-------|
| 07/10/2018 | Note: | **certified for publication May 8, 2018** |
| 07/09/2018 | Request for depublication filed (initial case event) | Pub/Depublication Requestor: Capstone Law APC<br>Attorney: Melissa Grant |
| 07/09/2018 | Case start date (depublication request) | |
| 07/09/2018 | Time for ordering review extended on the court's own motion | The time for ordering review on the court's own motion is hereby extended to and including August 16, 2018. (Cal. Rules of Court, rule 8.512(c).) |
| 07/12/2018 | Motion for judicial notice filed | Pub/Depublication Requestor: Capstone Law APC<br>Attorney: Melissa Grant |
| 07/16/2018 | Received: | Service copy of motion for judicial notice in support of request for depublication electronically filed on 7/12/18. |
| 07/16/2018 | Received: | one hard copy of depublication filed 07/09/18. |
| 07/16/2018 | Received: | one hard copy of judicial notice filed 07/12/18. |
| 07/18/2018 | Order filed | The order filed on July 9, 2018, is hereby amended in its entirety to read as follows:<br><br>The time for ordering review on the court's own motion is hereby extended to and including September 5, 2018. (Cal. Rules of Court, rule 8.512(c).) |
| 08/22/2018 | Depublication request denied (case closed) | Capstone Law APC's request for judicial notice, filed on July 12. 2018, is granted. The request for an order directing depublication of part of the opinion in the above-entitled appeal is denied. The court declines to review this matter on its own motion. The matter is now final. |

**Click here** to request automatic e-mail notifications about this case.

Careers  |  Contact Us  |  Accessibility  |  Public Access to Records  |  Terms of Use  |  © 2021 Judicial Council of California
Privacy